## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RALPH STRANO, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>     v.<br><br>KIPLINGER WASHINGTON EDITORS, INC.,<br><br>                Defendant. | Case No. 21-cv-12987-TLL-PTM<br><br>Hon. Thomas L. Ludington<br><br>Mag. Judge Patricia T. Morris |

## PLAINTIFF'S UNOPPOSED MOTION FOR
## <u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

The undersigned counsel certifies that counsel communicated with opposing counsel, via email on July 4, 2022, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief; Defendant's counsel does not oppose this motion and the relief requested herein.

For the reasons set forth in Plaintiff's Brief in Support of his Unopposed Motion for Preliminary Approval of Class Action Settlement, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP, and E. Powell Miller of The Miller Law Firm, P.C. as Class Counsel; (4) appoint Ralph Strano as the Class Representative for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice") and direct distribution of the Proposed Notice.[1]

---

[1] The Settlement Agreement and its exhibits are included in the accompanying Supporting Brief.

Dated: July 8, 2022

Respectfully submitted,

By: */s/ E. Powell Miller*
One of Plaintiff's Attorneys

E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
**THE MILLER LAW FIRM, P.C.**
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com
ssa@millerlawpc.com

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150
Fax: 212.989.9163

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107
Fax: 305.200.8801

*Proposed Class Counsel*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RALPH STRANO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KIPLINGER WASHINGTON EDITORS, INC.,<br><br>Defendant. | Case No. 21-cv-12987-TLL-PTM<br><br>Hon. Thomas L. Ludington<br><br>Mag. Judge Patricia T. Morris |

## BRIEF IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## STATEMENT OF ISSUES PRESENTED

1.      Does the proposed Settlement Class meet Fed. R. Civ. P. 23's requirements for class certification for settlement purposes?

**Plaintiff's Answer: Yes.**

2.      Should Plaintiff's Counsel be appointed as Class Counsel?

**Plaintiff's Answer: Yes.**

3.      Should Plaintiff Ralph Strano be appointed as the Class Representative for the Settlement Class?

**Plaintiff's Answer: Yes.**

4.      Based on an initial evaluation, is the proposed Settlement fair, adequate, and reasonable, sufficient to warrant notice to the proposed Settlement Class?

**Plaintiff's Answer: Yes.**

5.      Does the Notice Plan satisfy the requirements of Fed. R. Civ. P. 23 and Due Process?

**Plaintiff's Answer: Yes.**

## CONTROLLING AND MOST APPROPRIATE AUTHORITIES

Fed. R. Civ. P. 23

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)

*Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 133 S. Ct. 1884 (2013)

*Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015)

*In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*, 722 F.3d 838 (6th Cir. 2013)

*UAW v. Gen. Motors Corp.*, 497 F.3d 615 (6th Cir. 2007)

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)

## TABLE OF CONTENTS

**PAGE(S)**

I.  INTRODUCTION ...................................................................................1

II.  BACKGROUND ..................................................................................4

    A.  Michigan's Preservation of Personal Privacy Act .............................4

    B.  Pre-Filing Investigation...................................................................6

    C.  History of the Litigation And Settlement Negotiations ......................7

III.  TERMS OF THE SETTLEMENT .........................................................8

    A.  Class Definition .............................................................................8

    B.  Monetary Relief.............................................................................9

    C.  Release...........................................................................................9

    D.  Notice and Administration Expenses .............................................10

    E.  Service Award ..............................................................................10

    F.  Attorneys' Fees and Expenses.......................................................10

IV.  THE PROPOSED CLASS IS APPROPRIATE FOR
CERTIFICATION FOR SETTLEMENT PURPOSES ................................10

    A.  The Numerosity Requirement is Satisfied ......................................122

    B.  The Commonality Requirement is Satisfied ....................................122

    C.  The Typicality Requirement is Satisfied.........................................144

    D.  The Adequacy Requirement is Satisfied .........................................15

    E.  The Proposed Settlement Class Meets the Requirements
of Rule 23(b)(3)...........................................................................18

        1.  Common Questions Predominate ...........................................199

        2.  A Class Action Is A Superior Mechanism...............................20

V.      PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS
        COUNSEL ...............................................................................................22

VI.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS
        APPROPRIATE ......................................................................................233

        A.      The Rule 23(e)(2) Factors Weigh in Favor of Preliminary
                Approval .....................................................................................244

        B.      The Sixth Circuit's *UAW* Factors Weigh in Favor of
                Preliminary Approval .................................................................25

                1.      There Is No Risk of Fraud or Collusion (*UAW*
                        Factor 1) ..........................................................................266

                2.      Litigation Through Trial Would Be Complex,
                        Costly, and Long (*UAW* Factor 2) ...............................26

                3.      Discovery Has Advanced Far Enough to Allow the
                        Parties to Resolve the Case Responsibly (*UAW*
                        Factor 3) ..........................................................................288

                4.      Plaintiff Would Face Real Risks if the Case
                        Proceeded (*UAW* Factor 4) ..........................................299

                5.      Proposed Class Counsel and Class Representative
                        Support the Settlement (*UAW* Factor 5) .....................30

                6.      The Reaction of Absent Class Members (*UAW*
                        Factor 6) ............................................................................30

                7.      The Settlement Serves the Public Interest (*UAW*
                        Factor 7) ............................................................................30

VII.    THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND
        SUBSTANCE ..........................................................................................32

VIII.   CONCLUSION ........................................................................................34

iv

# TABLE OF AUTHORITIES

## Cases

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ...................................................................... passim
*Amgen Inc. v. Conn. Retirement Plans and Trust Funds*,
  133 S. Ct. 1184 (2013) ........................................................................11
*Beattie v. CenturyTel, Inc.*,
  511 F.3d 554 (6th Cir. 2007)...............................................................16
*Boelter v. Hearst Commc'ns, Inc.*,
  192 F. Supp. 3d 427 (S.D.N.Y. 2016)....................................................5
*Calloway v. Caraco Pharm. Labs., Ltd.*,
  287 F.R.D. 402 (E.D. Mich. 2012) ......................................................21
*Coulter-Owens v. Rodale, Inc.*,
  No. 14-cv-12688 (E.D. Mich.)...............................................................2
*Coulter-Owens v. Time, Inc.*,
  308 F.R.D 524 (E.D. Mich. 2015) ............................................... passim
*Curry v. SBC Comm'ns, Inc.*,
  250 F.R.D 301 (E.D. Mich. 2008) ........................................................12
*Date v. Sony Electronics, Inc.*,
  2013 WL 3945981 (E.D. Mich. July 31, 2013) ....................................15
*Davidson v. Henkel Corp.*,
  302 F.R.D. 427 (E.D. Mich. 2014) ......................................................12
*Ebin v. Kangadis Food Inc.*,
  297 F.R.D. 561 (S.D.N.Y. Feb. 25, 2014) ............................................17
*Edwards v. Hearst Communications, Inc.*,
  No. 15-cv-09279 (S.D.N.Y.)...................................................................3
*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974)...................................................................... 31, 32
*Fox v. Cty. of Saginaw*,
  2020 WL 6118487 (E.D. Mich. Oct. 16, 2020).....................................17
*Gilkey v. Central Clearing Co.*,
  202 F.R.D. 515 (E.D. Mich. 2001) ......................................................14
*Granada Investments, Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992)..............................................................26
*Groover v. Prisoner Transportation Servs., LLC*,
  2019 WL 3974143 (S.D. Fla. Aug. 22, 2019)........................................17
*Horton v. GameStop, Corp.*,
  380 F. Supp. 3d 679 (W.D. Mich. 2018) ................................................5

