UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RALPH STRANO, individually and on
behalf of all others similarly situated,

        Plaintiff,                                      Case No. 1:21-cv-12987

v.                                                     Honorable Thomas L. Ludington
                                                         United States District Judge

KIPLINGER WASHINGTON EDITORS, INC.,

        Defendant.
_____/

**OPINION AND ORDER DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

In this class-action suit brought under Michigan's Preservation of Personal Privacy Act (PPPA), Plaintiff Ralph Strano[1] alleges Defendant Kiplinger Washington Editors improperly disclosed "detailed information" about his subscription to *Kiplinger's Personal Finance*, leading to "a barrage of unwanted junk mail." ECF No. 9 at PageID.543–44.

Following successful settlement negotiations, Plaintiff filed an unopposed motion for preliminary approval of the class-action settlement. ECF No. 19. The Motion seeks (1) class certification for settlement purposes; (2) appointment of Plaintiff's attorneys as class counsel for settlement purposes; (3) preliminary approval of the Proposed Settlement Agreement; and (4) approval of the proposed notice plan. *Id.*

But the Agreement includes a $5,000 incentive award for the lead plaintiff, raising concerns regarding the adequacy of the lead plaintiff's representation and the adequacy of the settlement relief for the unnamed plaintiffs. Accordingly, Plaintiff's motion will be denied without prejudice.

---

[1] Plaintiff's Amended Complaint replaced the original Plaintiff, Jay Ketover, with Ralph Strano. ECF No. 9.

### I.

Plaintiff's proposed Settlement Class includes:

> All persons who purchased a subscription to *Kiplinger's Personal Finance* Magazine, *The Kiplinger* Letter, *Kiplinger's Investing for Income*, *The Kiplinger Tax* Letter, or *Kiplinger's Retirement* Report directly from the publisher thereof for delivery to a Michigan street address, and who subscribed to such publication between December 24, 2015 and July 30, 2016.

ECF No. 19-6 at PageID.1249.

The Agreement provides for payments to the members of the proposed Settlement Class, release of claims, class-notice procedures, settlement administration, attorney's fees, service awards, and termination of the Agreement. *See generally* ECF No. 19-6.

Under the terms of the Agreement, Defendant would deposit $6,845,670 into the Settlement Fund, *id.* at PageID.1252, and each member of the Settlement Class would automatically receive approximately $248, ECF No. 19 at PageID.1167. Plaintiff Strano, however, would receive an additional $5,000 "service award" for his "time, effort, and leadership serving as class representative." *Id.* at PageID.1167–68, *see also* ECF No. 19-6 at PageID.1268.

### II.

The claims of "a class proposed to be certified for purposes of settlement[] may be settled, voluntarily dismissed, or compromised only with the court's approval." FED. R. CIV. P. 23(e).

Although often seen as a rubber stamp, court approval of a proposed class-action settlement ensures fairness to the members of the class. *See* Linda S. Mullenix, *Ending Class Actions as We Know Them: Rethinking the American Class Action*, 64 EMORY L.J. 399, 430 (2014) ("In practice, however, the hydraulic pressure for courts to approve settlements routinely leads courts to rubber stamp such class action settlement agreements."); Kristen Elia, Note, *Hard-Look Judicial Review of Class Action Settlements*, 85 U. CIN. L. REV. 1135 (2018) (discussing the recent trend of

appellate courts "taking a hard-look at proposed settlements in class actions" to ensure fairness to class members).

The question at the preliminary-approval stage is "simply whether the settlement is fair enough" to begin the class-notice process. *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020). To that end, the parties must "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." FED. R. CIV. P. 23(e)(1)(A). "The court must direct notice" of the proposed settlement "to all class members who would be bound" by it if "the court will likely be able to approve the proposal under Rule 23(e)(2)[] and certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B).

But the district court may only grant or deny preliminary approval; it may not modify or rewrite the proposed settlement. *In re Flint Water Cases*, 499 F. Supp. 3d 399, 409 (E.D. Mich. 2021). Thus, a district court that finds that a proposed lead-plaintiff incentive award does not adequately ensure fairness to the unnamed class members has two options: (1) grant preliminary approval of the proposed settlement agreement and deal with the incentive award at the final-approval stage, or (2) reject the proposed settlement agreement. The latter seems more prudent, as it avoids potential walk back, which would waste public and private resources.

### III.

### A.

The Sixth Circuit has "never explicitly passed judgment on the appropriateness of incentive awards" but found that "there may be circumstances where incentive awards are appropriate." *Hadix v. Johnson*, 322 F.3d 895, 897–98 (6th Cir. 2003). Although the Sixth Circuit has yet to elaborate on which circumstances might warrant an incentive award, *see Condo. Ass'n v. Oakland*

*Cnty.*, No. CV 22-11468, 2022 WL 17337815, at *5 (E.D. Mich. Nov. 30, 2022) (citing *Hadix*, 322 F.3d at 898), it has noted when incentive awards are *not* appropriate, *see generally In re Dry Max Pampers Litig.*, 724 F.3d 715, 722 (6th Cir. 2013) (finding that proposed settlement did not satisfy Rule 23(a)(4)'s adequacy requirement, because it gave a $1,000 service award to the class representatives while unnamed class members received only one box of diapers per household).