*Halaburda v. Bauer Publishing Co, LP*,
    No. 2:12-cv-12831 (E.D. Mich.) ............................................................3
*In re Am. Med. Sys., Inc.*,
    75 F.3d 1069 (6th Cir. 1996) ...................................................... 12, 14
*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 297 (E.D. Mich. 2001) .......................................................21
*In re Cardizem CD Antitrust Litig.*,
    200 F.R.D. 326 (E.D. Mich. 2001) ............................................... 19, 31
*In re Packaged Ice Antitrust Litig.*,
    2010 WL 3070161 (E.D. Mich. Aug. 2, 2010)......................................23
*In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*,
    722 F.3d 838 (6th Cir. 2013)....................................................... 11, 20
*In Re: Ford Motor Co. F-150 and Ranger Truck Fuel Economy Marketing and
    Sales Practices Litigation*,
    No. 2:19-md-02901 (E.D. Mich.) ........................................................17
*Int'l Union v. Ford Motor Co.*,
    2006 WL 1984363 (E.D. Mich. July 13, 2006) ...................................16
*Kinder v. Meredith Corporation*,
    No. 14-cv-11284 (E.D. Mich.)........................................................ passim
*Leonhardt v. AvrinMeritor, Inc.*,
    581 F. Supp. 2d 818 (E.D. Mich. 2008)................................................26
*Little Caesar Enters., Inc. v. Smith*,
    172 F.R.D. 236 (E.D. Mich. 1997) ......................................................15
*Luczak v. Nat'l Beverage Corp.*,
    2018 WL 9847842 (S.D. Fla. Oct. 12, 2018)......................................17
*Machesney v. Lar-Bev of Howell, Inc.*,
    317 F.R.D. 47 (E.D. Mich. 2016) ........................................................19
*Merenda v. VHS of Mich., Inc.*,
    296 F.R.D. 528 (E.D. Mich. 2013) ............................................... 13, 18
*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*,
    No. 15-cv-05671 (S.D.N.Y.).................................................................3
*Moeller v. American Media, Inc.*,
    No. 16-cv-11367 (E.D. Mich.)........................................................3, 25
*Parker v. Time Warner Entertainment Co.*,
    239 F.R.D. 318 (E.D.N.Y. 2007) ........................................................13
*Perlin v. Time, Inc.*,
    No. 16-cv-10635 (E.D. Mich.)........................................................2, 25
*Powers v. Hamilton County Public Defender Com'n*,
    501 F.3d 592 (6th Cir. 2007).................................................. 19, 20, 21

*Reese v. CNH America, LLC*,
  227 F.R.D. 483 (E.D. Mich. 2005) ......................................................................14
*Ruppel v. Consumers Union of United States, Inc.*,
  No. 16-cv-02444 (S.D.N.Y.) .................................................................................3
*Senter v. Gen. Motors Corp.*,
  532 F.2d 511 (6th Cir. 1976)................................................................................16
*Sheick v. Auto. Component Carrier, LLC*,
  2010 WL 3070130 (E.D. Mich. Aug. 2, 2010)...................................................26
*Sims v. Pfizer, Inc.*,
  2016 WL 772545 (E.D. Mich. Feb. 24, 2016)....................................................31
*Taylor v. Trusted Media Brands, Inc.*,
  No. 16-cv-01812 (S.D.N.Y.) .................................................................................2
*UAW v. Gen. Motors Corp.*,
  2006 WL 891151 (E.D. Mich. Mar. 31, 2006) ...................................................26
*UAW v. Gen. Motors Corp.*,
  497 F.3d 615 (6th Cir. 2007)........................................................................ passim
*Vassalle v. Midland Funding LLC*,
  708 F.3d 747 (6th Cir. 2013)...............................................................................16
*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .................................................................................. 13, 19
*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005)...................................................................................23
*Young v. Nationwide Mut. Ins. Co.*,
  693 F.3d 532 (6th Cir. 2010)................................................................... 20, 21, 22

**Statutes**

M.C.L. § 445.1712 ...................................................................................5
M.C.L. § 445.1715 ...................................................................................5
28 U.S.C. § 1715 ...................................................................................34

**Rules**

Fed. R. Civ. P. 23 (c)(2)(B) ...................................................................33
Fed. R. Civ. P. 23(a) .................................................................... passim
Fed. R. Civ. P. 23(a)(1) ...........................................................................12
Fed. R. Civ. P. 23(a)(2) ...........................................................................12
Fed. R. Civ. P. 23(a)(3) ...........................................................................14
Fed. R. Civ. P. 23(a)(4) ...........................................................................15
Fed. R. Civ. P. 23(b) ...............................................................................18
Fed. R. Civ. P. 23(b)(3) ................................................................. passim
Fed. R. Civ. P. 23(c)(2)(B) .......................................................................32
Fed. R. Civ. P. 23(e)(1)(B) .......................................................................32
Fed. R. Civ. P. 23(e)(2) ............................................................................24
Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv) ............................................................22
Fed. R. Civ. P. 23(g)(1)(B) .......................................................................22
Fed. R. Civ. P. 26 .....................................................................................7

**Other Authorities**

*Manual for Complex Litigation* § 21.632 (4th ed. 2004)........................................23
*Newberg on Class Actions* § 11.41 (4th ed. 2002) ......................................... 23, 33

## I.     INTRODUCTION

The Settlement negotiated by Plaintiff and proposed Class Counsel ("Class Counsel") in this action brought under the Michigan Preservation of Personal Privacy Act (the "PPPA")[1] represents an excellent result for the proposed Settlement Class. Pursuant to the Settlement Agreement, Defendant has agreed to pay $6,845,670 to establish an all-cash, non-reversionary Settlement Fund, which equates to a per-Class Member aggregate recovery of $390, from which every Settlement Class Member (except for those who submit requests for exclusion from the Settlement) will <u>automatically</u> receive (*i.e.*, without having to file a claim form) a *pro rata* cash payment of approximately $248. Thus, if approved, the Settlement will provide meaningful relief to all Settlement Class Members, in a timely and streamlined manner.