In *Dry Max*, for example, Judge Raymond Kethledge noted that such incentive awards raise Rule 23(a)(4) concerns about the adequacy of the class representative and Rule 23(e) concerns about the adequacy of the settlement relief. *Dry Max*, 724 F.3d at 722 ("But we should be most dubious of incentive payments when they make the class representatives whole, or (as here) even more than whole; for in that case the class representatives have no reason to care whether the mechanisms available to unnamed class members can provide adequate relief." (citing *Radcliffe v. Experian Info. Sols.*, 715 F.3d 1157, 1161 (9th Cir. 2013))).

Although the Sixth Circuit has not defined the outer limits for service awards, a survey of the precedent suggests service awards are appropriate if, absent proof of the lead plaintiff's extraordinary involvement, they are at most 10 times the amount that the unnamed class members would receive. *See, e.g.*, *Garner Props. & Mgmt. v. City of Inkster*, 333 F.R.D. 614, 626 (E.D. Mich. 2020) (reducing incentive award from the "100 times greater" $10,000 incentive award to a "10 times greater" incentive award of $1,000); *Hodges v. 77 Grandville*, No. 19-81, 2022 WL 456769 at *3 (W.D. Mich. Feb. 15, 2022) (denying incentive award of $10,000 because it was 50 times greater than what the unnamed class members would have received).

**B.**

Here, both parties were directed to file supplemental briefing "addressing (1) whether Plaintiff Strano's $5,000 'service award' create[d] an inappropriate incentive to settle regardless

of the benefit to other class members and (2) why Plaintiff is entitled to $5,000 as a 'service award.'" ECF No. 21 at PageID.1367.

But neither brief provided a persuasive explanation justifying Plaintiff Strano's proposed incentive award—which would be more than 2000% greater than the $248 that what the unnamed class members would receive. *See* ECF Nos. 22; 23; *see also* ECF No. 19 at PageID.1159.

Defendant merely states that it "is not aware of any information to suggest that the proposed 'service award' created an inappropriate settlement in this case," and that it "has no first-hand knowledge as to Plaintiff Strano's involvement in the case, other than his being a named plaintiff." ECF No. 23 at PageID.1399.

Plaintiff, on the other hand, makes three arguments to justify the $5,000 incentive award. First, he argues the incentive award does not create an inappropriate incentive to settle, because "the proposed settlement outperforms almost every other previously approved PPPA settlement, both in terms of its structure and per-class member recovery," ECF No. 22 at PageID.1373, because it is "equal to or less than the service awards previously approved in this District in other PPPA cases," ECF No. 22 at PageID.1376–77.

But that *argumentum ad populum* is logically fallacious. *See* Kenneth A. Adams, *Interpreting and Drafting Efforts Provisions: From Unreason to Reason*, 74 BUS. LAW. 677, 703 (2019) ("How many people ascribe to an idea is not proof that it's valid."). True, other courts have permitted $5,000 incentive awards. But the Sixth Circuit, as discussed above, has encouraged courts to scrutinize such awards when they make the lead plaintiff whole but not class members. *See Dry Max*, 724 F.3d at 722.

Even so, comparing the strength of this settlement to similar settlements overlooks the PPPA's statutory penalty: the greater of either $5,000 or "actual damages, including damages for

emotional distress." MICH. COMP. LAWS § 445.1715(a) (1989). In this way, Strano's $5,000 incentive payment would seem to make him whole under the PPPA, grouping it with the "most dubious of incentive payments." *See In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013). On top of that, it is more than 20 times greater than the proposed relief of the unnamed class members. With both sides of Strano's incentive award tainted as such, and no extraordinary circumstances present, this Court must reject the Agreement to ensure adequacy of relief for the unnamed class members.

Plaintiff's second argument, that he spent "considerable time" protecting the Class's interests, ECF No. 22 at PageID.1376, is supported by only a vague affidavit that does not quantify Strano's invested time, *see* ECF No. 22-3.

But the tasks Plaintiffs outline require little to no time or involvement and appear to be requirements for even the least involved plaintiffs. *See, e.g.*, *id.* (noting that Strano "detail[ed] his magazine subscription purchase history," "reviewed" and "approved" the 25-page complaint, "discuss[ed] the status of the case" with his attorneys, and searched for any documents in his possession that Defendant might have requested had the case progressed to formal discovery). Simply put, Strano's involvement has not been extraordinary compared to other lead plaintiffs such that he deserves a 2000% multiplier for his monetary relief.

Plaintiff's third reason is that Strano "revealed his PPPA-protected status as a *Kiplinger's Personal Finance* subscriber." ECF No. 22 at PageID.1376–77.

But this Court is not persuaded that Strano's revelation justifies receiving more than 2000% of the relief that the other class members would receive. *See Altnor v. Preferred Freezer Servs., Inc.,* 197 F. Supp. 3d 746, 769 (E.D. Pa. 2016) (reducing incentive award from $4,000 to $1,410.80

based on the class representatives' limited involvement and failure to identify any specific risks they faced by serving as class representative).

In sum, the $5,000 service award is not fair enough to begin the class-notice process. And this Court may not modify a service award at the preliminary approval stage. *See In re Flint Water Cases*, 499 F. Supp. 3d 399, 409 (E.D. Mich. 2021) ("The Court may not rewrite the settlement but may only reject it or grant it preliminary approval."). Accordingly, because the proposed service award is more than 20 times larger than the $248 that the unnamed class members would receive, Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement, ECF No. 19, will be denied without prejudice.

### IV.

Accordingly, it is **ORDERED** that Plaintiff's Motion for Preliminary Approval of Settlement, ECF No. 19, is **DENIED WITHOUT PREJUDICE**.

Dated: December 15, 2022               s/Thomas L. Ludington
                                       THOMAS L. LUDINGTON
                                       United States District Judge