The Settlement is the product of a lengthy pre-filing investigation, efficiently prosecuted litigation, and extensive arm's-length negotiations between the Parties, including a full-day mediation with The Honorable Gerald E. Rosen (Ret.)—former Chief Judge of the Eastern District of Michigan and now a mediator at JAMS (Detroit). On a dollar-for-dollar basis, the Settlement outperforms all but one prior

---

[1] The version of the PPPA at issue in this case is found at H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378, §§ 1-4 (Mich. 1988), *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989).

PPPA settlement in terms of the amount recovered for each class member.[2]  And, significantly, the Settlement here was achieved without the benefit of any insurance coverage available to the Defendant. By any reasonable measure, the Settlement provides fair, reasonable, and adequate relief to the Settlement Class, and its terms and notice procedures readily satisfy due process and the procedural requisites of Rule 23.

The Court need not evaluate the Settlement in a vacuum, since it follows examples set by those that came before it. *See Perlin v. Time, Inc.* (No. 2:16-cv-10635 ECF No. 51, PageID.778-789) (E.D. Mich.) (approving class action settlement that was expected to pay between $25 to $50 per claimant); *Taylor v. Trusted Media Brands, Inc.*, No. 7:16-cv-01812, ECF No. 87 (S.D.N.Y. Feb. 1, 2018) (approving class action settlement that paid approximately $41 per claimant) (Exhibit A); *Coulter-Owens v. Rodale, Inc.* (No. 2:14-cv-12688 ECF No. 54, PageID.852-866) (E.D. Mich.) (approving class action settlement that paid approximately $42 per claimant); *Kinder v. Meredith Corporation* (No. 1:14-cv-11284 ECF No. 72, PageID.2396-2436) (E.D. Mich.) (approving class action settlement that paid approximately $50 per claimant); *Edwards v. Hearst*

---

[2] The only PPPA settlement to recover more money per class member was *Kain v. The Economist Newspaper NA, Inc.*, Case No. 4:21-cv-11807-MFL-CI (E.D. Mich.), where the settlement amount represented an aggregate recovery of approximately $412 per class member.

*Communications, Inc.*, No. 1:15-cv-09279, ECF No. 314 (S.D.N.Y. Apr. 24, 2019) (approving class action settlement that paid approximately $98 per claimant) (Exhibit B); *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, No. 1:15-cv-05671, ECF No. 143 (S.D.N.Y. Mar. 6, 2019) (approving class action settlement that paid approximately $82 per claimant) (Exhibit C); *Ruppel v. Consumers Union of United States, Inc.*, No. 7:16-cv-02444, Dkt. 111 (S.D.N.Y. Dec. 4, 2018) (approving class action settlement that paid approximately $109 per claimant) (Exhibit D); *Moeller v. American Media, Inc.* (No. 2:16-cv-11367 ECF No. 42, PageID.891-899) (E.D. Mich.) (approving class action settlement that paid approximately $100 per claimant); *Halaburda v. Bauer Publishing Co, LP* (No. 2:12-cv-12831 ECF No. 68, PageID.1374-1383) (E.D. Mich.) (approving class action settlement that paid approximately $74 per claimant).

The per-class member recovery in this Settlement greatly exceeds the per-class member (and even per-claimant) recoveries in each of the previously approved PPPA settlements cited above. Moreover, unlike those prior settlements, the Settlement here does not require Settlement Class Members to submit claim forms, and instead provides <u>automatic</u> cash payments to every class member who does not exclude himself or herself from the Settlement Class. Thus, upon final approval of the proposed Settlement in this case, each of the 17,553 Settlement Class Members (except for any who choose to exclude themselves) will receive a cash payment of

3

approximately $248, far exceeding the per-class member recovery in the previous PPPA settlements cited above. Simply put, the automatic, per-class member relief secured by this Settlement marks an exceptional result in a PPPA class action.

The strength of this Settlement speaks for itself, and the Court should have no hesitation granting it preliminary approval. Accordingly, Plaintiff respectfully requests that the Court (1) grant preliminary approval of the Settlement Agreement; (2) provisionally certify the settlement class under Fed. R. Civ. P. 23(b)(3) in connection with the settlement process; (3) appoint Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP, and E. Powell Miller of The Miller Law Firm, P.C. as Class Counsel; (4) appoint Ralph Strano as the Class Representative for the Settlement Class; and (5) approve the Notice Plan for the Settlement described in the Settlement Agreement and its Exhibits, as well as the specific Notice of Class Action and Proposed Settlement (the "Proposed Notice"),[3] and direct distribution of the Proposed Notice.

## II.   BACKGROUND

### A.   Michigan's Preservation of Personal Privacy Act

The Michigan legislature passed the PPPA "to preserve personal privacy with respect to the purchase, rental, or borrowing of written materials, sound recordings,

---

[3] These are attached as Exhibits A-C to the Settlement Agreement.

and video recordings." First Amended Complaint (ECF No. 9) ("FAC"). As such, the PPPA (as it existed up until July 30, 2016) provides that:

> a person, or an employee or agent of the person, engaged in the business of selling at retail . . . books or other written materials . . . shall not disclose to any person, other than the customer, a record or information concerning the purchase . . . of those materials by a customer that indicates the identity of the customer.

M.C.L. § 445.1712. To enforce the statute, the PPPA authorizes civil actions and provides for the recovery of statutory damages in the amount of $5,000, plus costs and reasonable attorney fees. *See* M.C.L. § 445.1715.

In May 2016, the Michigan legislature amended the PPPA. *See* S.B. 490, 98th Leg., Reg. Sess., P.A. No. 92 (Mich. 2016) (codified at M.C.L. § 445.1711, *et seq*.). The May 2016 amendment to the PPPA, which became effective on July 31, 2016, does not apply retroactively to claims that accrued prior to its July 31, 2016 effective date. *See Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 439–41 (S.D.N.Y. 2016) ("[T]he amendment to the [PPPA] does not apply to Plaintiffs' claims, and the Court will assess the sufficiency of those claims under the law as it was when Plaintiffs' claims accrued.") (internal citations omitted).

Because the claims alleged herein accrued, and thus vested, prior to the July 31, 2016 effective date of the amended version of the PPPA, the pre-amendment version of the PPPA applies in this case. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018).

## B.    Pre-Filing Investigation

Plaintiff's counsel conducted comprehensive pre-filing investigations concerning every aspect of the factual and legal issues underlying this action. These extensive pre-filing efforts included:

- Researching the nature of Defendant's business, including its practices of selling Kiplinger Publications, its consumer-privacy practices, and public statements concerning the foregoing;

- Interviewing numerous individuals in Michigan who subscribed to Kiplinger Publications in 2015 and 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Performing research and analysis regarding Defendant's list rental and other disclosure practices, including data cards and other public information available online concerning the practices during the relevant 2015–2016 timeframe;

- Performing an in-depth analysis of the various versions of Defendant's Privacy Policy, Terms of Service, and other publicly accessible documents available on its websites during the relevant time period;

- Researching the relevant law and examining the pertinent facts to assess the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto;

- Investigating Defendant's financial condition in order to assess the likelihood of ultimately recovering a class-wide statutory damages award from Defendant; and

- Reviewing numerous judicial decisions and statutes concerning the applicable limitation period for a PPPA claim, and analyzing the arguments for and against a six-year limitation period.

*See* Declaration of Philip L. Fraietta in Support of Plaintiff's Unopposed Motion For Preliminary Approval ("Fraietta Decl.") (Exhibit E) ¶ 6. As a result of this thorough pre-filing investigation, Plaintiff's counsel was able to develop a viable theory of liability for a PPPA claim against Defendant and prepare a thorough Complaint and FAC against Defendant. *Id.* ¶ 7.

### C.    History of the Litigation And Settlement Negotiations

On December 22, 2021, former plaintiff Jay Ketover initiated this action with the Class Action Complaint. (ECF No. 1). As alleged in the Complaint, Kiplinger Washington Editors, Inc. ("Kiplinger" or "Defendant") is an international media company that publishes *Kiplinger's Personal Finance* and other magazines. *See* Complaint (ECF No. 1) ¶ 10. Plaintiff alleges that before July 30, 2016, Defendant disclosed information related to its customers' magazine subscription histories and personal reading habits without their consent in violation of the PPPA. *Id.* ¶¶ 1-2, 5-8, 41-48.  On February 18, 2022, Plaintiff Strano filed a First Amended Complaint making the same allegations and replacing Mr. Ketover as named plaintiff in the action.  *See generally* FAC.

From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution. *See* Fraietta Decl. ¶ 8. To that end, before Defendant would answer or otherwise respond to the FAC, the Parties agreed to engage in mediation, which the

Parties agreed would take place before Judge Rosen. *Id.* ¶ 9. The Parties sought and obtained stays of all case deadlines to accommodate the mediation. *Id.* ¶ 10. As part of the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class, which includes approximately 17,553 persons, and also exchanged lengthy mediation briefing pertaining to the merits of the case, including the applicable statute of limitations. *Id.* ¶ 11. Given that the information exchanged would contain the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses. *Id.* ¶ 12.

The mediation took place on May 31, 2022 and lasted the entire day. At the conclusion of the mediation, the Parties reached agreement on all material terms of a class action settlement and executed a term sheet. *Id.* ¶ 13. In the weeks following, the Parties negotiated and finalized the full-form Settlement Agreement (the "Settlement" or the "Agreement"), which is attached to the Fraietta Declaration as Exhibit 1. *Id.* ¶ 14.

## III.   TERMS OF THE SETTLEMENT

The key terms of the Settlement Agreement are summarized as follows:

### A.   Class Definition

The "Settlement Class" is defined as:

> All Persons who purchased a subscription to *Kiplinger's Personal Finance* Magazine, *The Kiplinger* Letter, *Kiplinger's Investing for Income*, *The Kiplinger Tax* Letter or *Kiplinger's Retirement* Report directly from the publisher thereof for delivery to a Michigan street address, and who subscribed to such publication between December 24, 2015, and July 30, 2016.[4]

Agreement ¶ 1.32. Based on Defendant's records, there are 17,553 Settlement Class Members. *Id.*

## B.     Monetary Relief

Defendant shall establish a $6,845,670 non-reversionary Settlement Fund from which each Settlement Class Member who does not exclude him or herself shall automatically receive a *pro rata* cash payment, estimated to be approximately $248, after payment of notice and administrative expenses, attorneys' fees, and a service award to the proposed Class Representative. Agreement ¶¶ 1.34, 2.1. No portion of the Settlement Fund will revert back to Defendant. *Id.* ¶ 2.1(h).

## C.     Release

In exchange for the $6,845,670 cash payment, Defendant and each of its related and affiliated entities (the "Released Parties" defined in ¶ 1.28 of the

---

[4] Excluded from the Settlement Class are (1) all Persons whose subscription information was not disclosed to third parties, including without limitation to Persons who were on Kiplinger's "do not rent list;" (2) any Judge or Magistrate presiding over this Action and members of their families; (3) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (4) persons who properly execute and file a timely request for exclusion from the class; and (5) the legal representatives, successors or assigns of any such excluded persons.

Settlement) will receive a full release of all claims arising out of or related to Defendant's disclosure of its Michigan customers' magazine subscription information. *See* Agreement ¶¶ 1.27-1.29 for full release language.

### D.    Notice and Administration Expenses

The Settlement Fund will be used to pay the cost of sending the Notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the Settlement. Agreement ¶¶ 1.30-31, 1.34.

### E.    Service Award

In recognition of his efforts on behalf of the Settlement Class, Defendant has agreed that Plaintiff Strano may receive, subject to Court approval, a service award of $5,000 from the Settlement Fund, as appropriate compensation for his time, effort, and leadership serving as class representative. Agreement ¶ 8.3.

### F.    Attorneys' Fees and Expenses

Class Counsel may request an award of attorneys' fees and expenses of 35% of the Settlement Fund, an amount which Defendant agrees reasonably compensates Class Counsel for their work investigating, prosecuting, and resolving this action on behalf of the Settlement Class. Agreement ¶¶ 1.34, 8.1.

## IV.    THE PROPOSED CLASS IS APPROPRIATE FOR CERTIFICATION FOR SETTLEMENT PURPOSES

Before granting preliminary approval of the proposed Settlement, the Court must determine that the proposed settlement class is appropriate for certification. *See*

10

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification is proper if the proposed class satisfies the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a). Fed. R. Civ. P. 23(a); *see Amgen Inc. v. Conn. Retirement Plans and Trust Funds*, 568 U.S. 455, 460 (2013). In addition, because Plaintiff seeks certification under Rule 23(b)(3), she must also demonstrate that common questions of law or fact predominate over individual issues and that a class action is the superior device to adjudicate the claims. *Amchem*, 521 U.S. at 615–16. District courts are given broad discretion to determine whether certification of a class action lawsuit is appropriate. *In re Whirlpool Corp. Front-Loading Washing Products Liability Litig.*, 722 F.3d 838, 850 (6th Cir. 2013). As explained below, the proposed Settlement Class satisfies all of the Rule 23(a) and 23(b)(3) prerequisites, and thus, should be certified.

Notably, in the only PPPA case to reach a decision on a contested class certification motion, Judge Steeh granted class certification. *See Coulter-Owens v. Time, Inc.*, 308 F.R.D 524 (E.D. Mich. 2015). Likewise, similar classes of magazine purchasers were certified for settlement purposes in the other PPPA class action settlements discussed above. *See* Introduction, *supra*. Like the classes in those cases, the proposed Settlement Class here should be certified.

### A.    The Numerosity Requirement is Satisfied

The numerosity requirement is met when joining such a large number of plaintiffs in a single suit would be impracticable. Fed. R. Civ. P. 23(a)(1); *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). Although there is no fixed numerical threshold for determining impracticability of joinder, "[i]n most cases, a class in excess of forty members will do." *Curry v. SBC Comm'ns, Inc.*, 250 F.R.D 301, 310 (E.D. Mich. 2008); *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (certifying a class of 49 plaintiffs). Only a reasonable estimate or some evidence of the number of members in the purported class is required. *McDonald v. Asset Acceptance LLC*, 296 F.R.D. 513, 520 (E.D. Mich. 2013).

Here, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. According to Defendant's records, the proposed Settlement Class is comprised of approximately 17,553 persons. Fraietta Decl. ¶ 15. Thus, there is no question that joinder of all members of the Settlement Class would be impractical and numerosity is, therefore, satisfied.

### B.    The Commonality Requirement is Satisfied

The second requirement for certification mandates that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is satisfied when the claims depend on a common contention, the resolution of which will bring a class-wide resolution of the claims. *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct.

2541, 2551 (2011). The threshold for demonstrating the commonality requirement is not high, as "complete identity of issues is not required," *Merenda v. VHS of Mich., Inc.*, 296 F.R.D. 528, 536 (E.D. Mich. 2013), and is satisfied when there is one question common to the class, the resolution of which will advance the litigation. *See Whirlpool Litig.*, 722 F.3d at 582–83.

Here, Plaintiff alleges that all class members' claims hinge on two common questions, one factual and one legal, namely: (1) whether Defendant disclosed its customers' protected personal reading information to third parties between December 24, 2015 and July 30, 2016; and (2) whether such disclosures violated the PPPA. Plaintiff contends that both questions can be answered on a class-wide basis with common proof, and that their answers will drive the litigation forward as a whole. *See, e.g.*, *Parker v. Time Warner Entertainment Co.*, 239 F.R.D. 318, 329–30 (E.D.N.Y. 2007) (finding commonality where "the claims are derived from the same legal theory and based upon the same factual question – whether class members were injured because of [defendant's] disclosure of their [statutorily protected information] without properly notifying them of that practice").

Indeed, numerous courts have certified PPPA classes in light of the commonality of these common contentions. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 532–534 (finding PPPA litigation against another magazine publisher was "driven by issues that are common to the entire putative class"); *Kinder v. Meredith Corp.*,

2016 WL 454441, at *1 (E.D. Mich. Feb. 5, 2016).

Given that there are multiple questions of law and fact common to members of the Settlement Class, the commonality requirement is satisfied.

### C.    The Typicality Requirement is Satisfied

The next prerequisite—typicality—requires that a class representative has claims that are typical of those of the putative class members. Fed. R. Civ. P. 23(a)(3). "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *In re Am. Med. Sys., Inc.,* 75 F.3d at 1082. The test for typicality is not demanding and does not require the interests and claims of the plaintiffs to be identical. *Reese v. CNH America, LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005). "Typicality may be presumed when the plaintiff's claim arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *Gilkey v. Central Clearing Co.*, 202 F.R.D. 515, 524 (E.D. Mich. 2001). In other words, when the basis of the suit is the defendant's systematic business practices towards the named plaintiff and the members of the proposed class, typicality is satisfied.

Plaintiff alleges that Defendant's disclosure of his subscription information was not a situation unique to his, but rather part of Defendant's standard business practice of disclosing its customers' subscription information to third parties without

14

consent. FAC ¶¶ 1-2, 5-8, 41-48. Plaintiff thus alleges that the personal reading information of all Settlement Class Members was disclosed to the same third parties and for the same purpose—and that these disclosures therefore violated the PPPA in the same way. And to redress such violations, the PPPA authorizes each Settlement Class Member to recover the same statutorily set sum of damages ($5,000).

Accordingly, Plaintiff's pursuit of his own claims in this matter will necessarily advance the interests of the Settlement Class, satisfying the typicality requirement. *See, e.g.*, *Coulter-Owens*, 308 F.R.D. at 534–35; *Kinder*, 2016 WL 454441, at *1; *Date v. Sony Electronics, Inc.*, 2013 WL 3945981, at *3 (E.D. Mich. July 31, 2013) ("Because all Class Members' claims arise from the same course of conduct . . . their claims are based on the same legal theory and the typicality requirement, which is not onerous, is met."); *Little Caesar Enters., Inc. v. Smith*, 172 F.R.D. 236, 243 (E.D. Mich. 1997) (finding typicality met where "[t]he class representatives' claims arose from the same events, legal documents, and consequences and legal theories affecting all [class members]").

### D.    The Adequacy Requirement is Satisfied

The final Rule 23(a) prerequisite requires a finding that the class representative has and will "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two criteria for determining whether class representatives are adequate are (1) the representatives must have common interests

with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Int'l Union v. Ford Motor Co*., 2006 WL 1984363, at \*19 (E.D. Mich. July 13, 2006) (citing *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)); *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013). Adequacy exists when the named plaintiff is a part of the class, possesses the same interest, suffered the same injury, and thus, seeks the same type of relief as the other class members. *See Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 562 (6th Cir. 2007) (citation omitted).

In this case, the FAC alleges that Plaintiff—like each of the Settlement Class Members— purchased a magazine subscription from Defendant while residing in Michigan and had his subscription information disclosed to third parties without his consent. FAC ¶¶ 9, 41-48. Thus, Plaintiff and the Settlement Class Members have the exact same interest in recovering the statutory damages to which they are entitled under the PPPA. As such, Plaintiff does not have any interest antagonistic to those of the proposed Settlement Class.

Likewise, proposed Class Counsel—Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP, and E. Powell Miller of The Miller Law Firm, P.C.—have extensive experience in litigating class actions of similar size, scope, and complexity to the instant action. Fraietta Decl. ¶¶ 17-19. They regularly engage in major complex litigation involving

16

consumer privacy, including numerous PPPA cases, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. *Id.*; *see* Firm Resumes of Bursor & Fisher, P.A., Hedin Hall LLP, and The Miller Law Firm, P.C., attached to the Fraietta Declaration as Exhibits 2-4; *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. . . . The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five [now six] class action jury trials since 2008."); *Luczak v. Nat'l Beverage Corp.*, 2018 WL 9847842, at *2 (S.D. Fla. Oct. 12, 2018) ("Hedin Hall LLP has extensive experience in class actions."); *Groover v. Prisoner Transportation Servs., LLC*, 2019 WL 3974143, at *2 (S.D. Fla. Aug. 22, 2019) ("Counsel [at Hedin Hall LLP] provided excellent and thorough representation in a case that was exceptionally time-consuming."); *Fox v. Cty. of Saginaw*, 2020 WL 6118487, at *11 (E.D. Mich. Oct. 16, 2020) ("counsel have substantial experience litigating class actions and novel constitutional questions"); *In Re: Ford Motor Co. F-150 and Ranger Truck Fuel Economy Marketing and Sales Practices Litigation* (No. 2:19-md-02901 ECF No. 55, PageID.1158 (E.D. Mich.) ("The Court concludes that E. Powell Miller with the Miller Law Firm is the applicant best able to represent the interests of the putative class based upon . . . the Miller Law Firm's prior

experience in handling class actions and other complex litigation").

Further, proposed Class Counsel have devoted substantial resources to the prosecution of this action by investigating Plaintiff's claims and that of the Settlement Class, obtaining, reviewing and analyzing discovery, participating in a private full-day mediation with Judge Rosen, and ultimately, negotiating a settlement that provides for an outstanding per-class member recovery in a PPPA case, despite the substantial litigation risk that was present pertaining to the statute of limitations, as well as additional risks on the merits and class certification, if the case had proceeded. Fraietta Decl. ¶¶ 4-16. In sum, proposed Class Counsel have vigorously prosecuted this action and will continue to work diligently on behalf of the Settlement Class throughout the settlement administration process. *Id.*

Because Plaintiff and proposed Class Counsel have demonstrated their commitment to representing the Settlement Class and neither have interests antagonistic to the Settlement Class, the adequacy requirement is satisfied.

### E.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)

After meeting the prerequisites of Rule 23(a), a plaintiff seeking class certification must also show that the action qualifies under at least one of the categories outlined in Rule 23(b). Fed. R. Civ. P. 23(b); *Merenda*, 296 F.R.D. at 535. Here, Plaintiff seeks certification under Rule 23(b)(3), which requires that (i) common questions of law and fact predominate over individualized ones, and that

18

(ii) a class action is superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). As explained below, the proposed Settlement Class meets these requirements.

### 1. Common Questions Predominate

Fed. R. Civ. P. 23(b)(3)'s predominance requirement focuses on whether the defendant's liability is common enough to be resolved on a class basis, *Dukes,* 564 U.S. at 349-60, and whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The Rule 23(b)(3) predominance requirement is akin to the commonality requirement Rule 23(a) "in that both require that common questions exist, but [Rule 23](b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *Machesney v. Lar-Bev of Howell, Inc.*, 317 F.R.D. 47, 61 (E.D. Mich. 2016) (citation omitted). In other words, where commonality is satisfied when there is a single factual or legal question common to the class, the "predominance requirement is met if this common question is at the heart of the litigation." *Powers v. Hamilton County Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). Common issues are at the heart of a case when there is generalized evidence that would prove or disprove an element of the action on a class-wide basis. *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 326, 339 (E.D. Mich. 2001); *see also Powers*, 501 F.3d at 619 (noting that "cases alleging a single course of wrongful conduct are particularly well-suited

to class certification.").

In this case, as described above, Defendant's alleged common course of conduct presents multiple questions of law and fact that are central to liability and thus predominate over any issues affecting individual class members. *See Powers*, 501 F.3d at 619 ("predominance requirement is met if this common question is at the heart of the litigation"). Thus, courts have regularly found common questions to predominate over individual issues in the course of approving PPPA settlements. *See Coulter-Owens*, 308 F.R.D. at 536; *Kinder*, 2016 WL 454441, at *2.

Because Defendant engaged in a single course of conduct with respect to all members of the Settlement Class, their claims "will prevail or fail in unison," as such, predominance is met. *Whirlpool*, 722 F.3d at 859 (citation omitted).

### 2. A Class Action Is a Superior Mechanism

The class action device is also the superior means of adjudicating this controversy because it "achieve[s] economies of time, effort and expense and promote[s] . . . uniformity of decision as to persons similarly situated." *Amchem*, 521 U.S. at 615. Class actions are preferred over small, individual suits for damages because they provide a mechanism through which individuals who, under other circumstances, would not otherwise have the opportunity to seek redress from the defendant through litigation. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2010); *see also Amchem*, 521 U.S. at 617. Claims alleging a standard course

of wrongful conduct are particularly well-suited for class certification because they facilitate efficiency and uniformity. *Young*, 693 F.3d at 545; *see also Powers*, 501 F.3d at 619 ("[C]ases alleging a single course of wrongful conduct are particularly well-suited to class certification."). As Judge Steeh held in *Coulter-Owens*, "given the commonalities, it makes sense to proceed as a class action and address the issues one time rather than [in] potentially hundreds of separate cases." 308 F.R.D. at 537. And in the context of certifying a class for settlement purposes, "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

Here, all questions necessary to determine whether Defendant violated the PPPA are common to all Settlement Class Members. As such, a class action is a much more efficient use of judicial and party resources than multiple actions. *See In re Cardizem CD Antitrust Litig.*, 200 F.R.D. at 326. Further, absent a class action, members of the Settlement Class would almost certainly find the individual costs of litigation to be prohibitive. Indeed, no other member of the proposed Settlement Class has brought any PPPA claims against Defendant; thus, "there is no indication that any class member wants to individually control his or her own separate action." *Calloway v. Caraco Pharm. Labs., Ltd.*, 287 F.R.D. 402, 408 (E.D. Mich. 2012).

In addition, many members of the proposed Settlement Class may not even be aware of their potential right of action if Defendant did indeed disclose their

protected information to third parties. Where consumers are unlikely to discover (and vindicate) injuries absent certification of a class, class treatment is superior to the alternatives. *Young*, 693 F.3d at 545–46.

Therefore, because common questions predominate and a class action is the superior method for adjudicating the controversy, maintenance of this action as a class action is appropriate.

## V.   PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Fed. R. Civ. P. 23(g)(1)(B), "a court that certifies a class must appoint counsel . . . [who] must fairly and adequately represent the interests of the class." In making this determination, the Court considers proposed class counsel's: (1) work in identifying or investigating the potential claim, (2) experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) knowledge of the applicable law, and (4) resources that it will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)–(iv).

As discussed, proposed Class Counsel have extensive experience in prosecuting consumer class actions in general, and privacy class actions specifically. *See* § IV.D, *supra*. And as a result of their zealous efforts in this case, Class Counsel have secured an extremely favorable automatic per class member recovery in this PPPA case. Thus, the Court should appoint Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP,

and E. Powell Miller of The Miller Law Firm, P.C. as Class Counsel.

## VI.   PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotations omitted); *see also Newberg on Class Actions* § 11.41 (4th ed. 2002) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). The procedure for review of a proposed class action settlement is a well-established two-step process. *Id.* § 11.25. The first step is a "preliminary, pre-notification hearing to determine whether the proposed settlement is within the range of possible approval." *In re Packaged Ice Antitrust Litig.*, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010). The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by a court on the basis of written submissions and informal presentations from the settling parties. *Manual for Complex Litigation* § 21.632 (4th ed. 2004).

Fed. R. Civ. P. 23(e)(2) provides factors for the Court to determine if a settlement is "fair, reasonable, and adequate." The Rule 23(e)(2) factors are: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is

23

adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed attorney's fee, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(2); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

In addition, the Sixth Circuit has laid out its own factors to consider. *See UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). They are: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.*

### A.     The Rule 23(e)(2) Factors Weigh in Favor of Preliminary Approval

This Settlement easily satisfies the Rule 23(e)(2) factors.

First, as explained above, Plaintiff and Class Counsel have adequately represented the class, including by securing an outstanding per-class member recovery ever in a PPPA case through the Settlement. *See* Introduction, *supra*.

Second, the Settlement was negotiated at arm's-length through a mediation with Judge Rosen, after the Parties exchanged information sufficient to adequately assess the strengths and weaknesses of the case. *See* § II.C, *supra*.

Third, taking into account the factors listed in Rule 23, the relief provided is clearly adequate. The Settlement provides for Settlement Class Members to receive cash payments of approximately $248 without even filing a claim form. Agreement ¶ 2.1. So long as Settlement Class Members do not exclude themselves from the Settlement, they will receive a cash payment. *Id.* The attorneys' fees and costs provided for by the Settlement are consistent with that of other PPPA settlements in this District. *See, e.g.*, *Perlin* (No. 2:16-cv-10635 ECF No. 55, PageID.1087–1095) (E.D. Mich. Oct. 15, 2018) (awarding 40% of $7.4 million settlement fund resolving plaintiff's PPPA claim); *Kinder* (No. 1:14-cv-11284 ECF No. 72, PageID.2396–2436) (E.D. Mich. May 18, 2016) (awarding 35% of $7.5 million settlement fund resolving plaintiff's PPPA claim); *Moeller v. American Media, Inc.* (No. 2:16-cv-11367 ECF No. 42, PageID.891–899) (E.D. Mich. Sept. 28, 2017) (awarding 35% of $7.6 million settlement fund resolving plaintiff's PPPA claim).

Fourth, the proposed Settlement treats class members equitably relative to each other as every Settlement Class Member will receive an identical *pro rata* cash payment under the Settlement. Agreement ¶ 2.1.

## B.   The Sixth Circuit's *UAW* Factors Weigh in Favor of Preliminary Approval

The Sixth Circuit's *UAW* factors also weigh in favor of preliminary approval. When evaluating the factors, "[t]he district court enjoys wide discretion in assessing the weight and applicability of the[] factors." *Granada Investments, Inc. v. DWG*

*Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992). "The court may choose to consider only those factors that are relevant to the settlement at hand and may weigh particular factors according to the demands of the case." *UAW v. Gen. Motors Corp.*, 2006 WL 891151 at *14 (E.D. Mich. Mar. 31, 2006).

### 1.      There Is No Risk of Fraud or Collusion (*UAW* Factor 1)

The first *UAW* factor is "the risk of fraud or collusion." *UAW*, 497 F.3d at 631. "Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary." *Leonhardt v. AvrinMeritor, Inc.*, 581 F. Supp. 2d 818, 838 (E.D. Mich. 2008). Where, as here, a settlement was reached through arm's-length negotiations through an experienced mediator, there is no evidence of fraud or collusion. *See, e.g.*, *Sheick v. Auto. Component Carrier, LLC*, 2010 WL 3070130, at *13 (E.D. Mich. Aug. 2, 2010) ("[N]egotiations of the Settlement Agreement were conducted at arm's-length by adversarial parties and experienced counsel, which itself is indicative of fairness, reasonableness, and adequacy.").

### 2.      Litigation Through Trial Would Be Complex, Costly, and Long (*UAW* Factor 2)

The second *UAW* factor is "the complexity, expense and likely duration of the litigation." *UAW*, 497 F.3d at 631. Most class actions are inherently risky, and thus "[t]he obvious costs and uncertainty of such lengthy and complex litigation weigh in favor of settlement." *UAW*, 2006 WL 891151, at *17.

This case is no exception. As discussed above, the Parties had discussed dispositive motion practice, engaged in informal discovery, and a private mediation. Fraietta Decl. ¶¶ 6-11, 13. After a decision on the motion to dismiss, formal discovery would commence, including written discovery, depositions of the Parties, and third-party discovery, likely followed by briefing on contested motions for summary judgment and class certification. Defendant has indicated that it would continue to assert numerous defenses to both class certification and the merits, including arguments that the case is time-barred by the statute of limitations, that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the alleged disclosures are Defendant's agents), that Defendant also provided appropriate notice of its practices so as to make the alleged disclosures permissible under the PPPA, and that the PPPA does not apply to subscriptions that were not sold by Defendant "at retail," as is required to come under the scope of the statute. Plaintiff and Class Counsel are also aware that Defendant would prepare a competent defense at trial, and would appeal any adverse result at trial (and any order certifying a class). *Id.* ¶ 22. Simply put, this would be lengthy and very expensive litigation if it were to continue. *See Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex.").

Rather than embarking on years of protracted and uncertain litigation, Plaintiff

and his counsel negotiated a Settlement that provides immediate, certain, and meaningful relief to all Settlement Class members. Thus, the second factor weighs in favor of finding the Settlement fair, reasonable and adequate. *See Borcea v. Carnival Corp.*, 238 F.R.D. 664, 674 (S.D. Fla. 2006) (noting "[i]t has been held proper to take the bird in the hand instead of a prospective flock in the bush").

### 3.    Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*UAW* Factor 3)

The third factor is "the amount of discovery engaged in by the parties." *UAW*, 497 F.3d at 631. Even before filing this case, Plaintiff's counsel conducted a wide-ranging investigation into Defendant's list rental practices and other practices of disclosing subscribers' information during the relevant pre-July 31, 2016 time frame, and in connection with that investigation, obtained several key documents from archives of publicly accessible websites in existence during the relevant time frame. *See* Fraietta Decl. ¶ 5. Moreover, in connection with the Parties' settlement negotiations, Plaintiff obtained wide-ranging discovery from Defendant on issues pertaining to class certification and the merits. *Id*. ¶¶ 11-12.

The information and materials obtained by Plaintiff's counsel, both prior to and during the litigation, enabled Plaintiff and his counsel to meaningfully assess the strengths and weaknesses of the Settlement Class's claims and defenses and to negotiate a Settlement that is fair, reasonable, and adequate. *Id.* ¶ 11. Class Counsel's experience in similar matters, as well as the efforts made by counsel on both sides,

confirms that they are sufficiently well apprised of the facts of this action and the strengths and weaknesses of their respective cases to make an intelligent analysis of the proposed settlement. Accordingly, the third factor weighs in favor of finding the Settlement fair, reasonable and adequate.

### 4. Plaintiff Would Face Real Risks if the Case Proceeded (*UAW* Factor 4)

The fourth *UAW* factor is "the likelihood of success on the merits." *UAW*, 497 F.3d at 631. Here, although Plaintiff believes her case is strong, it is not without risk. As previously mentioned, Defendant has made clear that absent a settlement, it will defend the case vigorously on the merits, including as time-barred by the applicable statute of limitations, and will move for summary judgment on various issues and contest class certification on various grounds. *See* § VI.B.2, *supra*. The Court has not yet certified the proposed Class and the Parties anticipate that such a determination would only be reached after lengthy discovery and exhaustive class certification briefing is filed. Defendant would likely argue that individual questions preclude class certification. Defendant would also likely argue that a class action is not a superior method to resolve Plaintiff's claims, and that a class trial would not be manageable. And even if the Court certified a class, Defendant would likely challenge certification through a Rule 23(f) application and then move to decertify.

The possibility of losing on the merits, as well as the risks of losing class certification, and maintaining certification of any class that is certified through trial,

were all significant hurdles to obtaining class-wide relief in this case. The Settlement eliminates this risk, as well as the attendant expense and delay. Accordingly, the fourth factor also favors preliminary approval.

### 5. Proposed Class Counsel and Class Representative Support the Settlement (*UAW* Factor 5)

The fifth *UAW* factor is "the opinions of class counsel and class representatives." *UAW*, 497 F.3d at 631. "The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW*, 2008 WL 4104329, at *26. Here, both proposed Class Counsel and Class Representative support the Settlement. *See* Fraietta Decl. ¶¶ 21, 23. This *UAW* factor, therefore, favors preliminary approval.

### 6. The Reaction of Absent Class Members (*UAW* Factor 6)

The sixth *UAW* factor is "the reaction of absent class members." *UAW*, 497 F.3d at 631. Because the Class Representatives are presently at the preliminary approval stage, Notice has not yet been disseminated and the Settlement Class has accordingly not yet had an opportunity to voice any opposition to (or support for) the Settlement. Thus, Plaintiff will address factor six in detail in their motion for final approval of the Settlement, after Notice has been disseminated and the Objection and Exclusion Deadline have passed. Nonetheless, Plaintiff and Class Counsel strongly support the Settlement, which they believe is fair, reasonable, and adequate and in the best interest of the Settlement Class. Accordingly, the sixth

factor weighs in favor of preliminary approval.

### 7.    The Settlement Serves the Public Interest (*UAW* Factor 7)

The seventh and final *UAW* factor is "the public interest." *UAW*, 497 F.3d at 631. Settlements may serve the public interest by advancing a statute's goals or by conserving judicial resources. *See In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 530 (E.D. Mich. 2003). The Settlement here accomplishes both.

First, "[t]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserves judicial resources." *Id.* Further, when individual class members seek a relatively small amount of statutory damages, "economic reality dictates that [their] suit proceed as a class action or not at all." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974). Here, if the Settlement does not receive the Court's final approval, the Parties anticipate a complex and lengthy litigation that would continue and would require significantly more motion practice and potential appeals. *See Sims v. Pfizer, Inc.*, 2016 WL 772545, at *9 (E.D. Mich. Feb. 24, 2016) (finally approving settlement and finding that "absent settlement, all class members would be subject to the uncertainties, hardship, and delay attendant to continued litigation."). Thus, by avoiding complex class action litigation that can consume a court's time and money, the Settlement furthers the public interest.

Second, the Settlement also serves the public interest by furthering the

31

objectives of the Michigan legislature in enacting the PPPA. The PPPA recognizes that "one's choice in videos, records, and books is nobody's business but one's own." House Legis. Analysis Section, H.B. No. 5331. Class action litigation in this area is a means of safeguarding the privacy of readers under the PPPA, especially because some consumers may be unaware of the data sharing practices alleged here (*i.e.*, that Defendant disclosed its customers' personal reading information without their consent). This factor therefore supports preliminary approval.

Thus, all of the *UAW* factors weigh in favor of approval. Because the settlement on its face is fair, reasonable, and adequate, and not a product of collusion, the Court should grant preliminary approval.

## VII.  THE NOTICE PLAN SHOULD BE APPROVED IN FORM AND SUBSTANCE

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Rule 23(e)(1) similarly provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, the class claims and defenses at issue, that class members may enter an appearance through

32

counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B). Notice is "adequate if it may be understood by the average class member." *Newberg*, § 11:53 at 167.

Here, the Parties have agreed upon a multi-part notice plan that easily satisfies the requirements of both Rule 23 and Due Process. First, the Settlement Administrator will send direct notice by postal mail to all Settlement Class Members for whom the Settlement Administrator has been able to identify a postal address that it concludes has a reasonable likelihood of reflecting the current residence of such Settlement Class Member. Agreement ¶ 4.1(b)(ii); Agreement Ex. B. If more than one postal address is identified, the Settlement Administrator will send the postal mail notice to both addresses, and each notice will indicate the address to which the Settlement Class Member's cash award check will be sent. *Id.* ¶ 4.1(b)(iii). Next, for any Settlement Class Member for whom the Settlement Administrator is unable to identify at least one postal address, the Settlement Administrator will send notice via email. *Id.* ¶ 4.1(b)(iv); Agreement Ex. A. Further, the Settlement Administrator will establish a Settlement Website that shall contain the "long form notice" (*see* Agreement Ex. C), as well as access to important Court documents, upcoming deadlines, and the ability to file claim forms online (if needed for any unidentified class members), or an updated postal address. *Id.* ¶ 4.1(c). Finally, the

Settlement Administrator will also provide notice of the Settlement to the appropriate state and federal officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *Id*. ¶ 4.1(e).

## VIII.  CONCLUSION

Based on the above, Plaintiff respectfully requests that the Court grant his Unopposed Motion for Preliminary Approval of the Settlement. A Proposed Order granting preliminary approval, certifying the Settlement Class, appointing Class Counsel, and approving the Proposed Notice of Settlement is submitted herewith.

Dated: July 8, 2022                              Respectfully submitted,

By: */s/ E. Powell Miller*
E. Powell Miller (P39487)
Sharon S. Almonrode (P33938)
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel: 248.841.2200
epm@millerlawpc.com
ssa@millerlawpc.com

Joseph I. Marchese (P85862)
jmarchese@bursor.com
Philip L. Fraietta (P85228)
pfraietta@bursor.com
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, New York 10019
Tel: 646.837.7150

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com

**HEDIN HALL LLP**
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131
Tel: 305.357.2107

*Proposed Class Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, E. Powell Miller, an attorney, hereby certify that on July 8, 2022, I served the above and foregoing ***Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement*** on all counsel of record by filing it electronically with the Clerk of the Court using the CM/ECF filing system.

*/s/ E. Powell Miller*
E. Powell Miller
**THE MILLER LAW FIRM, P.C.**
950 W. University Dr., Ste 300
Rochester, MI 48307
Tel: 248.841.2200
