**EXHIBIT 1**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RALPH STRANO, individually and on behalf of all others similarly situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>KIPLINGER WASHINGTON EDITORS, INC.,<br><br>                    Defendant. | Case No. 21-cv-12987-TLL-PTM<br><br>Hon. Thomas L. Ludington<br><br>Mag. Judge Patricia T. Morris |

## DECLARATION OF PHILIP L. FRAIETTA
## IN SUPPORT OF PLAINTIFF'S MOTION FOR
## <u>ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARD</u>

I, Philip L. Fraietta, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1.      I am a partner at Bursor & Fisher, P.A., Class Counsel in this action.  I am an attorney at law licensed to practice in the States of Michigan, New York, New Jersey, and Illinois, and I am a member of the bar of this Court.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would testify competently thereto.

2.      I make this declaration in support of Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, And Service Award, filed herewith.

3.      Attached hereto as **Exhibit A** is a true and correct copy of the Parties'

Class Action Settlement Agreement, and the exhibits attached thereto.

4.      Beginning in 2015, my firm and my co-counsel (together, "Plaintiff's Counsel") began investigating and litigating cases against publishers for alleged violations of the Michigan Preservation of Personal Privacy Act (the "PPPA"). The theory of liability was novel.  Although a few other cases had been filed against publishers, none had progressed through class certification or summary judgment.

5.      Despite the uncertainty, Plaintiff's Counsel took on the cases and litigated numerous issues of first impression under the statute, including, but not limited to:  (i) whether an alleged violation of the statute was sufficient to confer Article III standing; (ii) whether the statute violated the First Amendment on its face or as applied; (iii) whether plaintiffs could pursue class action claims for statutory damages in federal court under Fed. R. Civ. P. 23 in light of MCR 3.501(A)(5); and (iv) whether a 2016 amendment to the statute applied retroactively.  *See, e.g.*, *Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. 2016); *Boelter v. Advance Magazine Publishers Inc.*, 210 F. Supp. 3d 579 (S.D.N.Y. 2016).

6.      Thereafter, Plaintiff's Counsel conducted vigorous discovery, which included in-depth research into several data industry practices, including data appending and data cooperatives, and ultimately third-party discovery from those

companies. Through that discovery, my firm and my co-counsel amassed a wealth of institutional knowledge regarding the data industry.

7.   Next, Plaintiff's Counsel won a motion for summary judgment for the named plaintiff in the *Hearst* case. *See Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017). The *Hearst* summary judgment victory provided a roadmap to liability for publishers based on the aforementioned data industry practices.

8.   Then, Plaintiff's Counsel were successful in arguing that the amended version of the PPPA does not apply to claims that accrued prior to its effective date of July 31, 2016. *See Horton v. GameStop, Corp.*, 380 F. Supp. 3d 679, 683 (W.D. Mich. 2018) (holding amended version of the PPPA does not apply to claims that accrued prior to its effective date of July 31, 2016).

9.   Finally, in the aforementioned PPPA litigation it was assumed that PPPA cases were governed by a three-year statute of limitations. *See, e.g.*, *Hearst*, 269 F. Supp. 3d at 172; *Edwards v. Hearst Communications, Inc.*, 2016 WL 6651563 (S.D.N.Y. Nov. 9, 2016). Nonetheless, shortly before filing this lawsuit, Plaintiff's Counsel recognized that the Sixth Circuit's opinion in *Palmer Park Square, LLC v. Scottsdale Insurance Company*, 878 F.3d 530 (6th Cir. 2017) may provide for a six-year statute of limitations for PPPA claims, and therefore may provide an avenue for class recovery under the original PPPA. Thus, despite the

3

uncertainty regarding the statute of limitations, Plaintiff's Counsel took on this case and others.

10.     A Rule 12(b)(6) motion for failure to state a claim was also a threat that could potentially deprive the Settlement Class of any recovery whatsoever, as was later evidenced by *Nashel v. New York Times Company*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) in which the court granted a publisher defendant's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *See also Bozung v. Christianbook, LLC*, 2023 WL 2385004 (W.D. Mich. Mar. 6, 2023) (granting similar motion to dismiss).

11.     In sum, this Settlement was only made possible by Plaintiff's Counsel's exemplary record litigating other PPPA cases against other publisher defendants for over seven years.

12.     Aside from Plaintiff's Counsel's work related to analyzing complex legal questions under the PPPA, Plaintiff's Counsel also conducted comprehensive pre-filing investigations concerning every aspect of the factual and legal issues underlying this action. These extensive pre-filing efforts included:

- Researching the nature of Defendant's business, including its practices of selling Kiplinger Publications, its consumer-privacy practices, and public statements concerning the foregoing;

- Interviewing numerous individuals in Michigan who subscribed to Kiplinger Publications in 2015 and 2016, including about their process of purchasing a subscription and any disclosures they received or agreed to during the purchase process;

- Performing research and analysis regarding Defendant's list rental and other disclosure practices, including data cards and other public information available online concerning the practices during the relevant 2015–2016 timeframe;

- Performing an in-depth analysis of the various versions of Defendant's Privacy Policy, Terms of Service, and other publicly accessible documents available on its websites during the relevant time period;

- Researching the relevant law and examining the pertinent facts to assess the merits of a potential PPPA claim against Defendant and defenses that Defendant might assert thereto; and

- Investigating Defendant's financial condition in order to assess the likelihood of ultimately recovering a class-wide statutory damages award from Defendant.

13.     On December 22, 2021, former plaintiff Jay Ketover initiated this action with the Class Action Complaint. (ECF No. 1). On February 18, 2022, Plaintiff Strano filed a First Amended Complaint making the same allegations and replacing Mr. Ketover as named plaintiff in the action.  *See generally* FAC.

14.     From the outset of the case, the Parties engaged in direct communication, and as part of their obligation under Fed. R. Civ. P. 26(f), discussed the prospect of resolution.

15.     Those discussions led to an agreement between the Parties to engage in mediation, which the Parties agreed would take place before The Honorable Gerald E. Rosen (Ret. Chief Judge), who is a neutral mediator at JAMS in Detroit. Plaintiff's Counsel paid for Plaintiff's share of the mediation fees.  The Parties

sought and obtained stays of all case deadlines to accommodate the mediation.

16.    As part of the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative class.

17.    Given that the information exchanged would have been the same information produced in formal discovery related to issues of class certification and summary judgment, the Parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.

18.    In preparation for the mediation, Plaintiff's Counsel prepared a detailed mediation statement outlining the strength and weaknesses of the Plaintiff's case, and comparing his case with other PPPA cases against magazine publishers that had settled, to help evaluate any potential settlement.  My firm also thoroughly reviewed the informal discovery produced by Defendant.

19.    The mediation took place on May 31, 2022 and lasted the entire day. At the conclusion of the mediation, the Parties reached agreement on all material terms of a class action settlement and executed a term sheet.

20.    The resulting $6,845,670 non-reversionary Settlement secures an excellent recovery for the Settlement Class.  Based on Defendant's records the proposed Settlement Class includes approximately 17,553 persons who purchased a subscription directly from the publisher of *Kiplinger's Personal Finance* and its other magazines for delivery to a Michigan street address or electronically, and

who subscribed to such publication between December 24, 2015, and July 30, 2016.  With a $6,845,670 non-reversionary Settlement Fund, each Class Member who does not exclude him or herself from the Settlement should receive a *pro rata* cash payment of approximately $248.

21.     After reaching an agreement in principle on the Settlement, Plaintiff's Counsel worked extensively with defense counsel to finalize and memorialize the agreement into a formal Class Action Settlement Agreement, including proposed class notice documents.  That process included rounds of revisions.

22.     After finalizing and executing the Class Action Settlement Agreement, Plaintiff's Counsel prepared Plaintiff's Unopposed Motion For Preliminary Approval  (ECF No. 19) and a Revised Unopposed Motion for Preliminary Approval of Class Action Settlement on December 21, 2022. (ECF No. 25).

23.     On January 6, 2023, the Court granted Plaintiff's Motion For Preliminary Approval.  ECF No. 26.

24.     The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator.

25.     Plaintiff and Plaintiff's Counsel recognize that despite our belief in the strength of Plaintiff's claims, and Plaintiff's and the Class's ability to ultimately each secure a $5,000 statutory award under the PPPA, the expense, duration, and complexity of protracted litigation would be substantial and the outcome uncertain.

26.     Plaintiff and Plaintiff's Counsel are also mindful that absent a settlement, the success of Defendant's various defenses in this case could deprive the Plaintiff and the Settlement Class Members of any potential relief whatsoever. Defendant is represented by highly experienced attorneys who have made clear that absent a settlement, they were prepared to continue their vigorous defense of this case. Plaintiff and Plaintiff's Counsel are also aware that Defendant would continue to challenge liability, as well as assert several defenses, including the applicable statute of limitations. Defendant has argued that this action is subject to a three-year statute of limitations, which would render the action time barred. Plaintiff argues for a six-year statute of limitations. An adverse decision on the statute of limitations would have resulted in the Settlement Class receiving nothing.

27.     Defendant had also indicated that it would continue to assert numerous defenses on the merits. More specifically, Plaintiff is aware that Defendant would continue to assert that the FAC should be dismissed for failure to

8

state a claim pursuant to Rule 12(b)(6) – and indeed, a similar motion to dismiss was granted by another court in this District just a few months after the mediation. *See Nashel v. New York Times Company*, 2022 WL 6775657 (E.D. Mich. Oct. 11, 2022) (granting publisher defendant's motion to dismiss for failure to state a claim); *see also Bozung v. Christianbook, LLC*, 2023 WL 2385004 (W.D. Mich. Mar. 6, 2023) (granting similar motion to dismiss).  Defendant would also likely argue that the PPPA does not prohibit the disclosure of the magazine subscriptions information at issue (because the third-party recipients of the disclosures are Defendant's agents), that Defendant also provided appropriate notice of its practices, and that the PPPA does not apply to subscriptions that were not sold by Defendant "at retail," as is required to come under the scope of the statute. Plaintiff and Plaintiff's Counsel are also aware that if its motion to dismiss was unsuccessful, Defendant would oppose class certification vigorously, and that Defendant would prepare a competent defense at trial.  Looking beyond trial, Plaintiff is also keenly aware that Defendant could appeal the merits of any adverse decision, and that considering the statutory damages in play it would argue – in both the trial and appellate courts – for a reduction of damages based on due process concerns.

28.     Plaintiff and Plaintiff's Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the settlement is fair,

reasonable, and adequate, and well within the range of approval.

29.     Since the Court granted preliminary approval, Plaintiff's Counsel has worked with the Settlement Administrator, JND Legal Administration ("JND"), to carry out the Court-ordered notice plan.  Specifically, Plaintiff's Counsel helped compile and review the contents of the required notice to State Attorney Generals pursuant to 28 U.S.C. § 1715, reviewed the final claim and notice forms, and reviewed and tested the settlement website before it launched live.

30.     Plaintiff's Counsel also worked with Defendant and JND to secure the class list and effectuate the Notice Plan.

31.     Since class notice has been disseminated, Plaintiff's Counsel has worked with JND on a weekly basis to monitor settlement claims and any other issues that may arise.  Plaintiff's Counsel has also fielded calls from Settlement Class Members and assisted with their requests.

32.     My firm undertook this matter on a contingency basis.  Due to the commitment of time and capital investment required to litigate this action, my firm had to forego other work, including hourly non-contingent matters, and other class action matters.

33.     To date, my firm has also spent $5,215.17 in out-of-pocket costs and expenses in connection with the prosecution of this case.  Attached as **Exhibit B** is an itemized list of those costs and expenses.  These costs and expenses are

reflected in the records of my firm, and were necessary to prosecute this litigation. Cost and expense items are billed separately, and such charges are not duplicated in my firm's billing rates.

34.     Attached hereto as **Exhibit C** is a current firm resume for Bursor & Fisher, P.A.

35.     As aforementioned, my firm, Bursor & Fisher, P.A., has significant experience in litigating class actions of similar size, scope, and complexity to the instant action.  (*See* **Ex. C**; Firm Resume of Bursor & Fisher, P.A.).  We were Class Counsel in *Moeller v. American Media, Inc.*, Case No. 16-cv-11367-JEL (E.D. Mich.), a case brought under the PPPA wherein we reached a class-wide settlement for $7.6 million.  We were also Class Counsel in *Kokoszki v. Playboy Enterprises, Inc.*, Case No. 19-cv-10302-BAF (E.D. Mich.), a case brought under the PPPA wherein we reached a class-wide settlement for $3.85 million.  We were also Class Counsel in *Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812-KMK (S.D.N.Y.), a case brought under the PPPA wherein we reached a class-wide settlement for $8.225 million.  As Class Counsel in *Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y.), a case brought under the PPPA, we reached a class-wide settlement for $16.375 million.  We were Class Counsel in *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y.), a case brought under

the PPPA wherein we reached a class-wide settlement for $13.75 million. We were also Class Counsel in *Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y.), a case brought under the PPPA wherein we reached a class-wide settlement for $50 million.

36.     Recently, we were appointed as Class Counsel in another PPPA case – *Loftus v. Outside Integrated Media, LLC*, Case No. 2:21-cv-11809 (E.D. Mich.) – in which The Honorable Mark A. Goldsmith approved our request for 35% of the settlement fund in attorneys' fees, costs, and expenses, while commending our work and noting that "the class has benefited in a concrete way" from the "very effective work" done by Plaintiff's counsel. *See* August 9, 2022, Hearing Transcript at 7:9-8:2 (approving Class Counsel's attorneys' fees request of 35 percent "where the lawyers did produce significant results for the class in very short order"). Attached hereto as **Exhibit D** is a true and correct copy of the August 9, 2022, Final Approval Hearing Transcript in *Loftus*. Similarly, in *Kain v. The Economist Newspaper NA, Inc.*, Case No. 4:21-cv-11807-MFL-CI (E.D. Mich.), as Class Counsel in another PPPA case, we were awarded 35% of the $9.5 million settlement fund in attorneys' fees, costs, and expenses.

37.     Additionally, my firm has also been recognized by courts across the country for its expertise in consumer class action lawsuits.  (*See* Ex. C); *see also Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 566 (S.D.N.Y. Feb. 25, 2014)

(Rakoff, J.) ("Bursor & Fisher, P.A., are class action lawyers who have experience litigating consumer claims. … The firm has been appointed class counsel in dozens of cases in both federal and state courts, and has won multi-million dollar verdicts or recoveries in five class action jury trials since 2008.")[1]; *In re Michaels Stores Pin Pad Litigation*, Case No. 11-cv-03350, ECF No. 22 (N.D. Ill. June 8, 2011) (appointing Bursor & Fisher class counsel to represent a putative nationwide class of consumers who made in-store purchases at Michaels using a debit or credit card and had their private financial information breached as a result).

38.     Moreover, my firm has served as trial counsel for class action plaintiffs in six jury trials and has won all six, with recoveries ranging from $21 million to $299 million.

39.     I believe Mr. Strano's active involvement in this case was critical to its ultimate resolution.  He took his role as class representative seriously, devoting time and effort to protecting the interests of the class.  Without his willingness to assume the risks and responsibilities of serving as class representative, I do not believe such a strong result could have been achieved.

40.     Mr. Strano equipped my firm with critical details regarding his experiences with Defendant.  He assisted my firm in investigating his claims,

---

[1] Bursor & Fisher has since won a sixth jury verdict in *Perez v. Rash Curtis & Associates*, Case No. 4:16-cv-03396-YGR (N.D. Cal.), for $267 million.

13

detailing his subscription histories, searching for and preserving documents, and aiding in drafting the FAC.  Mr. Strano also actively participated in the initial steps for document discovery and for deposition preparation.  And he actively consulted with counsel during the settlement process.

41.     In short, Mr. Strano has assisted my firm in pursuing this action on behalf of the class, and his involvement in this case has been nothing short of essential.

I declare under penalty of perjury that the above and foregoing is true and accurate.

Executed this 10th day of April 2023 at New York, New York.


_____*/s Philip L. Fraietta*_____
                    Philip L. Fraietta

**EXHIBIT A**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

RALPH STRANO, individually and on behalf of all others similarly situated,

Case No. 21-cv-12987-TLL-PTM

Plaintiff,

v.

KIPILNGER WASHINGTON EDITORS, INC.,

Defendant.

## CLASS ACTION SETTLEMENT AGREEMENT

This Agreement ("Agreement" or "Settlement Agreement") is entered into by and among (i) Plaintiff, Ralph Strano ("Plaintiff"); (ii) the Settlement Class (as defined herein); and (iii) Defendant, Kiplinger Washington Editors, Inc. ("Defendant" or "Kiplinger"). The Settlement Class and Plaintiff are collectively referred to as the "Plaintiffs" unless otherwise noted. The Plaintiff and the Defendant are collectively referred to herein as the "Parties." This Agreement is intended by the Parties to fully, finally and forever resolve, discharge, and settle the Released Claims (as defined herein), upon and subject to the terms and conditions of this Agreement, and subject to the final approval of the Court.

## RECITALS

A.     On December 22, 2021, Mr. Jay Ketover filed a putative class action in the United States District Court for the Eastern District of Michigan. The material allegations of the complaint centered on Defendant's alleged disclosure of its customers' personal information and magazine choices to third parties before July 30, 2016, which Mr. Ketover claimed was without permission and in violation of Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378 §§ 1-4, *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A.

No. 206, § 1 (Mich. 1989) (the "PPPA"). (Dkt. 1.)

B.      On February 18, 2022, Plaintiff Strano filed a First Amended Complaint making

the same allegations and replacing Mr. Ketover as named plaintiff in the putative class action

(Dkt. 9).

C.      From the outset of the case, the Parties engaged in direct communication, and as

part of their obligation under Fed. R. Civ. P. 26, discussed the prospect of resolution.  To that

end, before Defendant would answer or otherwise respond to the First Amended Complaint, the

Parties agreed to participate in a mediation with former United States District Judge Gerald E.

Rosen (of the U.S. District Court for the Eastern District of Michigan), who is a neutral mediator

affiliated with JAMS Detroit.

D.      The Parties sought and obtained stays of all case deadlines to accommodate the

mediation (ECF No 13 and 4/28/22 Text-Only Order).

E.      In advance of the mediation, the Parties exchanged informal discovery, including

on the size and scope of the putative class, which includes approximately 17,553 persons, and

also exchanged lengthy mediation briefing pertaining to the merits of the case, including the

applicable statute of limitations.

F.      On May 31, 2022, the Parties participated in a mediation with Judge Rosen.  The

mediation lasted approximately 10 hours.  At the conclusion of the mediation, the Parties reached

an agreement on all material terms of a class action settlement and executed a term sheet.

G.      At all times, Defendant has denied and continues to deny any wrongdoing

whatsoever and has denied and continues to deny that it committed, or threatened or attempted to

commit, any wrongful act or violation of law or duty alleged in the Action and to oppose

certification of a litigation class.  Defendant believes that the claims asserted in the Action

against it do not have merit and that it would have prevailed on a motion to dismiss, at summary judgment, at class certification, and/or at trial.  Nonetheless, taking into account the uncertainty and risks inherent in any litigation, Defendant has concluded it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement.  This Agreement is a compromise, and the Agreement, any related documents, and any negotiations resulting in it shall not be construed as or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of Defendant, or any of the Released Parties (defined below), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever or with respect to the certifiability of a litigation class.

H.      Plaintiff believes that the claims asserted in the Action against Defendant have merit and that he would have prevailed at summary judgment and/or trial.  Nonetheless, Plaintiff and Class Counsel recognize that Defendant has raised factual and legal defenses that present a risk that Plaintiff may not prevail.  Plaintiff and Class Counsel also recognize the expense and delay associated with continued prosecution of the Action against Defendant through a motion to dismiss, summary judgment, class discovery, class certification, trial, and any subsequent appeals.  Plaintiff and Class Counsel also have taken into account the uncertain outcome and risks of litigation, especially in complex class actions, as well as the difficulties inherent in such litigation.  Therefore, Plaintiff believes it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice.  Based on its evaluation, Class Counsel has concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff, the Settlement Class, and each of them, and Defendant, by and through its undersigned counsel that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, in consideration of the benefits flowing to the Parties from the Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

## AGREEMENT

1.     **DEFINITIONS**.

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1     "**Action**" means *Strano v. Kiplinger Washington Editors, Inc.*, Case No. 1:21-cv-12987-TLL-PTM, pending in the United States District Court for the Eastern District of Michigan.

1.2     "**Alternate Judgment**" means a form of final judgment that may be entered by the Court herein but in a form other than the form of Judgment provided for in this Agreement and where none of the Parties elects to terminate this Settlement by reason of such variance.

1.3     "**Cash Award**" means the cash compensation, payable by the Settlement Administrator from funds provided by Defendant on a pro rata basis, that each Settlement Class Member who has not opted-out of the Settlement shall be entitled to receive, which estimated amount shall be specified in the Notice.  Settlement Class Members shall have the option to elect to receive their Cash Awards via check, PayPal, or Venmo, provided however that the default payment method shall be check.

**1.4** **"Claim Deadline"** means 11:59 p.m., Eastern Time, on the date by which Unidentified Class Members must submit Claim Forms (either electronically on the Settlement Website or by mailing in a paper Claim Form) to be eligible for the benefits described herein, which date and time shall be specified in the Notice.

**1.5** **"Claim Form"** means the claim form attached hereto as Exhibit D, or its substantially similar form, as approved by the Court, that any Unidentified Class Members must complete and submit on or before the Claim Deadline to be eligible for the benefits described herein, which document shall be submitted to the Court when preliminary approval of the Settlement is sought.

**1.6** "**Class Counsel**" means Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP, and E. Powell Miller of The Miller Law Firm, P.C.

**1.7** **"Class List"** means an electronic list or lists from Defendant's available records that includes the names, last known U.S. Mail addresses, and email addresses, to the extent available, belonging to Persons within the Settlement Class, which shall be provided to the Settlement Administrator with a copy to Class Counsel in accordance with Paragraph 4.1(a).

**1.8** "**Class Representative**" means the named Plaintiff in this Action, Ralph Strano.

**1.9** "**Court**" means the United States District Court for the Eastern District Michigan, the Honorable Thomas L. Ludington presiding, or any judge who shall succeed him as the Judge in this Action.

**1.10** "**Defendant**" means Kiplinger Washington Editors, Inc.

**1.11** "**Defendant's Counsel**" means Walter E. Diercks of Rubin, Winston, Diercks, Harris & Cooke, LLP.

**1.12**     "**Effective Date**" means the date ten (10) days after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

**1.13**     "**Escrow Account**" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms acceptable to all Parties at a depository institution insured by the Federal Deposit Insurance Corporation.  The Settlement Fund shall be deposited by Defendant into the Escrow Account in accordance with the terms of this Agreement and the money in the Escrow Account shall be invested in the following types of accounts and/or instruments and no other: (i) demand deposit accounts and/or (ii) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less.  The costs of establishing and maintaining the Escrow Account shall be paid from the Settlement Fund.

**1.14**     "**Fee Award**" means the amount of attorneys' fees, costs, and reimbursement of expenses awarded by the Court to Class Counsel, which will be paid out of the Settlement Fund.

**1.15**     "**Final**" means one business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or *certiorari*, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on *certiorari*.

**1.16** "**Final Approval Hearing**" means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, the Fee Award, and the service award to the Class Representative.

**1.17** "**Final Judgment**" means the Final Judgment and Order to be entered by the Court approving the Agreement after the Final Approval Hearing.

**1.18** "**Kiplinger Publication**" means the following publications: *Kiplinger's Personal Finance* Magazine, *The Kiplinger* Letter, *Kiplinger's Investing for Income*, *The Kiplinger Tax* Letter or *Kiplinger's Retirement* Report.

**1.19** "**Michigan Subscriber Information**" means the combination of each of a Person's name, address in the State of Michigan and the title(s) and/or interest information derived solely from the title of the Kiplinger Publication to which such Person currently subscribes and/or previously subscribed.

**1.20** "**Notice**" means the notice of this proposed Class Action Settlement Agreement and Final Approval Hearing, which is to be sent to the Settlement Class substantially in the manner set forth in this Agreement, is consistent with the requirements of Due Process, Rule 23, and is substantially in the form of Exhibits A, B, and C hereto.

**1.21** "**Notice Date**" means the date by which the Notice set forth in Paragraph 4.1 is complete, which shall be no later than twenty-eight (28) days after Preliminary Approval.

**1.22** "**Objection/Exclusion Deadline**" means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Class must be made, which shall be designated as a date no later than forty-five (45) days after the Notice Date and no sooner than fourteen (14) days after papers supporting the Fee Award are filed with the Court and posted to the settlement website listed in Paragraph 4.1(d), or such other

date as ordered by the Court.

**1.23** "**Person**" shall mean, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

**1.24** "**Plaintiffs**" means Ralph Strano and the Settlement Class Members.

**1.25** "**Preliminary Approval**" means the Court's certification of the Settlement Class for settlement purposes, preliminary approval of this Settlement Agreement, and approval of the form and manner of the Notice.

**1.26** "**Preliminary Approval Order**" means the order preliminarily approving the Settlement Agreement, certifying the Settlement Class for settlement purposes, and directing notice thereof to the Settlement Class, which will be agreed upon by the Parties and submitted to the Court in conjunction with Plaintiffs' motion for preliminary approval of the Agreement.

**1.27** "**Released Claims**" means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extra contractual claims, damages, punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and or obligations (including "Unknown Claims," as defined below), whether in law or in equity, accrued or un-accrued, direct, individual or representative, of every nature and description whatsoever, whether based on the PPPA or other state, federal, local, statutory or common law or any other law, rule or regulation, against the Released Parties, or any of them, arising out of any facts, transactions, events, matters, occurrences, acts, disclosures, statements, representations, omissions or failures to act regarding the alleged disclosure of the Settlement Class Members' personal information or

Michigan Subscriber Information, including but not limited to all claims that were brought or could have been brought in the Action relating to any and all Releasing Parties.

1.28   "**Released Parties**" means Kiplinger Washington Editors, Inc., as well as any and all of its respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, licensors, licensees, associates, affiliates, employers, agents, consultants, independent contractors, including without limitation employees of the foregoing, owners, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations, including without limitation Future US, LLC

1.29   "**Releasing Parties**" means Plaintiff, those Settlement Class Members who do not timely opt out of the Settlement Class, and all of their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parent companies, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and companies, firms, trusts, and corporations.

1.30   "**Settlement Administration Expenses**" means the expenses incurred by the Settlement Administrator in providing Notice (including CAFA notice), processing claims, responding to inquiries from members of the Settlement Class, mailing checks, and related services, paying taxes and tax expenses related to the Settlement Fund (including all federal, state or local taxes of any kind and interest or penalties thereon, as well as expenses incurred in

connection with determining the amount of and paying any taxes owed and expenses related to any tax attorneys and accountants), as well as all expenses related to the resolution of any disputed claims by Judge Rosen (as described below in Paragraph 5.3).

      **1.31**    "**Settlement Administrator**" means JND Legal Administration, or such other reputable administration company that has been selected jointly by the Parties and approved by the Court to perform the duties set forth in this Agreement, including but not limited to serving as Escrow Agent for the Settlement Fund, overseeing the distribution of Notice, as well as the processing and payments to the Settlement Class as set forth in this Agreement, handing all approved payments out of the Settlement Fund, and handling the determination, payment and filing of forms related to all federal, state and/or local taxes of any kind (including any interest or penalties thereon) that may be owed on any income earned by the Settlement Fund.  Class Counsel's assent to this Agreement shall constitute consent on behalf of each and every member of the Settlement Class as defined herein to disclose all information required by the Settlement Administrator to perform the duties and functions ascribed to it herein, consistent with the written consent provisions of the PPPA.

      **1.32**    "**Settlement Class**" means all Persons who purchased a subscription to *Kiplinger's Personal Finance* Magazine, *The Kiplinger* Letter, *Kiplinger's Investing for Income*, *The Kiplinger Tax* Letter or *Kiplinger's Retirement* Report directly from the publisher thereof for delivery to a Michigan street address, and who subscribed to such publication between December 24, 2015, and July 30, 2016.  Excluded from the Settlement Class are (1) all Persons whose subscription information was not disclosed to third parties, including without limitation to Persons who were on Kiplinger's "do not rent list;" (2) any Judge or Magistrate presiding over this Action and members of their families; (3) the Defendant, Defendant's subsidiaries, parent

companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (4) persons who properly execute and file a timely request for exclusion from the class; and (5) the legal representatives, successors or assigns of any such excluded persons.

1.33   "**Settlement Class Member**" means a Person who falls within the definition of the Settlement Class as set forth above and who has not submitted a valid request for exclusion.

1.34   "**Settlement Fund**" means the non-reversionary cash fund that shall be established by Defendant in the total amount of six million eight hundred forty-five thousand six hundred and seventy dollars ($6,845,670.00 USD) to be deposited into the Escrow Account, according to the schedule set forth herein, plus all interest earned thereon.  From the Settlement Fund, the Settlement Administrator shall pay all Cash Awards to Settlement Class Members, Settlement Administration Expenses, any service award to the Class Representative, any Fee Award to Class Counsel, and any other costs, fees or expenses approved by the Court.  The Settlement Fund shall be kept in the Escrow Account with permissions granted to the Settlement Administrator to access said funds until such time as the listed payments are made.  The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account.  The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings. The Settlement Fund represents the total extent of Defendant's monetary obligations under this Agreement.  The payment of the Settlement Amount by Defendant fully discharges the Defendant and the other Released Parties' financial obligations (if any) in connection with the Settlement, meaning that no Released Party shall have any other obligation to make any payment into the Escrow Account or to any Class Member, or any other Person, under this Agreement.

The total monetary obligation with respect to this Agreement shall not exceed six million eight hundred forty-five thousand six hundred and seventy dollars ($6,845,670.00 USD), unless the final count of Settlement Class Members on the Class List following de-duplication by the Settlement Administrator exceeds 17,553 Persons, in which case Defendant shall increase the Settlement Fund by $390 per additional Settlement Class Member.

1.35    **"Settlement Website"** means the dedicated website created and maintained by the Settlement Administrator, which will contain relevant documents and information about the Settlement, including the Settlement Agreement, the long-form Notice and the Claim Form, as well as web-based forms for Settlement Class Members and Unidentified Class Members to submit electronic Claim Forms, requests for exclusion from the Settlement, elections to receive Cash Awards by PayPal or Venmo, or updated postal addresses to which Cash Awards should be sent after the Settlement becomes Final.

1.36    **"Unidentified Class Member"** means a member of the Settlement Class for whom the Settlement Administrator has *not* been able to identify a postal address that it determines is reasonably likely to be the current place of residence for such member of the Settlement Class.

1.37    "**Unknown Claims**" means claims that could have been raised in the Action and that any or all of the Releasing Parties do not know or suspect to exist, which, if known by him or her, might affect his or her agreement to release the Released Parties or the Released Claims or might affect his or her decision to agree, object or not to object to the Settlement.  Upon the Effective Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE
CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF
KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS
OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, the Releasing Parties also shall be deemed to have, and shall have,

waived any and all provisions, rights and benefits conferred by any law of any state or territory

of the United States, or principle of common law, or the law of any jurisdiction outside of the

United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code.

The Releasing Parties acknowledge that they may discover facts in addition to or different from

those that they now know or believe to be true with respect to the subject matter of this release,

but that it is their intention to finally and forever settle and release the Released Claims,

notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

**2.      SETTLEMENT RELIEF**.

    **2.1      Payments to Settlement Class Members**.

        **(a)**      Defendant shall pay into the Escrow Account the amount of the Settlement

Fund ($6,845,670.00), specified in Paragraph 1.34 of this Agreement, within twenty-eight (28)

days after Preliminary Approval.

        **(b)**      Each Settlement Class Member shall receive as a Cash Award a *pro rata*

portion of the Settlement Fund, calculated by the Settlement Administrator, after deducting all

Settlement Administration Expenses, any Fee Award to Class Counsel, any service award to the

Class Representative, and any other costs, fees, or expenses approved by the Court, unless the

Settlement Class Member excludes himself or herself from the Settlement.

        **(c)**      Except for any Settlement Class Member for whom the Settlement

Administrator is unable to identify a postal address or e-mail address that it determines is

reasonably likely to be the current place of residence (or an active e-mail address) for such

Settlement Class Member, after taking measures reasonably necessary to identify such an address (as detailed further in Paragraph 4.1(b)), each Settlement Class Member will be sent via U.S. postal mail (and/or e-mail to the extent a postal address is unavailable for a Settlement Class Member) a copy of the Class Notice, which will also indicate the estimated amount of the Cash Award that the Settlement Class Member will be paid upon final approval of the Settlement unless the Settlement Class Member opts out of the Settlement.

      **(d)**    *Payments to Identified Settlement Class Members.* After final approval of the Settlement, a direct payment by check will be made to each Settlement Class Member who did not exclude himself or herself and for whom at least one postal address has been identified by the Settlement Administrator that the Settlement Administrator concludes is reasonably likely to reflect the current residence of such Settlement Class Member, after taking measures reasonably necessary to identify such an address, as set forth more fully in Paragraph 4.1(b); to the extent multiple such postal addresses are identified by the Settlement Administrator for a particular Settlement Class Member, such check shall be sent to the address that the Settlement Administrator concludes is the most likely among such multiple addresses to reflect the current residence of such Settlement Class Member. The foregoing direct payment procedure shall apply for all Settlement Class Members for whom a postal address has been identified unless: (i) the Settlement Class Member submits an updated address to which their check should be sent on a web-based form on the Settlement Website, in which case such check will be sent to the updated address that was provided, or (ii) the Settlement Class Members elects to receive payment by PayPal or Venmo by following the procedures on the Settlement Website to make such a request.

14

(e)      *Payments to Unidentified Class Members.* To the extent the Settlement Administrator is unable to identify at least one postal address for any Settlement Class Member that the Settlement Administrator concludes is reasonably likely to reflect the current residence of such Settlement Class Member, then in that event, and only in that event, shall any such Settlement Class Member be required to submit, as clearly explained in the website Notice and the e-mail Notice(s) that the Settlement Administrator will have attempted to send such Settlement Class Member, a qualifying claim form that will include their (1) name; (2) postal address at which they subscribed to a Kiplinger Publication; (3) postal address to which their check shall be sent or instructions for payment via PayPal or Venmo; and (4) a telephone number and/or email address at which the Settlement Administrator may contact him or her to obtain any additional information that may be required to verify such Person's claim.

(f)      Each check issued will state on its face that the check will expire and become null and void unless cashed within 180 Days of the date of issuance.  To the extent that a check issued to a Settlement Class Member is not cashed within 180 Days after the date of issuance (which issuance shall be no sooner than 5 Days prior to such check's mailing), the check will be void.  Payments to all Settlement Class Members who do not exclude themselves from the Settlement shall be made within twenty-eight (28) days after Final Judgment.

(g)      To the extent that any checks issued to a Settlement Class Member are not cashed within one-hundred eighty (180) days after the date of issuance, such uncashed check funds shall be redistributed on a *pro rata* basis (after first deducting any necessary settlement administration expenses from such uncashed check funds) to all Settlement Class Members who cashed checks during the initial distribution, but only to the extent each Settlement Class Member would receive at least $5.00 in any such secondary distribution and if otherwise

15

feasible.  To the extent each Settlement Class Member would receive less than $5.00 in any such secondary distribution or if a secondary distribution would be otherwise infeasible, any uncashed check funds shall, subject to Court approval, revert to the Michigan Bar Foundation's Access to Justice Fund, a non-sectarian, not-for-profit organization, or another non-sectarian, not-for-profit organization(s) recommended by Class Counsel and approved by the Court.

        **(h)**     Subject to the provisions pertaining to the termination or cancellation of the Settlement, as set forth in Paragraph 9, no portion of the Settlement Fund shall revert back to Defendant.

**3.**    **RELEASE**.

        **3.1**    The obligations incurred pursuant to this Settlement Agreement shall be a full and final disposition of the Action and any and all Released Claims, as against all Released Parties.

        **3.2**    Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them.

**4.**    **NOTICE TO THE CLASS**.

        **4.1**    The Notice Plan shall consist of the following:

        **(a)**     *Settlement Class List*.  No later than twenty-eight (28) days after the execution of this Agreement, Defendant shall, to the best of its ability, produce an electronic list or lists from its available records that includes the names, last known U.S. Mail addresses, and email addresses, to the extent available, belonging to Persons within the Settlement Class.  Class Counsel's assent to this Agreement shall constitute consent on behalf of each and every member of the Settlement Class as defined herein to disclose this information as stated in this paragraph, consistent with the written consent provisions of the PPPA.  This electronic document shall be

called the "Class List," and shall be provided to the Settlement Administrator with a copy to Class Counsel.

      **(b)**    *Method for Providing Notice.*

      **i.**    The Notice shall provide information to each Settlement Class Member regarding (a) the specific amount of the Cash Award that will be paid to each Settlement Class Member upon final approval; (b) the requirements for the filing of Claim Forms by any Unidentified Settlement Class Members; (c) the amount of the Service Award and the Fee Award to be requested by Plaintiff and Class Counsel; (d) the Objection/Exclusion Deadline and the requirements and process for filing an objection to or a request for exclusion from the Settlement; and (e) the URL of the Settlement Website, where additional information and documents concerning the Settlement may be obtained.

      **ii.**    For every Settlement Class Member for whom the Settlement Administrator has been able to identify a postal address that it concludes has a reasonable likelihood of reflecting the current residence of such Settlement Class Member, as identified by the Settlement Administrator after taking measures reasonably necessary to identify such an address, the Settlement Administrator shall send the Notice to the Settlement Class Member at such address via postal mail.

      **iii.**    To the extent multiple postal addresses are identified by the Settlement Administrator as having a reasonable likelihood of reflecting the current residence of a particular Settlement Class Member, Notice shall be sent to all such postal addresses, and each such Notice shall indicate the address to which the Settlement Class Member's Cash Award check will be sent by check at the conclusion of the Settlement administration process; such

address shall be  the one that the Settlement Administrator concludes is the most likely among such multiple addresses to reflect the current residence of such Settlement Class Member.

**iv.**      For any Settlement Class Member for whom the Settlement Administrator is unable to identify at least one postal address that it concludes has a reasonable likelihood of reflecting the current residence of such Settlement Class Member, the Notice will be delivered to any and all e-mail addresses specified in the Class List or otherwise identified by the Settlement Administrator as being reasonably likely to belong to such Settlement Class Member (after taking measures reasonably necessary to identify such e-mail address(es)).

**v.**      If any Notice sent to a Settlement Class Member is returned as undeliverable, the Settlement Administrator shall redeliver the Notice to any alternative postal address(es) identified by the Settlement Administrator as having a reasonable likelihood of being the current place of residence for such Settlement Class Member (or, if none is available, to any e-mail address(es) believed to belong to the Settlement Class Member), after taking measures reasonably necessary to locate such addresses.

**(c)**      *Settlement Website.*  Within ten (10) days from entry of the Preliminary Approval Order, Notice shall be provided on a website at an available settlement URL (such as, for example, www.kiplingersettlement.com) which shall be obtained, administered and maintained by the Settlement Administrator and shall include the ability to file Claim Forms on-line, provided that such Claim Forms, if signed electronically, will be binding for purposes of applicable law and contain a statement to that effect.  The Notice provided on the Settlement Website shall be substantially in the form of Exhibit C hereto.

**(d)**      *CAFA Notice.*  Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, the Settlement Administrator shall cause to be served

upon the Attorney General of the United States, and any other required government officials, notice of the proposed settlement as required by law, subject to Paragraph 5.1 below.

4.2     The Notice shall advise the Settlement Class of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or any of its terms. The Notice shall specify that any objection to the Settlement Agreement, and any papers submitted in support of said objection, shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making the objection files notice of an intention to do so and at the same time (a) files copies of such papers he or she proposes to be submitted at the Final Approval Hearing with the Clerk of the Court, or alternatively, if the objection is from a Class Member represented by counsel, files any objection through the Court's CM/ECF system, and (b) sends copies of such papers by mail, hand, or overnight delivery service to Class Counsel and Defendant's Counsel.

4.3     Any Settlement Class Member who intends to object to this Agreement must present on a timely basis pursuant to the Court's anticipated Order preliminarily approving the settlement the objection in writing, which must be personally signed by the objector, and must include:  (1) the objector's name and address; (2) an explanation of the basis upon which the objector claims to be a Settlement Class Member, including the title of the publication to which he or she is or was a subscriber; (3) all grounds for the objection, including all citations to legal authority and evidence supporting the objection; (4) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection or who may profit from the pursuit of the objection (the "Objecting Attorneys"); and (5) a statement indicating whether the objector intends to

appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Local Rules).

      **4.4**    If a Settlement Class Member or any of the Objecting Attorneys has objected to any class action settlement where the objector or the Objecting Attorneys asked for or received any payment in exchange for dismissal of the objection, or any related appeal, without any modification to the settlement, then the objection must include a statement identifying each such case by full case caption and amount of payment received.

      **4.5**    A Settlement Class Member may request to be excluded from the Settlement Class by sending a timely written request postmarked on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice.  To exercise the right to be excluded, a Person in the Settlement Class must timely send a written request for exclusion to the Settlement Administrator providing (1) his/her name and address; (2) the title of the publication to which he or she is a subscriber; (3) a signature; (4) the name and number of the case; (5) and a statement that he or she wishes to be excluded from the Settlement Class for purposes of this Settlement.  A request to be excluded that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person(s) serving such a request shall be a member(s) of the Settlement Class and shall be bound as a Settlement Class Member by this Agreement, if approved.  Any member of the Settlement Class who validly elects to be excluded from this Agreement shall not:  (i) be bound by any orders or the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement.  The request for exclusion must be personally signed by each Person requesting exclusion.  So-called "mass" or "class" opt-outs shall not be

allowed.  To be valid, a request for exclusion must be postmarked or received by the date specified in the Notice.

**4.6**     The Final Approval Hearing shall be no earlier than ninety (90) days after the Notice described in Paragraph 4.1 is provided.

**4.7**     Any Settlement Class Member who does not, in accordance with the terms and conditions of this Agreement, seek exclusion from the Settlement Class or timely file a valid Claim Form when such Claim Form is required shall not be entitled to receive any payment or benefits pursuant to this Agreement, but will otherwise be bound by all of the terms of this Agreement, including the terms of the Final Judgment to be entered in the Action and the Releases provided for in the Agreement, and will be barred from bringing any action against any of the Released Parties concerning the Released Claims.

**5.     SETTLEMENT ADMINISTRATION**.

**5.1**     The Settlement Administrator shall, under the supervision of the Court, administer the relief provided by this Settlement Agreement by processing Claim Forms submitted by Unidentified Class Members, processing requests for exclusion from the Settlement, and disbursing funds from the Settlement Fund in a rational, responsive, cost effective, and timely manner.  The Settlement Administrator shall maintain reasonably detailed records of its activities under this Agreement.  The Settlement Administrator shall maintain all such records as are required by applicable law in accordance with its normal business practices and such records will be made available to Class Counsel and Defendant's Counsel upon request.  The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  The Settlement Administrator shall provide Class Counsel and Defendant's Counsel with regular reports at weekly intervals containing information concerning Notice, administration, and implementation of the Settlement Agreement.  Should the Court request, the

Parties shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator, including a report of all amounts from the Settlement Fund paid to Settlement Class Members on account of Approved Claims.  Without limiting the foregoing, the Settlement Administrator shall:

(a)     Forward to Defendant's Counsel, with copies to Class Counsel, all original documents and other materials received in connection with the administration of the Settlement, and all copies thereof, within thirty (30) days after the date on which all Claim Forms have been finally approved or disallowed in accordance with the terms of this Agreement;

(b)     Provide Class Counsel and Defendant's Counsel with drafts of all administration related documents, including but not limited to CAFA Notices, follow-up class notices or communications with Settlement Class Members, telephone scripts, website postings or language or other communications with the Settlement Class, at least five (5) business days before the Settlement Administrator is required to or intends to publish or use such communications, unless Class Counsel and Defendant's Counsel agree to waive this requirement in writing on case by case basis;

(c)     Receive Claim Forms from Unidentified Class Members and promptly provide to Class Counsel and Defendant's counsel copies thereof. If the Settlement Administrator receives any Claim Forms after the Claim Deadline, the Settlement Administrator shall promptly provide copies thereof to Class Counsel and Defendant's Counsel;

(d)     Receive requests to be excluded from the Settlement Class and other requests and promptly provide to Class Counsel and Defendant's Counsel copies thereof, along with a weekly report of the number of such requests received.  If the Settlement Administrator receives any exclusion forms or other requests after the deadline for the submission of such

forms and requests, the Settlement Administrator shall promptly provide copies thereof to Class

Counsel and Defendant's Counsel and await guidance from Counsel as to treatment thereof;

      **(e)**      Provide weekly reports to Class Counsel and Defendant's Counsel,

including without limitation, reports regarding the number of Claim Forms received, the number

approved by the Settlement Administrator, and the categorization and description of Claim

Forms rejected, in whole or in part, by the Settlement Administrator; and

      **(f)**      Make available for inspection by Class Counsel or Defendant's Counsel

the Claim Forms received by the Settlement Administrator at any time upon reasonable notice.

      **5.2**      The Settlement Administrator shall be obliged to employ reasonable procedures to

screen claims for abuse or fraud and deny Claim Forms where there is evidence of abuse or

fraud.  The Settlement Administrator shall determine whether a Claim Form submitted by a

Settlement Class Member is an Approved Claim by determining if the Person is on the Class List

and shall reject Claim Forms that fail to (a) comply with the instructions on the Claim Form or

the terms of this Agreement, or (b) provide full and complete information as requested on the

Claim Form.  In the event a Person submits a timely Claim Form by the Claims Deadline where

the Person appears on the Class List but the Claim Form is not otherwise complete, then the

Settlement Administrator shall give such Person one (1) reasonable opportunity to provide any

requested missing information, which information must be received by the Settlement

Administrator no later than thirty (30) calendar days after the Claims Deadline.  In the event the

Settlement Administrator receives such information more than thirty (30) days after the Claims

Deadline, then any such claim shall be denied.  The Settlement Administrator may contact any

Person who has submitted a Claim Form to obtain additional information necessary to verify the

Claim Form.

5.3     Defendant's Counsel and Class Counsel shall have the right to challenge the

acceptance or rejection of a Claim Form submitted by an Unidentified Settlement Class Member,

as well as any request for exclusion.  The Settlement Administrator shall follow any agreed

decisions of Class Counsel and Defendant's Counsel as to the validity of any disputed submitted

Claim Form or request for exclusion.  To the extent Class Counsel and Defendant's Counsel are

not able to agree on the disposition of a challenge, the disputed claim shall be submitted to The

Honorable Gerald E. Rosen (Ret.) of JAMS Detroit for a binding determination.  Judge Rosen

will charge his JAMS hourly rate for providing such services to the Settlement Class, and all

expenses related thereto will be paid by the Settlement Administrator from the Settlement Fund.

5.4     In the exercise of its duties outlined in this Agreement, the Settlement

Administrator shall have the right to reasonably request additional information from the Parties

or any Settlement Class Member.

5.5     Defendant, the Released Parties, and Defendant's Counsel shall have no

responsibility for, interest in, or liability whatsoever with respect to: (i) any act, omission, or

determination by Class Counsel, or the Settlement Administrator, or any of their respective

designees or agents, in connection with the administration of the Settlement or otherwise; (ii) the

management, investment, or distribution of the Settlement Fund; (iii) the allocation of Settlement

Funds to Settlement Class Members or the implementation, administration, or interpretation

thereof; (iv) the determination, administration, calculation, or payment of any claims asserted

against the Settlement Fund; (v) any losses suffered by, or fluctuations in value of, the

Settlement Fund; or (vi) the payment or withholding of any Taxes, Tax Expenses, or costs

incurred in connection with the taxation of the Settlement Fund or the filing of any federal, state,

or local returns.

5.6     All taxes and tax expenses shall be paid out of the Settlement Fund and shall be timely paid by the Settlement Administrator pursuant to this Agreement and without further order of the Court.  Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with this Agreement and in all events shall reflect that all taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein.  The Released Parties shall have no responsibility or liability for the acts or omissions of the Settlement Administrator or its agents with respect to the payment of taxes or tax expenses.

## 6.     TERMINATION OF SETTLEMENT.

6.1     Subject to Paragraphs 9.1-9.3 below, Defendant or the Class Representative on behalf of the Settlement Class, shall have the right to terminate this Agreement by providing written notice of the election to do so ("Termination Notice") to all other Parties hereto within twenty-one (21) days of any of the following events: (i) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (ii) the Court's refusal to grant final approval of this Agreement in any material respect; (iii) the Court's refusal to enter the Final Judgment in this Action in any material respect; (iv) the date upon which the Final Judgment is modified or reversed in any material respect by an Appellate Court or the Supreme Court; or (v) the date upon which an Alternate Judgment, as defined in Paragraph 9.1(d) of this Agreement is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

## 7.     PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER.

7.1     Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for Preliminary Approval of the settlement set forth in this Agreement; certification of the

Settlement Class for settlement purposes only; appointment of Class Counsel and the Class Representative; and entry of a Preliminary Approval Order, which order shall set a Final Approval Hearing date and approve the Notice and Claim Form for dissemination substantially in the form of Exhibits A, B, C, and D hereto.  The Preliminary Approval Order shall also authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to this Agreement) so long as they are consistent in all material respects with the terms of the Settlement Agreement and do not limit or impair the rights of the Settlement Class or materially expand the obligations of Defendant.

**7.2**    At the time of the submission of this Agreement to the Court as described above, Class Counsel shall request that, after Notice is given, the Court hold a Final Approval Hearing and approve the settlement of the Action as set forth herein.

**7.3**    After Notice is given, the Parties shall request and seek to obtain from the Court a Final Judgment, which will among other things:

**(a)**    find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Agreement, including all exhibits thereto;

**(b)**    approve the Settlement Agreement and the proposed settlement as fair, reasonable, and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and Releasing Parties;

(c)      find that the Notice implemented pursuant to the Agreement (1) constitutes the best practicable notice under the circumstances; (2) constitutes notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object to or exclude themselves from the proposed Agreement, and to appear at the Final Approval Hearing; (3) is reasonable and constitutes due, adequate, and sufficient notice to all persons entitled to receive notice; and (4) meets all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

(d)      find that the Class Representative and Class Counsel adequately represent the Settlement Class for purposes of entering into and implementing the Agreement;

(e)      dismiss the Action (including all individual claims and Settlement Class Claims presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement;

(f)      incorporate the Release set forth above, make the Release effective as of the date of the Effective Date, and forever discharge the Released Parties as set forth herein;

(g)      permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the Settlement Class from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

(h)      without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement, and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose; and

       **(i)**     incorporate any other provisions, as the Court deems necessary and just or appropriate to effectuate the terms and conditions of the Settlement Agreement.

**8.**    **CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; SERVICE AWARD.**

     **8.1**    Defendant agrees that Class Counsel may receive from the Settlement Fund, subject to Court approval, attorneys' fees, costs, and expenses not to exceed 35% of the Settlement Fund (or $2,395,984.50 USD).  Plaintiff will petition the Court for an award of such attorneys' fees, costs, and expenses, and Defendant agrees not to object to or otherwise challenge, directly or indirectly, Class Counsel's petition for attorneys' fees, costs, and expenses if limited to this amount.  Class Counsel, in turn, agrees to seek no more than this amount from the Court in attorneys' fees, costs, and expenses.  Payment of the Fee Award shall be made from the Settlement Fund and should the Court award less than the amount sought by Class Counsel, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund.

     **8.2**    The Fee Award shall be payable by the Settlement Administrator within ten (10) days after entry of the Court's Final Judgment, subject to Class Counsel executing the Undertaking Regarding Attorneys' Fees and Costs (the "Undertaking") attached hereto as Exhibits E-1, E-2, and E-3, and providing all payment routing information and tax I.D. numbers for Class Counsel.  Payment of the Fee Award shall be made from the Settlement Fund by wire transfer to Class Counsel, in accordance with the instructions to be jointly provided by Class Counsel, after completion of necessary forms by Class Counsel, including but not limited to W-9 forms.  Notwithstanding the foregoing, if for any reason the Final Approval Order is reversed or rendered void as a result of an appeal(s) then any persons or firms who shall have received such funds shall be severally liable for payments made pursuant to this subparagraph, and shall return

such funds to the Defendant, based upon written instructions provided by Defendant's Counsel. To effectuate this provision, Bursor & Fisher, P.A., Hedin Hall LLP, and The Miller Law Firm, P.C. shall each execute a guarantee of repayment in the forms attached hereto as Exhibits E-1, E-2, and E-3.  Additionally, should any parties to the Undertaking dissolve, merge, declare bankruptcy, become insolvent, or cease to exit prior to the final payment to Class Members, those parties shall execute a new undertaking guaranteeing repayment of funds within fourteen (14) days of such an occurrence.

**8.3**      Defendant agrees that, subject to Court approval, the Settlement Administrator may pay a service award to the Class Representative from the Settlement Fund, in addition to any settlement payment as a result of a Cash Award pursuant to this Agreement, and in recognition of his efforts on behalf of the Settlement Class, in the amount of five thousand dollars ($5,000.00 USD).  Defendant shall not object to or otherwise challenge, directly or indirectly, Class Counsel's application for the service award to the Class Representative if limited to this amount.  Class Counsel, in turn, agrees to seek no more than this amount from the Court as the service award for the Class Representative.  Should the Court award less than this amount, the difference in the amount sought and the amount ultimately awarded pursuant to this Paragraph shall remain in the Settlement Fund.  Such award shall be paid from the Settlement Fund (in the form of a check to the Class Representative that is sent to the care of Class Counsel), within five (5) business days after entry of the Final Judgment if there have been no objections to the Settlement Agreement, and, if there have been such objections, within five (5) business days after the Effective Date.

9. **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL, CANCELLATION OR TERMINATION.**

9.1     The Effective Date of this Settlement Agreement shall not occur unless and until each of the following events occurs and shall be the date upon which the last (in time) of the following events occurs:

(a)     The Parties and their counsel have executed this Agreement;

(b)     The Court has entered the Preliminary Approval Order;

(c)     The Court has entered an order finally approving the Agreement, following Notice to the Settlement Class and a Final Approval Hearing, as provided in the Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment consistent with this Agreement in all material respects; and

(d)     The Final Judgment has become Final, as defined above, or, in the event that the Court enters an Alternate Judgment, such Alternate Judgment becomes Final.

9.2     If some or all of the conditions specified in Paragraph 9.1 are not met, or in the event that this Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 6.1 unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with this Agreement. If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all of the Settling Parties. Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees payment to Class Counsel and/or the service award set forth in Paragraph 8 above shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.

**9.3**     If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1 and 9.1-9.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement, unless Class Counsel and Defendant's Counsel mutually agree in writing to proceed with the Agreement.  In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into. Within five (5) business days after written notification of termination as provided in this Agreement is sent to the other Parties, the Settlement Fund (including accrued interest thereon), less any Settlement Administration costs actually incurred, paid or payable and less any taxes and tax expenses paid, due or owing, shall be refunded by the Settlement Administrator to Defendant based upon written instructions provided by Defendant's Counsel.  In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, Class Counsel shall, within thirty (30) days repay to Defendant based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to Class Counsel from the Settlement Fund, including any accrued interest.  In the event the attorney fees and costs awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, Class Counsel shall within thirty (30) days repay to Defendant based upon written instructions provided by Defendant's Counsel, the attorneys' fees and costs paid to Class Counsel and/or Representative Plaintiff from the Settlement Fund, in the amount vacated or modified, including any accrued interest.

10.    **MISCELLANEOUS PROVISIONS.**

**10.1**    The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement, to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement, to secure final approval, and to defend the Final Judgment through any and all appeals.  Class Counsel and Defendant's Counsel agree to cooperate with one another in seeking Court approval of the Settlement Agreement, entry of the Preliminary Approval Order, and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

**10.2**    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiff, the Settlement Class and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand.  Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiffs or defended by Defendant, or each or any of them, in bad faith or without a reasonable basis.  Nothing herein, however, shall be construed to prevent any employee of Defendant or any Released Party, or any independent contractor working in a reporting or newsgathering capacity for Defendant or any Released Party, from reporting on the Action or this Settlement.

**10.3**    The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released.  The Parties have read and understand fully the above and foregoing agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

**10.4**     Whether or not the Effective Date occurs or the Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein or any term, provision or definition therein, nor any act or communication performed or document executed in the course of negotiating, implementing or seeking approval pursuant to or in furtherance of this Agreement or the settlement:

**(a)**     is, may be deemed, or shall be used, offered or received in any civil, criminal or administrative proceeding in any court, administrative agency, arbitral proceeding or other tribunal against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by the Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the definition or scope of any term or provision, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

**(b)**     is, may be deemed, or shall be used, offered or received against any Released Party, as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

**(c)**     is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing or statutory meaning (including but not limited to the definitions of Michigan Subscriber Information and Settlement Class) as against any Released Parties, or supporting the certification of a litigation class, in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal.  However, the settlement, this

Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement.  Further, if this Settlement Agreement is approved by the Court, any Party or any of the Released Parties may file this Agreement and/or the Final Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

      **(d)**      is, may be deemed, or shall be construed against Plaintiff, the Settlement Class, the Releasing Parties, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

      **(e)**      is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiff, the Settlement Class, the Releasing Parties, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiff's claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

      **10.5**    The Parties acknowledge that (a) any certification of the Settlement Class as set forth in this Agreement, including certification of the Settlement Class for settlement purposes in the context of Preliminary Approval, shall not be deemed a concession that certification of a litigation class is appropriate, or that the Settlement Class definition would be appropriate for a litigation class, nor would Defendant be precluded from challenging class certification in further

proceedings in the Action or in any other action if the Settlement Agreement is not finalized or finally approved; (b) if the Settlement Agreement is not finally approved by the Court for any reason whatsoever, then any certification of the Settlement Class will be void, the Parties and the Action shall be restored to the status quo ante, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification proceedings in the Action or in any other action; and (c) no agreements made by or entered into by Defendant in connection with the Settlement may be used by Plaintiff, any person in the Settlement Class, or any other person to establish any of the elements of class certification in any litigated certification proceedings, whether in the Action or any other judicial proceeding.

10.6    No person or entity shall have any claim against the Class Representative, Class Counsel, the Settlement Administrator or any other agent designated by Class Counsel, or the Released Parties and/or their counsel, arising from distributions made substantially in accordance with this Agreement.  The Parties and their respective counsel, and all other Released Parties shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the determination, administration, calculation, or payment of any claim or nonperformance of the Settlement Administrator, the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

10.7    All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.

10.8    The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

**10.9**   The waiver by one Party of any breach of this Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

**10.10**   All of the Exhibits to this Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

**10.11**   This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein.  No representations, warranties or inducements have been made to any Party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

**10.12**   Except as otherwise provided herein, each Party shall bear its own costs.

**10.13**   Plaintiff represents and warrant that she has not assigned any claim or right or interest therein as against the Released Parties to any other Person or Party and that she is fully entitled to release the same.

**10.14**   Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any Party hereto, hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

**10.15**   This Agreement may be executed in one or more counterparts.  Signature by digital means, facsimile, or in PDF format will constitute sufficient execution of this Agreement.

All executed counterparts and each of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

**10.16**   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

**10.17**   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Agreement.

**10.18**   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Michigan.

**10.19**   This Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties.  Because all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

**10.20**   Where this Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:  Philip L. Fraietta, Bursor & Fisher, P.A., 888 Seventh Avenue, New York, NY 10019; Walter E. Diercks, Rubin, Winston, Diercks, Harris & Cooke, LLP, 1250 Connecticut Avenue, NW, Suite 700, Washington, DC 20036.


**[REMAINDER OF THE PAGE INTENTIONALLY LEFT BLANK, SIGNATURE PAGE(S) TO FOLLOW]**

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: Jul 5, 2022                          **RALPH STRANO**

                                           *Ralph Strano*
                                           Ralph Strano (Jul 5, 2022 10:22 EDT)
                                    By:

                                    Ralph Strano, individually and as representative of
                                    the Class

Dated: _____        **KIPLINGER WASHINGTON EDITORS, INC.**

                                    By:

                                    Name
                                    Its:
                                    Kiplinger Washington Editors, Inc.

**IT IS SO STIPULATED BY COUNSEL:**

Dated: Jul 5, 2022              **BURSOR & FISHER, PA**

                                    By:
                                    Joseph I. Marchese
                                    jmarchese@bursor.com
                                    Philip L. Fraietta
                                    pfraietta@bursor.com
                                    BURSOR & FISHER, PA
                                    888 Seventh Avenue
                                    New York, New York 10019
                                    Tel:  (646) 837-7150
                                    Fax:  (212) 989-9163

                                    Frank S. Hedin
                                    fhedin@hedinhall.com
                                    Arun G. Ravindran
                                    aravindran@hedinhall.com
                                    HEDIN HALL LLP
                                    1395 Brickell Avenue, Suite 1140
                                    Miami, Florida 33131

**IT IS SO AGREED TO BY THE PARTIES**:

Dated: _____          **RALPH STRANO**

By:_____

Ralph Strano, individually and as representative of
the Class

Dated: July 5, 2022             **KIPLINGER WASHINGTON EDITORS, INC.**

By: *Maria Beckett* _____

Name    Maria Beckett
Its:         Officer
Kiplinger Washington Editors, Inc.

**IT IS SO STIPULATED BY COUNSEL:**

Dated: _____          **BURSOR & FISHER, PA**

By: _____
Joseph I. Marchese
jmarchese@bursor.com
Philip L. Fraietta
pfraietta@bursor.com
BURSOR & FISHER, PA
888 Seventh Avenue
New York, New York 10019
Tel:  (646) 837-7150
Fax:  (212) 989-9163

Frank S. Hedin
fhedin@hedinhall.com
Arun G. Ravindran
aravindran@hedinhall.com
HEDIN HALL LLP
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131

Tel:  (305) 357-2107
Fax:  (305) 200-8801

E. Powell Miller
epm@millerlawpc.com
THE MILLER LAW FIRM, P.C.
950 W. University Drive, Suite 300
Rochester, MI 48307
Tel:  (248) 841-2200

*Attorneys for Class Representative and the
Settlement Class*

Dated:  JULY 5, 2022                RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, LLP

By: _____

Walter E. Diercks
wdiercks@rwdhc.com
RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, LLP
1250 Connecticut Avenue, NW, Suite 700
Washington, DC 20036
Tel:  (202) 861-0870

*Attorney for Defendant Kiplinger Washington
Editors, Inc.*

**EXHIBIT A**

From:   KiplingerSettlement@kiplingersettlement.com
To:     JonQClassMember@domain.com
Re:     Legal Notice of Class Action Settlement

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

*Strano v. Kiplinger Washington Editors, Inc.*, Case No. 1:21-cv-12987-TLL-PTM
(United States District Court for the Eastern District of Michigan)

This notice is to inform you of the settlement of a class action lawsuit with publisher Kiplinger Washington Editors, Inc. ("Kiplinger"), the Defendant in this case. Plaintiff Ralph Strano alleges that Defendant disclosed its customers' subscription information to third parties which is alleged to violate Michigan privacy law.

**Am I a Class Member?**  Yes. Our records indicate you are a Class Member. Class Members are persons who purchased a subscription to *Kiplinger's Personal Finance* Magazine, *The Kiplinger* Letter, *Kiplinger's Investing for Income*, *The Kiplinger Tax* Letter or *Kiplinger's Retirement* Report directly from the publisher thereof for delivery to a Michigan street address, and who subscribed to such publication between December 24, 2015, and July 30, 2016. Excluded from the Settlement Class are (1) all Persons whose subscription information was not disclosed to third parties, including without limitation to Persons who were on Kiplinger's "do not rent list;" (2) any Judge or Magistrate presiding over this Action and members of their families; (3) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (4) persons who properly execute and file a timely request for exclusion from the class; and (5) the legal representatives, successors or assigns of any such excluded persons.

**What Can I Get?** A Settlement Fund of $6,845,670 has been established to pay all claims to the Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs to Class Counsel, and a service award to the Plaintiff. Unless you received a postcard Notice concerning the Settlement sent to you by postal mail, you **must** submit a Claim Form (see instructions below) in order to receive a share of the Settlement Fund. **If you submit a Claim Form**, you will receive a *pro rata* share of the Settlement Fund, which Class Counsel estimates to will be for approximately $248 per class member. The exact amount of the share of the Settlement Fund that you will receive depends on the number of requests for exclusion that are received.

**How Do I Get a Payment?** Unless you received a postcard Notice concerning the Settlement sent to you by postal mail, you **must** complete and submit a Claim Form to receive a *pro rata* share of the Settlement Fund, which Class Counsel estimates will be approximately $248. You may submit a Claim Form either electronically on the Settlement Website by clicking here [insert hyperlink], or by printing and mailing in a paper Claim Form, copies of which are available for download here [insert hyperlink]. Claim Forms must be submitted online by 11:59 p.m. EST on [date] or postmarked and mailed by [date].

**What are My Other Options?** You may exclude yourself from the Class by sending a letter to the settlement administrator postmarked no later than [**objection/exclusion deadline**]. If you

exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Your written objection must be filed no later than [**objection/exclusion deadline**]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at [www.KiplingerSettlement.com].  If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged disclosure of subscriber information in this case against the Defendant will be released.

**Who Represents Me?**  The Court has appointed Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP, and E. Powell Miller of The Miller Law Firm, P.C. to represent the class.  These attorneys are called Class Counsel.  You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?**  The Court will hold the Final Approval Hearing at [time] on [date] at the United States Post Office Building, 1000 Washington Avenue, Room 214, Bay City, MI 48708.  At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representative $5,000 from the Settlement Fund for his services in helping to bring and settle this case. Defendant has agreed that Class Counsel may be paid reasonable attorneys' fees from the Settlement Fund in an amount to be determined by the Court.  Class Counsel is entitled to seek no more than 35% of the Settlement Fund, but the Court may award less than this amount.

**How Do I Get More Information?**  For more information, including a more detailed Notice, a copy of the Settlement Agreement and other documents, go to www.KiplingerSettlement.com, contact the settlement administrator by calling (800) 000-000 or by writing to Kiplinger Settlement Administrator, [address], or contact Class Counsel by calling (646) 837-7150.

**EXHIBIT B**

COURT AUTHORIZED NOTICE OF CLASS
ACTION AND PROPOSED SETTLEMENT

## OUR RECORDS INDICATE YOU HAVE SUBSCRIBED TO A KIPLINGER PUBLICATION AND MAY BE ENTITLED TO A PAYMENT FROM A CLASS ACTION SETTLEMENT.

Kiplinger Settlement
Settlement Administrator
P.O. Box 0000
City, ST 00000-0000

|||||||||||||||||||||||||
Postal Service: Please do not mark barcode

XXX—«ClaimID»    «MailRec»

«First1» «Last1»
«C/O»
«Addr1»  «Addr2»
«City», «St»  «Zip» «Country»

By Order of the Court Dated: [date]

**KIPLINGER SETTLEMENT**

A settlement has been reached in a class action lawsuit claiming that Defendant, publisher Kiplinger Washington Editors, Inc. ("Kiplinger"), disclosed its customers' subscription information to third parties, which is alleged to violate Michigan privacy law.

**Am I a Class Member?** Our records indicate you are a Class Member. Class Members are persons who purchased a subscription to *Kiplinger's Personal Finance* Magazine, *The Kiplinger* Letter, *Kiplinger's Investing for Income*, *The Kiplinger Tax* Letter or *Kiplinger's Retirement* Report directly from the publisher thereof for delivery to a Michigan street address, and who subscribed to such publication between December 24, 2015, and July 30, 2016.

**What Can I Get?** If approved by the Court, a Settlement Fund of $6,845,670.00 has been established to pay all claims to the Settlement Class, together with notice and administration expenses, approved attorneys' fees and costs to Class Counsel, and a service award to Plaintiff. Once the Settlement becomes Final, you will receive a *pro rata* share of the Settlement Fund, which Class Counsel estimates will be approximately $248 per class member, although the final amount you receive will also depend on the number of requests for exclusion submitted.

**How Do I Get a Payment?** If you are a Class Member, you will automatically receive a *pro rata* share of the Settlement Fund, so long as you do not request to be excluded from the Settlement Class.  Your payment will come by check, sent to the following address: [insert Settlement Class Member's address to which check will be sent].  If you no longer reside at this address or are planning to change addresses prior to [insert date 28 days after final approval hearing date], please complete and submit a change of address form accessible on the Settlement Website so that your check is sent to the correct address.  If you wish to receive your payment via PayPal or Venmo, you may do so by submitting an Election Form on the Settlement Website.

**What are My Other Options?** You may exclude yourself from the Class by submitting an online form on the Settlement Website no later than 11:59 p.m. on [objection/exclusion deadline] or by sending a letter to the settlement administrator postmarked no later than [objection/exclusion deadline]. If you exclude yourself, you cannot get a settlement payment, but you keep any rights you may have to sue the Defendant over the legal issues in the lawsuit. You and/or your lawyer have the right to appear before the Court and/or object to the proposed settlement. Any written objection must be filed no later than [objection/exclusion deadline]. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at www.KiplingerSettlement.com.  If you do nothing, and the Court approves the Settlement, you will be bound by all of the Court's orders and judgments. In addition, your claims relating to the alleged disclosure or subscriber information in this case against the Defendant and others will be released.

**Who Represents Me?** The Court has appointed The Court has appointed Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP, and E. Powell Miller of The Miller Law Firm, P.C.to represent the class. These attorneys are called Class Counsel. You will not be charged for these lawyers. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

**When Will the Court Consider the Proposed Settlement?** The Court will hold the Final Approval Hearing at [time] on [date] at the United States Post Office Building, 1000 Washington Avenue, Room 214, Bay City, MI 48708. At that hearing, the Court will: hear any objections concerning the fairness of the settlement; determine the fairness of the settlement; decide whether to approve Class Counsel's request for attorneys' fees and costs; and decide whether to award the Class Representative $5,000 from the Settlement Fund for his services in helping to bring and settle this case. Defendant has agreed to pay Class Counsel reasonable attorneys' fees in an amount to be determined by the Court. Class Counsel is entitled to seek no more than 35% of the Settlement Fund, but the Court may award less than this amount.

**How Do I Get More Information?** For more information, including the full Notice, Claim Form and Settlement Agreement go to www.EconomistNewspaperSettlement.com, contact the settlement administrator by calling (800) 000-0000 or writing to Kiplinger Settlement Administrator, [address], or contact Class Counsel by calling (646) 837-7150.

———
———

Kiplinger Settlement Administrator
c/o [Settlement Administrator]
PO Box 0000
City, ST 00000-0000

XXX

**EXHIBIT C**

**United States District Court for the Eastern District of Michigan**
*Strano v. Kiplinger Washington Editors, Inc.*, Case No. 1:21-cv12987-TLL-PTM

*A court authorized this notice. You are not being sued. This is not a solicitation from a lawyer.*

- A Settlement has been reached in a class action lawsuit against publisher Kiplinger Washington Editors, Inc. ("Kiplinger"). The class action lawsuit involves whether The Economist disclosed its customers' subscription information to third parties, which is alleged to violate Michigan privacy law.

- You are included if you purchased a subscription to *Kiplinger's Personal Finance* Magazine, *The Kiplinger* Letter, *Kiplinger's Investing for Income*, *The Kiplinger Tax* Letter or *Kiplinger's Retirement* Report directly from the publisher thereof for delivery to a Michigan street address, and who subscribed to such publication between December 24, 2015, and July 30, 2016. Excluded from the Settlement Class are (1) all Persons whose subscription information was not disclosed to third parties, including without limitation to Persons who were on Kiplinger's "do not rent list;" (2) any Judge or Magistrate presiding over this Action and members of their families; (3) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (4) persons who properly execute and file a timely request for exclusion from the class; and (5) the legal representatives, successors or assigns of any such excluded persons.

- Those included in the Settlement will be eligible to receive a *pro rata* (meaning equal) portion of the Settlement Fund, which Class Counsel anticipates to be approximately $248.

- Read this notice carefully. Your legal rights are affected whether you act, or don't act.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| **DO NOTHING** | You will receive a *pro rata* share of the Settlement benefits – estimated to be approximately $248 – and will give up your rights to sue the Defendant about the claims in this case. |
| **EXCLUDE YOURSELF** | You will receive no benefits, but you will retain any rights you currently have to sue the Defendant about the claims in this case. |
| **OBJECT** | Write to the Court explaining why you don't like the Settlement. |
| **GO TO THE HEARING** | Ask to speak in Court about your opinion of the Settlement. |

These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

## BASIC INFORMATION

### 1.  Why was this Notice issued?

A Court authorized this notice because you have a right to know about a proposed Settlement of this class action lawsuit and about all of your options, before the Court decides whether to give final approval to the Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

The Honorable Thomas L. Ludington, of the U.S. District Court for the Eastern District of Michigan, is overseeing this case. The case is called *Strano v. Kiplinger Washington Editors, Inc.*, Case No. 1:21-cv-12987-TLL-PTM.  The person who sued is called the Plaintiff.  The Defendant is Kiplinger Washington Editors, Inc.

### 2. What is a class action?

In a class action, one or more people called class representatives (in this case, Ralph Strano) sue on behalf of a group or a "class" of people who have similar claims.  In a class action, the court resolves the issues for all class members, except for those who exclude themselves from the Class.

### 3. What is this lawsuit about?

This lawsuit claims that Defendant violated Michigan's Preservation of Personal Privacy Act, H.B. 5331, 84th Leg. Reg. Sess., P.A. No. 378 §§ 1-4, *id.* § 5, added by H.B. 4694, 85th Leg. Reg. Sess., P.A. No. 206, § 1 (Mich. 1989) (the "PPPA"), by disclosing information related to its customers' magazine subscriptions to third parties before July 30, 2016. The Defendant denies it violated any law.  The Court has not determined who is right.  Rather, the Parties have agreed to settle the lawsuit to avoid the uncertainties and expenses associated with ongoing litigation.

### 4. Why is there a Settlement?

The Court has not decided whether the Plaintiff or the Defendant should win this case. Instead, both sides agreed to a Settlement.  That way, they avoid the uncertainties and expenses associated with ongoing litigation, and Class Members will get compensation sooner rather than, if at all, after the completion of a trial.

## WHO'S INCLUDED IN THE SETTLEMENT?

### 5. How do I know if I am in the Settlement Class?

The Court decided that everyone who fits the following description is a member of the **Settlement Class**:

All persons who purchased a subscription to *Kiplinger's Personal Finance* Magazine, *The Kiplinger* Letter, *Kiplinger's Investing for Income*, *The Kiplinger Tax* Letter or *Kiplinger's Retirement* Report directly from the publisher thereof for delivery to a Michigan street address, and who subscribed to such publication between December 24, 2015, and July 30, 2016.

Excluded from the Settlement Class are (1) all Persons whose subscription information was not disclosed to third parties, including without limitation to Persons who were on Kiplinger's "do not rent list;" (2) any Judge or Magistrate presiding over this Action and members of their families; (3) the Defendant, Defendant's subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former officers, directors, agents, attorneys, and employees; (4) persons who properly execute and file a timely request for exclusion from the class; and (5) the legal representatives, successors or assigns of any such excluded persons.

## THE SETTLEMENT BENEFITS

### 6. What does the Settlement provide?

***Monetary Relief***:  A Settlement Fund has been created totaling $6,845,670.00. Class Member payments, and the cost to administer the Settlement, the cost to inform people about the Settlement, attorneys' fees (inclusive of litigation costs), and an award to the Class Representative will also come out of this fund (*see* Question 12).

A detailed description of the settlement benefits can be found in the Settlement Agreement, a copy of which is accessible on the Settlement Website by clicking here. [insert hyperlink]

### 7. How much will my payment be?

The amount of this payment will depend on how many requests for exclusion are submitted.  Each Class Member will receive a proportionate share of the Settlement Fund, which Class Counsel anticipates will be approximately $248.  You can contact Class Counsel at (646) 837-7150 to inquire as to the number of requests for exclusion that have been received to date.

### 8. When will I get my payment?

The hearing to consider the fairness of the settlement is scheduled for [Final Approval Hearing Date]. If the Court approves the settlement, eligible Class Members will receive their payment 28 days after the Settlement has been finally approved and/or after any appeals process is complete.  The payment will be made in the form of a check, and all checks will expire and become void 180 days after they are issued. Alternatively, you may request that the payment is issued through PayPal or Venmo (see Question 9 below for further details).

QUESTIONS? CALL (800) 000-0000 TOLL FREE, OR VISIT WWW.KIPLINGERSETTLEMENT.COM

# HOW TO GET BENEFITS

### 9. How do I get a payment?

If you are a Class Member who received a Notice via postcard and you want to get a payment, do nothing and you will automatically receive a *pro rata* share of the Settlement Fund, which Class Counsel anticipates will be approximately $248. Your check for a *pro rata* share of the Settlement Fund will be sent to the postal address identified in the Notice you received. If you have changed addresses or are planning to change addresses prior to [insert date 28 days after final approval hearing date], please click here [insert hyperlink] to complete and submit a change of address form on the Settlement Website. If you wish to receive your payment via PayPal or Venmo, you may do so by submitting an Election Form on the Settlement Website.

If you are a Settlement Class Member who did not receive a Notice via postcard and you want to get a payment, you **must** complete and submit a Claim Form. You may submit a Claim Form either electronically on the Settlement Website by clicking here [insert hyperlink], or by printing and mailing in a paper Claim Form, copies of which are available for download here [insert hyperlink]. Claim Forms must be submitted online by 11:59 p.m. EST on [date] or postmarked and mailed by [date].

## REMAINING IN THE SETTLEMENT

### 10. What am I giving up if I stay in the Class?

If the Settlement becomes final, you will give up your right to sue the Defendant and other Released Parties for the claims being resolved by this Settlement. The specific claims you are giving up against the Defendant are described in the Settlement Agreement. You will be "releasing" the Defendant and certain of its affiliates, employees and representatives as described in Section 1.28 of the Settlement Agreement. Unless you exclude yourself (*see* Question 13), you are "releasing" the claims. The Settlement Agreement is available through the "court documents" link on the website.

The Settlement Agreement describes the released claims with specific descriptions, so read it carefully. If you have any questions you can talk to the lawyers listed in Question 11 for free or you can, of course, talk to your own lawyer if you have questions about what this means.

## THE LAWYERS REPRESENTING YOU

### 11. Do I have a lawyer in the case?

The Court has appointed The Court has appointed Joseph I. Marchese and Philip L. Fraietta of Bursor & Fisher, P.A., Frank S. Hedin and Arun G. Ravindran of Hedin Hall LLP, and E. Powell Miller of The Miller Law Firm, P.C.to represent the class.  They are called "Class Counsel."  They believe, after conducting an extensive investigation, that the Settlement Agreement is fair, reasonable, and in the best interests of the Settlement Class. You will not be charged for these lawyers.  If you want to be represented by your own lawyer in this case, you may hire one at your expense.

## 12. How will the lawyers be paid?

The Defendant has agreed that Class Counsel attorneys' fees and costs may be paid out of the Settlement Fund in an amount to be determined by the Court. The fee petition will seek no more than 35% of the Settlement Fund, inclusive of reimbursement of their costs and expenses; the Court may award less than this amount.  Under the Settlement Agreement, any amount awarded to Class Counsel will be paid out of the Settlement Fund.

Subject to approval by the Court, Defendant has agreed that the Class Representative may be paid a service award of $5,000 from the Settlement Fund for his services in helping to bring and resolve this case.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

## 13. How do I get out of the Settlement?

To exclude yourself from the Settlement, you must submit a request for exclusion by 11:59 p.m. EST on [objection/exclusion deadline].  Requests for exclusion may be submitted either on the Settlement Website (via the online form accessible here [insert hyperlink]) or by mailing or otherwise delivering a letter (or request for exclusion) stating that you want to be excluded from the *Strano v. Kiplinger Washington Editors, Inc.*, Case No. 1:21-cv-12987-TLL-PTM settlement.  Your letter or request for exclusion must also include your name, your address, the title of the publication(s) to which you subscribed, your signature, the name and number of this case, and a statement that you wish to be excluded.  If you choose to submit a request for exclusion by mail, you must mail or deliver your exclusion request, postmarked no later than [objection/exclusion deadline], to the following address:

Kiplinger Settlement
0000 Street
City, ST 00000

## 14. If I don't exclude myself, can I sue the Defendant for the same thing later?

No. Unless you exclude yourself, you give up any right to sue the Defendant for the claims being resolved by this Settlement.

**15. If I exclude myself, can I get anything from this Settlement?**

No. If you exclude yourself, you will not receive a *pro rata* share of the Settlement Fund.

## OBJECTING TO THE SETTLEMENT

**16. How do I object to the Settlement?**

If you are a Class Member, you can object to the Settlement if you don't like any part of it.  You can give reasons why you think the Court should not approve it. The Court will consider your views.  To object, you must file with the Court a letter or brief stating that you object to the Settlement in *Strano v. Kiplinger Washington Editors, Inc.*, Case No. 1:21-cv-12987-TLL-PTM and identify all your reasons for your objections (including citations and supporting evidence) and attach any materials you rely on for your objections. Your letter or brief must also include your name, your address, the basis upon which you claim to be a Class Member (including the title of the publication(s) which you purchased or to which you subscribed), the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with your objection, and your signature. If you, or an attorney assisting you with your objection, have ever objected to any class action settlement where you or the objecting attorney has asked for or received payment in exchange for dismissal of the objection (or any related appeal) without modification to the settlement, you must include a statement in your objection identifying each such case by full case caption. You must also mail or deliver a copy of your letter or brief to Class Counsel and Defendant's Counsel listed below.

Class Counsel will file with the Court and post on this website its request for attorneys' fees by [two weeks prior to objection deadline].

If you want to appear and speak at the Final Approval Hearing to object to the Settlement, with or without a lawyer (explained below in answer to Question Number 20), you must say so in your letter or brief.  File the objection with the Court (or mail the objection to the Court) and mail a copy of the objection to Class Counsel and Defendant's Counsel, at the addresses below, postmarked no later than **[objection deadline].**

| Court | Class Counsel | Defendant's Counsel |
|---|---|---|
| The Honorable Thomas L. Ludington United States District Court for the Eastern District of Michigan 1000 Washington Avenue, Room 214, Bay City, MI 48708 | Philip L. Fraietta Bursor & Fisher P.A. 888 Seventh Avenue New York, NY 10019 | Walter E. Diercks Rubin, Winston, Diercks, Harris & Cooke, LLP 1250 Connecticut Avenue, NW, Suite 700, Washington, DC 20036 |

**17. What's the difference between objecting and excluding myself from the Settlement?**

Objecting simply means telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself from the Class is telling the Court that you don't want to be part of the Class. If you exclude yourself, you have no basis to object because the case no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

**18. When and where will the Court decide whether to approve the Settlement?**

The Court will hold the Final Approval Hearing at [time] on [date] at the United States Post Office Building, 1000 Washington Avenue, Room 214, Bay City, MI 48708. The purpose of the hearing will be for the Court to determine whether to approve the Settlement as fair, reasonable, adequate, and in the best interests of the Class; to consider the Class Counsel's request for attorneys' fees and expenses; and to consider the request for a service award to the Class Representative. At that hearing, the Court will be available to hear any objections and arguments concerning the fairness of the Settlement.

The hearing may be postponed to a different date or time without notice, so it is a good idea to check for updates by visiting the Settlement Website at www.KiplingerSettlement.com or calling (800) 000-0000. If, however, you timely objected to the Settlement and advised the Court that you intend to appear and speak at the Final Approval Hearing, you will receive notice of any change in the date of the Final Approval Hearing.

**19. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you send an objection or comment, you don't have to come to Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but it's not required.

**20. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must include in your letter or brief objecting to the settlement a statement saying that it is your "Notice of Intent to Appear in *Strano v. Kiplinger Washington Editors, Inc.*, Case No. 1:21-cv-12987-TLL-PTM." It must include your name, address, telephone number and signature as well as the name and address of your lawyer, if one is appearing for you. Your objection and notice of intent to appear must be filed with

the Court and postmarked no later than [**objection deadline**], and be sent to the addresses listed in Question 16.

## GETTING MORE INFORMATION

| 21. Where do I get more information? |

This Notice summarizes the Settlement.  More details are in the Settlement Agreement.  You can get a copy of the Settlement Agreement at www.KiplingerSettlement.com.  You may also write with questions to Kiplinger Settlement, P.O. Box 0000, City, ST 00000.  You can call the Settlement Administrator at (800) 000-0000 or Class Counsel at (646) 837-7150, if you have any questions.  Before doing so, however, please read this full Notice carefully. You may also find additional information elsewhere on the case website.

**EXHIBIT D**

*Strano v. Kiplinger Washington Editors, Inc.*, Case No. 1:21-cv-12987-TLL-PTM (E.D. Mich.)

## CLAIM FORM FOR UNIDENTIFIED CLASS MEMBERS

This Claim Form may be submitted online at www.KiplingerSettlement.com or completed and mailed to the address below. Submit your completed Claim Form online or mail it so it is postmarked no later than **[DATE]**. If you received a Notice by mail, you do NOT need to submit a Claim Form, and your Cash Award will be sent to you by check at the address identified on the Notice once the Settlement is finally approved. If your address has changed, please submit a change of address form online at www.KiplingerSettlement.com to ensure your check is mailed to your current address.

### I.   CLAIMANT INFORMATION (all fields required)

The Settlement Administrator will use this information for communications and payments. If this information changes before settlement payments are issued, contact the Settlement Administrator at the address below.

First Name                                                        M.I.     Last Name

Current Mailing Address, Line 1: Street Address/P.O. Box

Current Mailing Address, Line 2:

City:                                                          State:        Zip Code:

Preferred Telephone Number

Preferred Email address

### II.   CLAIM INFORMATION

Mailing address at which you received your subscription to a Kiplinger Publication between December 24, 2015 and July 30, 2016:
Mailing Address, Line 1: Street Address/P.O. Box

Mailing Address, Line 2:

City:                                                          State:        Zip Code:

### III.   PREFERRED PAYMENT METHOD

___ Check

___ PayPal (Associated Email Address: _____ )

___ Venmo (Associated Email Address: _____ )

### IV.   SIGNATURE: Sign and date the Claim Form below.

Signed: _____     Date: _____

Submit this Claim Form online or mail it to the address below postmarked no later than [**DATE**].

*Kiplinger Class Action Settlement Administrator*
c/o JND Legal Administration
[address]

**EXHIBIT E-1**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| RALPH STRANO, individually and on behalf of all others similarly situated,<br><br>                             Plaintiff,<br><br>    v.<br><br>KIPLINGER WASHINGTON EDITORS, INC.,<br><br>                     Defendant. | Case No. 21-cv-12987-TLL-PTM |

## <u>STIPULATION REGARDING UNDERTAKING RE: ATTORNEYS' FEES, COSTS, AND EXPENSES</u>

Plaintiff Ralph Strano and Defendant Kiplinger Washington Editors, Inc. ("Kiplinger") (collectively, "the Parties"), by and through and including their undersigned counsel, stipulate and agree as follows:

WHEREAS, Bursor & Fisher P.A. (the "Firm") desires to give an undertaking (the "Undertaking") for repayment of its share of the award of attorneys' fees, costs, and expenses approved by the Court, and

WHEREAS, the Parties agree that this Undertaking is in the interests of all Parties and in service of judicial economy and efficiency.

NOW, THEREFORE, the undersigned counsel, on behalf of himself as individual and as agent for his law firm, hereby submits himself and his law firm to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

By receiving any payments pursuant to the Settlement Agreement, the Firm and its shareholders, members, and/or partners submit to the jurisdiction of the United States District

Court for the Eastern District of Michigan for the enforcement of and any and all disputes relating to or arising out of the reimbursement obligation set forth herein and the Settlement Agreement.

In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, the Firm shall, within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to the Firm from the Settlement Fund, including any accrued interest.

In the event the Final Settlement Order and Judgment are upheld, but the attorneys' fees, costs, and expenses awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, the Firm shall within thirty (30) days repay to the Settlement Fund, based upon written instructions provided by the Settlement Administrator, the attorneys' fees and costs paid to the Firm from the Settlement Fund in the amount vacated or modified, including any accrued interest.

This Undertaking and all obligations set forth herein shall expire upon finality of all direct appeals of the Final Settlement Order and Judgment.

In the event the Firm fails to repay to Defendant or to the Settlement Fund any of attorneys' fees and costs that are owed to either pursuant to this Undertaking, the Court shall, upon application of Kiplinger, and notice to the Firm, summarily issue orders, including but not limited to judgments and attachment orders against the Firm, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

DATED:   July 5   , 2022          BURSOR & FISHER, P.A.

_____
By: Scott A. Bursor, on behalf of Bursor & Fisher, P.A.
Attorneys for Plaintiff Ralph Strano and Class Counsel

DATED: _____, 2022          RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, LLP

_____
By: Walter E. Diercks
Attorneys for Defendant Kiplinger Washington Editors, Inc.

3

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:


DATED: _____, 2022          BURSOR & FISHER, P.A.


                                      _____
                                      By: Scott A. Bursor, on behalf of Bursor & Fisher, P.A.
                                      Attorneys for Plaintiff Ralph Strano and Class Counsel


DATED: July 5, 2022          RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, LLP

                                      _____
                                      By: Walter B. Diercks
                                      Attorneys for Defendant Kiplinger Washington Editors,
                                      Inc.

3

**EXHIBIT E-2**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| RALPH STRANO, individually and on behalf of all others similarly situated,<br><br>                             Plaintiff,<br>     v.<br><br>KIPLINGER WASHINGTON EDITORS, INC.,<br><br>                         Defendant. | Case No. 21-cv-12987-TLL-PTM |

## STIPULATION REGARDING UNDERTAKING RE: ATTORNEYS' FEES, COSTS, AND EXPENSES

Plaintiff Ralph Strano and Defendant Kiplinger Washington Editors, Inc. ("Kiplinger") (collectively, "the Parties"), by and through and including their undersigned counsel, stipulate and agree as follows:

WHEREAS, Hedin Hall LLP (the "Firm") desires to give an undertaking (the "Undertaking") for repayment of its share of the award of attorneys' fees, costs, and expenses approved by the Court, and

WHEREAS, the Parties agree that this Undertaking is in the interests of all Parties and in service of judicial economy and efficiency.

NOW, THEREFORE, the undersigned counsel, on behalf of himself as individual and as agent for his law firm, hereby submits himself and his law firm to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

By receiving any payments pursuant to the Settlement Agreement, the Firm and its shareholders, members, and/or partners submit to the jurisdiction of the United States District

Court for the Eastern District of Michigan for the enforcement of and any and all disputes relating to or arising out of the reimbursement obligation set forth herein and the Settlement Agreement.

In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, the Firm shall, within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to the Firm from the Settlement Fund, including any accrued interest.

In the event the Final Settlement Order and Judgment are upheld, but the attorneys' fees, costs, and expenses awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, the Firm shall within thirty (30) days repay to the Settlement Fund, based upon written instructions provided by the Settlement Administrator, the attorneys' fees and costs paid to the Firm from the Settlement Fund in the amount vacated or modified, including any accrued interest.

This Undertaking and all obligations set forth herein shall expire upon finality of all direct appeals of the Final Settlement Order and Judgment.

In the event the Firm fails to repay to Defendant or to the Settlement Fund any of attorneys' fees and costs that are owed to either pursuant to this Undertaking, the Court shall, upon application of Kiplinger, and notice to the Firm, summarily issue orders, including but not limited to judgments and attachment orders against the Firm, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

DATED: ___July 5___, 2022          HEDIN HALL LLP

_____

By: Frank S. Hedin, on behalf of Hedin Hall LLP
Attorneys for Plaintiff Ralph Strano and Class Counsel

DATED: _____, 2022          RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, LLP

_____

By: Walter E. Diercks
Attorneys for Defendant Kiplinger Washington Editors, Inc.

3

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:


DATED: _____, 2022          HEDIN HALL LLP


                                 _____
                                 By: Frank S. Hedin, on behalf of Hedin Hall LLP
                                 Attorneys for Plaintiff Ralph Strano and Class Counsel


DATED: July 5, 2022              RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, LLP


                                 _____
                                 By: Walter E. Diercks
                                 Attorneys for Defendant Kiplinger Washington Editors,
                                 Inc.


3

**EXHIBIT E-3**

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

|  |  |
|---|---|
| RALPH STRANO, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br> v.<br><br>KIPLINGER WASHINGTON EDITORS, INC.,<br><br>         Defendant. | Case No. 21-cv-12987-TLL-PTM |

## <u>STIPULATION REGARDING UNDERTAKING RE: ATTORNEYS' FEES, COSTS, AND EXPENSES</u>

Plaintiff Ralph Strano and Defendant Kiplinger Washington Editors, Inc. ("Kiplinger") (collectively, "the Parties"), by and through and including their undersigned counsel, stipulate and agree as follows:

WHEREAS, The Miller Law Firm, P.C. (the "Firm") desires to give an undertaking (the "Undertaking") for repayment of its share of the award of attorneys' fees, costs, and expenses approved by the Court, and

WHEREAS, the Parties agree that this Undertaking is in the interests of all Parties and in service of judicial economy and efficiency.

NOW, THEREFORE, the undersigned counsel, on behalf of himself as individual and as agent for his law firm, hereby submits himself and his law firm to the jurisdiction of the Court for the purpose of enforcing the provisions of this Undertaking.

Capitalized terms used herein without definition have the meanings given to them in the Settlement Agreement.

By receiving any payments pursuant to the Settlement Agreement, the Firm and its shareholders, members, and/or partners submit to the jurisdiction of the United States District

Court for the Eastern District of Michigan for the enforcement of and any and all disputes relating to or arising out of the reimbursement obligation set forth herein and the Settlement Agreement.

In the event that the Final Settlement Order and Judgment or any part of it is vacated, overturned, reversed, or rendered void as a result of an appeal, or the Settlement Agreement is voided, rescinded, or otherwise terminated for any other reason, the Firm shall, within thirty (30) days repay to Defendant, based upon written instructions provided by Defendant's Counsel, the full amount of the attorneys' fees and costs paid to the Firm from the Settlement Fund, including any accrued interest.

In the event the Final Settlement Order and Judgment are upheld, but the attorneys' fees, costs, and expenses awarded by the Court or any part of them are vacated, modified, reversed, or rendered void as a result of an appeal, the Firm shall within thirty (30) days repay to the Settlement Fund, based upon written instructions provided by the Settlement Administrator, the attorneys' fees and costs paid to the Firm from the Settlement Fund in the amount vacated or modified, including any accrued interest.

This Undertaking and all obligations set forth herein shall expire upon finality of all direct appeals of the Final Settlement Order and Judgment.

In the event the Firm fails to repay to Defendant or to the Settlement Fund any of attorneys' fees and costs that are owed to either pursuant to this Undertaking, the Court shall, upon application of Kiplinger, and notice to the Firm, summarily issue orders, including but not limited to judgments and attachment orders against the Firm, and may make appropriate findings for sanctions for contempt of court.

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:

DATED: __7/5__, 2022          THE MILLER LAW FIRM, P.C.

By: E. Powell Miller, on behalf of The Miller Law Firm, P.C.
Attorneys for Plaintiff Ralph Strano and Class Counsel

DATED: _____, 2022       RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, LLP

By: Walter E. Diercks
Attorneys for Defendant Kiplinger Washington Editors, Inc.

3

The undersigned stipulate, warrant, and represent that he has both actual and apparent authority to enter into this stipulation, agreement, and undertaking on behalf of the Firm.

This Undertaking may be executed in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Signatures by facsimile shall be as effective as original signatures.

The undersigned declare under penalty of perjury under the laws of the United States that they have read and understand the foregoing and that it is true and correct.

IT IS SO STIPULATED THROUGH COUNSEL OF RECORD:


DATED: _____, 2022          THE MILLER LAW FIRM, P.C.


_____
By: E. Powell Miller, on behalf of The Miller Law Firm, P.C.
Attorneys for Plaintiff Ralph Strano and Class Counsel


DATED: JULY 5, 2022          RUBIN, WINSTON, DIERCKS, HARRIS & COOKE, LLP


_____
By: Walter E. Diercks
Attorneys for Defendant Kiplinger Washington Editors, Inc.


3

**EXHIBIT B**

**Bursor & Fisher, P.A. - Kiplinger's Personal Finance Expenses**

| | |
|---:|---|
| $5,155.75 | Mediation Fees |
| $20.96 | Catering & Meal Expenses |
| $38.46 | Ground Transportation Expenses |
| **$5,215.17** | **Total Kiplinger's Personal Finance Expenses** |

**Mediation Expenses**

| DATE | MATTER | AMOUNT | DESCRIPTION |
|---|---|---:|---|
| 2022.04.28 | Kiplinger's Personal Finance | $3,875.00 | JAMS, Inc. |
| 2022.06.06 | Kiplinger's Personal Finance | $984.11 | JAMS, Inc. |
| 2022.06.21 | Kiplinger's Personal Finance | $296.64 | JAMS, Inc. |
| | | **$5,155.75** | **Total Mediation Expenses** |

**Catering & Meal Expenses**

| DATE | MATTER | AMOUNT | DESCRIPTION |
|---|---|---:|---|
| 2022.05.31 | Kiplinger's Personal Finance | $20.96 | Doordash |
| | | **$20.96** | **Total Catering & Meal Expenses** |

**Ground Transportation Expenses**

| DATE | MATTER | AMOUNT | DESCRIPTION |
|---|---|---:|---|
| 2022.05.31 | Kiplinger's Personal Finance | $38.46 | Uber |
| | | **$38.46** | **Total Ground Transportation Expenses** |

**EXHIBIT C**

# BURSOR & FISHER
P.A.

www.bursor.com

701 BRICKELL AVENUE      888 SEVENTH AVENUE      1990 NORTH CALIFORNIA BLVD.
MIAMI, FL 33131      NEW YORK, NY 10019      WALNUT CREEK, CA 94596

## FIRM RESUME

With offices in Florida, New York, and California, BURSOR & FISHER lawyers have represented both plaintiffs and defendants in state and federal courts throughout the country.

The lawyers at our firm have an active civil trial practice, having won multi-million-dollar verdicts or recoveries in six of six class action jury trials since 2008. Our most recent class action trial victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector found to have violated the Telephone Consumer Protection Act. During the pendency of the defendant's appeal, the case settled for $75.6 million, the largest settlement in the history of the Telephone Consumer Protection Act.

In August 2013 in *Ayyad v. Sprint Spectrum L.P.*, in which Mr. Bursor served as lead trial counsel, we won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc. (II)*, we obtained a $50 million jury verdict in favor of a certified class of 150,000 purchasers of the Avacor Hair Regrowth System. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009, and the largest in any class action.

The lawyers at our firm have an active class action practice and have won numerous appointments as class counsel to represent millions of class members, including customers of Honda, Verizon Wireless, AT&T Wireless, Sprint, Haier America, and Michaels Stores as well as purchasers of Avacor™, Hydroxycut, and Sensa™ products. Bursor & Fisher lawyers have been court-appointed Class Counsel or Interim Class Counsel in:

1. *O'Brien v. LG Electronics USA, Inc.* (D.N.J. Dec. 16, 2010) to represent a certified nationwide class of purchasers of LG French-door refrigerators,

2. *Ramundo v. Michaels Stores, Inc.* (N.D. Ill. June 8, 2011) to represent a certified nationwide class of consumers who made in-store purchases at Michaels Stores using a debit or credit card and had their private financial information stolen as a result,

3. *In re Haier Freezer Consumer Litig.* (N.D. Cal. Aug. 17, 2011) to represent a certified class of purchasers of mislabeled freezers from Haier America Trading, LLC,

4. *Rodriguez v. CitiMortgage, Inc.* (S.D.N.Y. Nov. 14, 2011) to represent a certified nationwide class of military personnel against CitiMortgage for illegal foreclosures,

BURSOR&FISHER
P.A.

5.  *Rossi v. The Procter & Gamble Co.* (D.N.J. Jan. 31, 2012) to represent a certified nationwide class of purchasers of Crest Sensitivity Treatment & Protection toothpaste,

6.  *Dzielak v. Whirlpool Corp. et al.* (D.N.J. Feb. 21, 2012) to represent a proposed nationwide class of purchasers of mislabeled Maytag Centennial washing machines from Whirlpool Corp., Sears, and other retailers,

7.  *In re Sensa Weight Loss Litig.* (N.D. Cal. Mar. 2, 2012) to represent a certified nationwide class of purchasers of Sensa weight loss products,

8.  *In re Sinus Buster Products Consumer Litig.* (E.D.N.Y. Dec. 17, 2012) to represent a certified nationwide class of purchasers,

9.  *Ebin v. Kangadis Food Inc.* (S.D.N.Y. Feb. 25, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

10. *Forcellati v. Hyland's, Inc.* (C.D. Cal. Apr. 9, 2014) to represent a certified nationwide class of purchasers of children's homeopathic cold and flu remedies,

11. *Ebin v. Kangadis Family Management LLC, et al.* (S.D.N.Y. Sept. 18, 2014) to represent a certified nationwide class of purchasers of Capatriti 100% Pure Olive Oil,

12. *In re Scotts EZ Seed Litig.* (S.D.N.Y. Jan. 26, 2015) to represent a certified class of purchasers of Scotts Turf Builder EZ Seed,

13. *Dei Rossi v. Whirlpool Corp., et al.* (E.D. Cal. Apr. 28, 2015) to represent a certified class of purchasers of mislabeled KitchenAid refrigerators from Whirlpool Corp., Best Buy, and other retailers,

14. *Hendricks v. StarKist Co.* (N.D. Cal. July 23, 2015) to represent a certified nationwide class of purchasers of StarKist tuna products,

15. *In re NVIDIA GTX 970 Graphics Card Litig.* (N.D. Cal. May 8, 2015) to represent a proposed nationwide class of purchasers of NVIDIA GTX 970 graphics cards,

16. *Melgar v. Zicam LLC, et al.* (E.D. Cal. March 30, 2016) to represent a certified ten-jurisdiction class of purchasers of Zicam Pre-Cold products,

17. *In re Trader Joe's Tuna Litigation* (C.D. Cal. December 21, 2016) to represent purchaser of allegedly underfilled Trader Joe's canned tuna.

18. *In re Welspun Litigation* (S.D.N.Y. January 26, 2017) to represent a proposed nationwide class of purchasers of Welspun Egyptian cotton bedding products,

19. *Retta v. Millennium Products, Inc.* (C.D. Cal. January 31, 2017) to represent a certified nationwide class of Millennium kombucha beverages,

20. *Moeller v. American Media, Inc.*, (E.D. Mich. June 8, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

21. *Hart v. BHH, LLC* (S.D.N.Y. July 7, 2017) to represent a nationwide class of purchasers of Bell & Howell ultrasonic pest repellers,

22. *McMillion v. Rash Curtis & Associates* (N.D. Cal. September 6, 2017) to represent a certified nationwide class of individuals who received calls from Rash Curtis & Associates,

23. *Lucero v. Solarcity Corp.* (N.D. Cal. September 15, 2017) to represent a certified nationwide class of individuals who received telemarketing calls from Solarcity Corp.,

24. *Taylor v. Trusted Media Brands, Inc.* (S.D.N.Y. Oct. 17, 2017) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

25. *Gasser v. Kiss My Face, LLC* (N.D. Cal. Oct. 23, 2017) to represent a proposed nationwide class of purchasers of cosmetic products,

26. *Gastelum v. Frontier California Inc.* (S.F. Superior Court February 21, 2018) to represent a certified California class of Frontier landline telephone customers who were charged late fees,

27. *Williams v. Facebook, Inc.* (N.D. Cal. June 26, 2018) to represent a proposed nationwide class of Facebook users for alleged privacy violations,

28. *Ruppel v. Consumers Union of United States, Inc.* (S.D.N.Y. July 27, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

29. *Bayol v. Health-Ade* (N.D. Cal. August 23, 2018) to represent a proposed nationwide class of Health-Ade kombucha beverage purchasers,

30. *West v. California Service Bureau* (N.D. Cal. September 12, 2018) to represent a certified nationwide class of individuals who received calls from California Service Bureau,

31. *Gregorio v. Premier Nutrition Corporation* (S.D.N.Y. Sept. 14, 2018) to represent a nationwide class of purchasers of protein shake products,

32. *Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast* (S.D.N.Y. Oct. 24, 2018) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

33. *Bakov v. Consolidated World Travel Inc. d/b/a Holiday Cruise Line* (N.D. Ill. Mar. 21, 2019) to represent a certified class of individuals who received calls from Holiday Cruise Line,

34. *Martinelli v. Johnson & Johnson* (E.D. Cal. March 29, 2019) to represent a certified class of purchasers of Benecol spreads labeled with the representation "No Trans Fat,"

35. *Edwards v. Hearst Communications, Inc.* (S.D.N.Y. April 24, 2019) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

36. *Galvan v. Smashburger* (C.D. Cal. June 25, 2019) to represent a proposed class of purchasers of Smashburger's "Triple Double" burger,

37. *Kokoszki v. Playboy Enterprises, Inc.* (E.D. Mich. Feb. 7, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

38. *Russett v. The Northwestern Mutual Life Insurance Co.* (S.D.N.Y. May 28, 2020) to represent a class of insurance policyholders that were allegedly charged unlawful paper billing fees,

39. *In re: Metformin Marketing and Sales Practices Litigation* (D.N.J. June 3, 2020) to represent a proposed nationwide class of purchasers of generic diabetes medications that were contaminated with a cancer-causing carcinogen,

40. *Hill v. Spirit Airlines, Inc.* (S.D. Fla. July 21, 2020) to represent a proposed nationwide class of passengers whose flights were cancelled by Spirit Airlines due to the novel coronavirus, COVID-19, and whose tickets were not refunded,

41. *Kramer v. Alterra Mountain Co.* (D. Colo. July 31, 2020) to represent a proposed nationwide class of purchasers to recoup the unused value of their Ikon ski passes after Alterra suspended operations at its ski resorts due to the novel coronavirus, COVID-19,

42. *Qureshi v. American University* (D.D.C. July 31, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by American University due to the novel coronavirus, COVID-19,

43. *Hufford v. Maxim Inc.* (S.D.N.Y. Aug. 13, 2020) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

44. *Desai v. Carnegie Mellon University* (W.D. Pa. Aug. 26, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Carnegie Mellon University due to the novel coronavirus, COVID-19,

45. *Heigl v. Waste Management of New York, LLC* (E.D.N.Y. Aug. 27, 2020) to represent a class of waste collection customers that were allegedly charged unlawful paper billing fees,

46. *Stellato v. Hofstra University* (E.D.N.Y. Sept. 18, 2020) to represent a proposed nationwide class of students for tuition and fee refunds after their classes were moved online by Hofstra University due to the novel coronavirus, COVID-19,

47. *Kaupelis v. Harbor Freight Tools USA, Inc.* (C.D. Cal. Sept. 23, 2020), to represent consumers who purchased defective chainsaws,

48. *Soo v. Lorex Corporation* (N.D. Cal. Sept. 23, 2020), to represent consumers whose security cameras were intentionally rendered non-functional by manufacturer,

49. *Miranda v. Golden Entertainment (NV), Inc.* (D. Nev. Dec. 17, 2020), to represent consumers and employees whose personal information was exposed in a data breach,

50. *Benbow v. SmileDirectClub, Inc.* (Cir. Ct. Cook Cnty. Feb. 4, 2021), to represent a certified nationwide class of individuals who received text messages from SmileDirectClub, in alleged violation of the Telephone Consumer Protection Act,

51. *Suren v. DSV Solutions, LLC* (Cir. Ct. DuPage Cnty. Apr. 8, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

52. *De Lacour v. Colgate-Palmolive Co.* (S.D.N.Y. Apr. 23, 2021), to represent a certified class of consumers who purchased allegedly "natural" Tom's of Maine products,

53. *Wright v. Southern New Hampshire University* (D.N.H. Apr. 26, 2021), to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Southern New Hampshire University due to the novel coronavirus, COVID-19,

54. *Sahlin v. Hospital Housekeeping Systems, LLC* (Cir. Ct. Williamson Cnty. May 21, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

55. *Landreth v. Verano Holdings LLC, et al.* (Cir. Ct. Cook Cnty. June 2, 2021), to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act.

56. *Rocchio v. Rutgers, The State University of New Jersey*, (Sup. Ct., Middlesex Cnty. October 27, 201), to represent a certified nationwide class of students for fee refunds after their classes were moved online by Rutgers due to the novel coronavirus, COVID-19,

57. *Malone v. Western Digital Corp.*, (N.D. Cal. Dec. 22, 2021), to represent a class of consumers who purchased hard drives that were allegedly deceptively advertised,

58. *Jenkins v. Charles Industries, LLC*, (Cir. Ct. DuPage Cnty. Dec. 21, 2021) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

59. *Frederick v. Examsoft Worldwide, Inc.*, (Cir. Ct. DuPage Cnty. Jan. 6, 2022) to represent a certified class of exam takers who used virtual exam proctoring software, in alleged violation of the Illinois Biometric Information Privacy Act,

60. *Isaacson v. Liqui-Box Flexibles, LLC, et al.*, (Cir. Ct. Will Cnty. Jan. 18, 2022) to represent a certified class of employees who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

61. *Goldstein et al. v. Henkel Corp.*, (D. Conn. Mar. 3, 2022) to represent a proposed class of purchasers of Right Guard-brand antiperspirants that were allegedly contaminated with benzene,

62. *McCall v. Hercules Corp.*, (N.Y. Sup. Ct., Westchester Cnty. Mar. 14, 2022) to represent a certified class of who laundry card purchasers who were allegedly subjected to deceptive practices by being denied cash refunds,

63. *Lewis v. Trident Manufacturing, Inc.*, (Cir. Ct. Kane Cnty. Mar. 16, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act,

64. *Croft v. Spinx Games Limited, et al.*, (W.D. Wash. Mar. 31, 2022) to represent a certified class of Washington residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Washington law,

65. *Fischer v. Instant Checkmate LLC*, (N.D. Ill. Mar. 31, 2022) to represent a certified class of Illinois residents whose identities were allegedly used without their consent in alleged violation of the Illinois Right of Publicity Act,

66. *Rivera v. Google LLC*, (Cir. Ct. Cook Cnty. Apr. 25, 2022) to represent a certified class of Illinois residents who appeared in a photograph in Google Photos, in alleged violation of the Illinois Biometric Information Privacy Act,

67. *Loftus v. Outside Integrated Media, LLC*, (E.D. Mich. May 5, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

68. *D'Amario v. The University of Tampa*, (S.D.N.Y. June 3, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by The University of Tampa due to the novel coronavirus, COVID-19,

69. *Fittipaldi v. Monmouth University*, (D.N.J. Sept. 22, 2022) to represent a certified nationwide class of students for tuition and fee refunds after their classes were moved online by Monmouth University due to the novel coronavirus, COVID-19,

70. *Armstead v. VGW Malta Ltd. et al.* (Cir. Ct. Henderson Cnty. Oct. 3, 2022) to present a certified class of Kentucky residents who lost money playing mobile applications games that allegedly constituted illegal gambling under Kentucky law,

71. *Cruz v. The Connor Group, A Real Estate Investment Firm, LLC*, (N.D. Ill. Oct. 26, 2022) to represent a certified class of workers who used a fingerprint clock-in system, in alleged violation of the Illinois Biometric Information Privacy Act;

72. *Delcid et al. v. TCP HOT Acquisitions LLC et al.* (S.D.N.Y. Oct. 28, 2022) to represent a certified nationwide class of purchasers of Sure and Brut-brand antiperspirants that were allegedly contaminated with benzene,

73. *Kain v. The Economist Newspaper NA, Inc.* (E.D. Mich. Dec. 15, 2022) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

74. *Strano v. Kiplinger Washington Editors, Inc.* (E.D. Mich. Jan. 6, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act,

75. *Moeller v. The Week Publications, Inc.* (E.D. Mich. Jan. 6, 2023) to represent a class of magazine subscribers under the Michigan Preservation of Personal Privacy Act.

## SCOTT A. BURSOR

Mr. Bursor has an active civil trial practice, having won multi-million verdicts or recoveries in six of six civil jury trials since 2008. Mr. Bursor's most recent victory came in May 2019 in *Perez v. Rash Curtis & Associates*, in which Mr. Bursor served as lead trial counsel and won a $267 million jury verdict against a debt collector for violations of the Telephone Consumer Protection Act (TCPA).

In *Ayyad v. Sprint Spectrum L.P.* (2013), where Mr. Bursor served as lead trial counsel, the jury returned a verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

In *Thomas v. Global Vision Products, Inc.* (2009), the jury returned a $50 million verdict in favor of the plaintiff and class represented by Mr. Bursor. The legal trade publication VerdictSearch reported that this was the second largest jury verdict in California in 2009.

Class actions are rarely tried to verdict. Other than Mr. Bursor and his partner Mr. Fisher, we know of no lawyer that has tried more than one class action to a jury. Mr. Bursor's perfect record of six wins in six class action jury trials, with recoveries ranging from $21 million

to $299 million, is unmatched by any other lawyer.  Each of these victories was hard-fought against top trial lawyers from the biggest law firms in the United States.

Mr. Bursor graduated from the University of Texas Law School in 1996.  He served as Articles Editor of the Texas Law Review, and was a member of the Board of Advocates and Order of the Coif.  Prior to starting his own practice, Mr. Bursor was a litigation associate at a large New York based law firm where he represented telecommunications, pharmaceutical, and technology companies in commercial litigation.

Mr. Bursor is a member of the state bars of New York, Florida, and California, as well as the bars of the United States Court of Appeals for the Second, Third, Fourth, Sixth, Ninth and Eleventh Circuits, and the bars of the United States District Courts for the Southern and Eastern Districts of New York, the Northern, Central, Southern and Eastern Districts of California, the Southern and Middle Districts of Florida, and the Eastern District of Michigan.

### *Representative Cases*

Mr. Bursor was appointed lead or co-lead class counsel to the largest, 2nd largest, and 3rd largest classes ever certified.  Mr. Bursor has represented classes including more than 160 million class members, roughly 1 of every 2 Americans.  Listed below are recent cases that are representative of Mr. Bursor's practice:

Mr. Bursor negotiated and obtained court-approval for two landmark settlements in *Nguyen v. Verizon Wireless* and *Zill v. Sprint Spectrum* (the largest and 2nd largest classes ever certified).  These settlements required Verizon and Sprint to open their wireless networks to third-party devices and applications.  These settlements are believed to be the most significant legal development affecting the telecommunications industry since 1968, when the FCC's Carterfone decision similarly opened up AT&T's wireline telephone network.

Mr. Bursor was the lead trial lawyer in *Ayyad v. Sprint Spectrum, L.P.* representing a class of approximately 2 million California consumers who were charged an early termination fee under a Sprint cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory and common law claims. After a five-week combined bench-and-jury trial, the jury returned a verdict in June 2008 and the Court issued a Statement of Decision in December 2008 awarding the plaintiffs $299 million in cash and debt cancellation.  Mr. Bursor served as lead trial counsel for this class again in 2013 during a month-long jury trial in which Sprint asserted a $1.06 billion counterclaim against the class.  Mr. Bursor secured a verdict awarding Sprint only $18.4 million, the exact amount calculated by the class's damages expert.  This award was less than 2% of the damages Sprint sought, less than 6% of the amount of the illegal termination fees Sprint charged to class members.  In December 2016, after more than 13 years of litigation, the case was settled for $304 million, including $79 million in cash payments plus $225 million in debt cancellation.

Mr. Bursor was the lead trial lawyer in *White v. Cellco Partnership d/b/a Verizon Wireless* representing a class of approximately 1.4 million California consumers who were charged an early termination fee under a Verizon cellphone contract, asserting claims that such fees were unlawful liquidated damages under the California Civil Code, as well as other statutory

and common law claims.  In July 2008, after Mr. Bursor presented plaintiffs' case-in-chief, rested, then cross-examined Verizon's principal trial witness, Verizon agreed to settle the case for a $21 million cash payment and an injunction restricting Verizon's ability to impose early termination fees in future subscriber agreements.

Mr. Bursor was the lead trial lawyer in *Thomas v. Global Visions Products Inc.*  Mr. Bursor represented a class of approximately 150,000 California consumers who had purchased the Avacor® hair regrowth system.  In January 2008, after a four-week combined bench-and-jury trial. Mr. Bursor obtained a $37 million verdict for the class, which the Court later increased to $40 million.

Mr. Bursor was appointed class counsel and was elected chair of the Official Creditors' Committee in *In re Nutraquest Inc.*, a Chapter 11 bankruptcy case before Chief Judge Garrett E. Brown, Jr. (D.N.J.) involving 390 ephedra-related personal injury and/or wrongful death claims, two consumer class actions, four enforcement actions by governmental agencies, and multiple adversary proceedings related to the Chapter 11 case.  Working closely with counsel for all parties and with two mediators, Judge Nicholas Politan (Ret.) and Judge Marina Corodemus (Ret.), the committee chaired by Mr. Bursor was able to settle or otherwise resolve every claim and reach a fully consensual Chapter 11 plan of reorganization, which Chief Judge Brown approved in late 2006.  This settlement included a $12.8 million recovery to a nationwide class of consumers who alleged they were defrauded in connection with the purchase of Xenadrine® dietary supplement products.

Mr. Bursor was the lead trial lawyer in *In re: Pacific Bell Late Fee Litigation*.  After filing the first class action challenging Pac Bell's late fees in April 2010, winning a contested motion to certify a statewide California class in January 2012, and defeating Pac Bell's motion for summary judgment in February 2013, Mr. Bursor obtained final approval of the $38 million class settlement.  The settlement, which Mr. Bursor negotiated the night before opening statements were scheduled to commence, included a $20 million cash payment to provide refunds to California customers who paid late fees on their Pac Bell wireline telephone accounts, and an injunction that reduced other late fee charges by $18.6 million.

## L. TIMOTHY FISHER

L. Timothy Fisher has an active practice in consumer class actions and complex business litigation and has also successfully handled a large number of civil appeals.

Mr. Fisher has been actively involved in numerous cases that resulted in multi-million dollar recoveries for consumers and investors. Mr. Fisher has handled cases involving a wide range of issues including nutritional labeling, health care, telecommunications, corporate governance, unfair business practices and consumer fraud. With his partner Scott A. Bursor, Mr. Fisher has tried five class action jury trials, all of which produced successful results. In *Thomas v. Global Vision Products*, Mr. Fisher obtained a jury award of $50,024,611 — the largest class action award in California in 2009 and the second-largest jury award of any kind. In 2019, Mr. Fisher served as trial counsel with Mr. Bursor and his partner Yeremey Krivoshey in *Perez. v. Rash Curtis & Associates*, where the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.

Mr. Fisher was admitted to the State Bar of California in 1997. He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit, the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, the Northern District of Illinois, the Eastern District of Michigan, and the Eastern District of Missouri. Mr. Fisher taught appellate advocacy at John F. Kennedy University School of Law in 2003 and 2004.  In 2010, he contributed jury instructions, a verdict form and comments to the consumer protection chapter of Justice Elizabeth A. Baron's *California Civil Jury Instruction Companion Handbook* (West 2010). In January 2014, Chief Judge Claudia Wilken of the United States District Court for the Northern District of California appointed Mr. Fisher to a four-year term as a member of the Court's Standing Committee on Professional Conduct.

Mr. Fisher received his Juris Doctor from Boalt Hall at the University of California at Berkeley in 1997. While in law school, he was an active member of the Moot Court Board and participated in moot court competitions throughout the United States. In 1994, Mr. Fisher received an award for Best Oral Argument in the first-year moot court competition.

In 1992, Mr. Fisher graduated with highest honors from the University of California at Berkeley and received a degree in political science.  Prior to graduation, he authored an honors thesis for Professor Bruce Cain entitled "The Role of Minorities on the Los Angeles City Council."  He is also a member of Phi Beta Kappa.

### *Representative Cases*

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court).  Mr. Fisher litigated claims against Global Vision Products, Inc. and other individuals in connection with the sale and marketing of a purported hair loss remedy known as Avacor.  The case lasted more than seven years and involved two trials.  The first trial resulted in a verdict for plaintiff and the class in the amount of $40,000,000.  The second trial resulted in a jury verdict of $50,024,611, which led to a $30 million settlement for the class.

*In re Cellphone Termination Fee Cases* - Handset Locking Actions (Alameda County Superior Court).  Mr. Fisher actively worked on five coordinated cases challenging the secret locking of cell phone handsets by major wireless carriers to prevent consumers from activating them on competitive carriers' systems.  Settlements have been approved in all five cases on terms that require the cell phone carriers to disclose their handset locks to consumers and to provide unlocking codes nationwide on reasonable terms and conditions.  The settlements fundamentally changed the landscape for cell phone consumers regarding the locking and unlocking of cell phone handsets.

*In re Cellphone Termination Fee Cases* - Early Termination Fee Cases (Alameda County Superior Court and Federal Communications Commission).  In separate cases that are a part of the same coordinated litigation as the Handset Locking Actions, Mr. Fisher actively worked on claims challenging the validity under California law of early termination fees imposed by national cell phone carriers. In one of those cases, against Verizon Wireless, a nationwide settlement was reached after three weeks of trial in the amount of $21 million.  In a second case, which was tried to verdict, the Court held after trial that the $73 million of flat early termination

fees that Sprint had collected from California consumers over an eight-year period were void and unenforceable.

### *Selected Published Decisions*

*Melgar v. Zicam LLC*, 2016 WL 1267870 (E.D. Cal. Mar. 30, 2016) (certifying 10-jurisdiction class of purchasers of cold remedies, denying motion for summary judgment, and denying motions to exclude plaintiff's expert witnesses).

*Salazar v. Honest Tea, Inc.*, 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015) (denying motion for summary judgment).

*Dei Rossi v. Whirlpool Corp.*, 2015 WL 1932484 (E.D. Cal. Apr. 27, 2015) (certifying California class of purchasers of refrigerators that were mislabeled as Energy Star qualified).

*Bayol v. Zipcar, Inc.*, 78 F.Supp.3d 1252 (N.D. Cal. 2015) (denying motion to dismiss claims alleging unlawful late fees under California Civil Code § 1671).

*Forcellati v. Hyland's, Inc.*, 2015 WL 9685557 (C.D. Cal. Jan. 12, 2015) (denying motion for summary judgment in case alleging false advertising of homeopathic cold and flu remedies for children).

*Bayol v. Zipcar, Inc.*, 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014) (denying motion to transfer venue pursuant to a forum selection clause).

*Forcellati v. Hyland's Inc.*, 2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (certifying nationwide class of purchasers of homeopathic cold and flu remedies for children).

*Hendricks v. StarKist Co.*, 30 F.Supp.3d 917 (N.D. Cal. 2014) (denying motion to dismiss in case alleging underfilling of 5-ounce cans of tuna).

*Dei Rossi v. Whirlpool Corp.*, 2013 WL 5781673 (E.D. Cal. October 25, 2013) (denying motion to dismiss in case alleging that certain KitchenAid refrigerators were misrepresented as Energy Star qualified).

*Forcellati v. Hyland's Inc.*, 876 F.Supp.2d 1155 (C.D. Cal. 2012) (denying motion to dismiss complaint alleging false advertising regarding homeopathic cold and flu remedies for children).

*Clerkin v. MyLife.com*, 2011 WL 3809912 (N.D. Cal. August 29, 2011) (denying defendants' motion to dismiss in case alleging false and misleading advertising by a social networking company).

*In re Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380 (2010) (affirming order approving $21 million class action settlement).

*Gatton v. T-Mobile USA, Inc.*, 152 Cal.App.4th 571 (2007) (affirming order denying motion to compel arbitration).

### *Selected Class Settlements*

*Melgar v. Zicam* (Eastern District of California) - $16 million class settlement of claims alleging cold medicine was ineffective.

*Gastelum v. Frontier California Inc.* (San Francisco Superior Court) - $10.9 million class action settlement of claims alleging that a residential landline service provider charged unlawful late

fees.

*West v. California Service Bureau, Inc.* (Northern District of California) - $4.1 million class settlement of claims under the Telephone Consumer Protection Act.

*Gregorio v. Premier Nutrition Corp.* (Southern District of New York) - $9 million class settlement of false advertising claims against protein shake manufacturer.

*Morris v. SolarCity Corp.* (Northern District of California) - $15 million class settlement of claims under the Telephone Consumer Protection Act.

*Retta v. Millennium Products, Inc.* (Central District of California) - $8.25 million settlement to resolve claims of bottled tea purchasers for alleged false advertising.

*Forcellati v. Hyland's* (Central District of California) – nationwide class action settlement providing full refunds to purchasers of homeopathic cold and flu remedies for children.

*Dei Rossi v. Whirlpool* (Eastern District of California) – class action settlement providing $55 cash payments to purchasers of certain KitchenAid refrigerators that allegedly mislabeled as Energy Star qualified.

*In Re NVIDIA GTX 970 Graphics Chip Litigation* (Northern District of California) - $4.5 million class action settlement of claims alleging that a computer graphics card was sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.* (Northern District of California) – $12 million class action settlement of claims alleging that 5-ounce cans of tuna were underfilled.

*In re Zakskorn v. American Honda Motor Co.* Honda (Eastern District of California) – nationwide settlement providing for brake pad replacement and reimbursement of out-of-pocket expenses in case alleging defective brake pads on Honda Civic vehicles manufactured between 2006 and 2011.

*Correa v. Sensa Products, LLC* (Los Angeles Superior Court) - $9 million settlement on behalf of purchasers of the Sensa weight loss product.

*In re Pacific Bell Late Fee Litigation* (Contra Costa County Superior Court) - $38.6 million settlement on behalf of Pac Bell customers who paid an allegedly unlawful late payment charge.

*In re Haier Freezer Consumer Litigation* (Northern District of California) - $4 million settlement, which provided for cash payments of between $50 and $325.80 to class members who purchased the Haier HNCM070E chest freezer.

*Thomas v. Global Vision Products, Inc.* (Alameda County Superior Court) - $30 million settlement on behalf of a class of purchasers of a hair loss remedy.

*Guyette v. Viacom, Inc.* (Alameda County Superior Court) - $13 million settlement for a class of cable television subscribers who alleged that the defendant had improperly failed to share certain tax refunds with its subscribers.

## JOSEPH I. MARCHESE

Joseph I. Marchese is a Partner with Bursor & Fisher, P.A.  Joe focuses his practice on consumer class actions, employment law disputes, and commercial litigation.  He has represented corporate and individual clients in a wide array of civil litigation, and has substantial trial and appellate experience.

Joe has diverse experience in litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, privacy violations, data breach claims, and violations of the Servicemembers Civil Relief Act.

Joe also has significant experience in multidistrict litigation proceedings.  Recently, he served on the Plaintiffs' Executive Committee in *In Re:  Blue Buffalo Company, Ltd. Marketing And Sales Practices Litigation*, MDL No. 2562, which resulted in a $32 million consumer class settlement.  Currently, he serves on the Plaintiffs' Steering Committee for Economic Reimbursement in *In Re: Valsartan Products Liability Litigation*, MDL. No. 2875.

Joe is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan, as well as the United States Court of Appeals for the Second Circuit.

Joe graduated from Boston University School of Law in 2002 where he was a member of The Public Interest Law Journal.  In 1998, Joe graduated with honors from Bucknell University.

### *Selected Published Decisions:*

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. Sept. 7, 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

*Boelter v. Hearst Communications, Inc.*, 192 F. Supp. 3d 427 (S.D.N.Y. June 17, 2016), denying publisher's motion to dismiss its subscriber's allegations of state privacy law violations in putative class action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*In re Michaels Stores Pin Pad Litigation*, 830 F. Supp. 2d 518 (N.D. Ill. 2011), denying retailer's motion to dismiss its customers' state law consumer protection and privacy claims in data breach putative class action.

### *Selected Class Settlements:*

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

In *re Scotts EZ Seed Litigation*, Case No. 12-cv-4727-VB (S.D.N.Y. 2018) – final approval granted for $47 million class settlement to resolve false advertising claims of purchasers of combination grass seed product.

*In Re:  Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) – final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*Rodriguez v. Citimortgage, Inc.*, Case No. 11-cv-4718-PGG (S.D.N.Y. 2015) – final approval granted for $38 million class settlement to resolve claims of military servicemembers for alleged foreclosure violations of the Servicemembers Civil Relief Act, where each class member was entitled to $116,785 plus lost equity in the foreclosed property and interest thereon.

*O'Brien v. LG Electronics USA, Inc., et al.*, Case No. 10-cv-3733-DMC (D.N.J. 2011) – final approval granted for $23 million class settlement to resolve claims of Energy Star refrigerator purchasers for alleged false advertising of the appliances' Energy Star qualification.

## JOSHUA D. ARISOHN

Joshua D. Arisohn is a Partner with Bursor & Fisher, P.A. Josh has litigated precedent-setting cases in the areas of consumer class actions and terrorism. He participated in the first ever trial to take place under the Anti-Terrorism Act, a statute that affords U.S. citizens the right to assert federal claims for injuries arising out of acts of international terrorism. Josh's practice continues to focus on terrorism-related matters as well as class actions.

Josh is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the District Court for the District of Columbia, and the United States Courts of Appeals for the Second and Ninth Circuits.

Josh previously practiced at Dewey & LeBoeuf LLP and DLA Piper LLP. He graduated from Columbia University School of Law in 2006, where he was a Harlan Fiske Stone Scholar, and received his B.A. from Cornell University in 2002. Josh has been honored as a 2015, 2016 and 2017 Super Lawyer Rising Star.

### *Selected Published Decisions:*

*Fields v. Syrian Arab Republic*, Civil Case No. 18-1437 (RJL), entering a judgment of approximately $850 million in favor of the family members of victims of terrorist attacks carried out by ISIS with the material support of Syria.

*Farwell v. Google LLC*, 2022 WL 1568361 (C.D. Ill. Mar. 31, 2022), denying social media defendant's motion to dismiss BIPA claims brought on behalf of Illinois school students using Google's Workspace for Education platform on laptop computers.

*Weiman v. Miami University*, Case No. 2020-00614JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Smith v. The Ohio State University*, Case No. 2020-00321JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Waitt v. Kent State University*, Case No. 2020-00392JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Duke v. Ohio University*, Case No. 2021-00036JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Keba v. Bowling Green State University*, Case No. 2020-00639JD (Oh. Ct. Claims), certifying a class of students alleging a breach of contract based on their school's failure to provide a full semester of in-person classes.

*Kirkbride v. The Kroger Co.*, Case No. 2:21-cv-00022-ALM-EPD, denying motion to dismiss claims based on the allegation that defendant overstated its usual and customary prices and thereby overcharged customers for generic drugs.

### *Selected Class Settlements:*

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

*Marquez v. Google LLC*, Case No. 2021-CH-1460 (Cir. Ct. Cook Cnty. 2022) – final approval granted for $100 million class settlement to resolve alleged BIPA violations of Illinois residents appearing in photos on the Google Photos platform.

### JOEL D. SMITH

Joel D. Smith is a Partner with Bursor & Fisher, P.A.  Joel is a trial attorney who has practiced in lower court and appeals courts across the country, as well as the U.S. Supreme Court.

Prior to joining Bursor & Fisher, Joel was a litigator at Crowell & Moring, where he represented Fortune 500 companies, privately held businesses, and public entities in a wide variety of commercial, environmental, and class action matters.  Among other matters, Joel served as defense counsel for AT&T, Enterprise-Rent-A-Car, Flowers Foods, and other major U.S. businesses in consumer class actions, including a class action seeking to hold U.S. energy companies accountable for global warming.  Joel represented four major U.S. retailers in a case arising from a devastating arson fire and ensuing state of emergency in Roseville, California, which settled on the eve of a trial that was expected to last several months and involve several dozen witnesses.  Joel also was part of the trial team in a widely publicized trial over the death of a contestant who died after participating in a Sacramento radio station's water drinking contest.

More recently, Joel's practice focuses on consumer class actions involving automotive and other product defects, financial misconduct, false advertising, and privacy violations.

Joel received both his undergraduate and law degrees from the University of California at Berkeley.  While at Berkeley School of Law, he was a member of the California Law Review, received several academic honors, externed for the California Attorney General's office and published an article on climate change policy and litigation.

Joel is admitted to the State Bar of California, as well as the United States Courts of Appeals for the Second, Third and Ninth Circuits; all California district courts; the Eastern District of Michigan; and the Northern District of Illinois.

### *Selected Published Decisions:*

*Javier v. Assurance IQ, LLC*, --- Fed App'x --- 2022 WL 1744107 (9th Cir. May 31, 2022), reversing dismissal in a class action alleging surreptitious monitoring of internet communications.

*Revitch v. DIRECTV, LLC*, 977 F.3d 713 (9th Cir. 2020), affirming denial of motion to compel arbitration in putative class action alleging unlawful calls under the Telephone Consumer Protection Act.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 2020 WL 5901116 (C.D. Cal. Sept. 23, 2020), granting class certification of consumer protection claims brought by purchasers of defective chainsaws.

### *Selected Class Settlements:*

*Recinos et al. v. The Regents of the University of California,* Superior Court for the State of California, County of Alameda, Case No. RG19038659 – final approval granted for a settlement providing debt relief and refunds to University of California students who were charged late fees.

*Crandell et al. v. Volkswagen Group of America*, Case No. 2:18-cv-13377-JSA (D.N.J.)  – final approval granted for a settlement providing relief for Volkswagen Touareg owners to resolve allegations that defects in Touareg vehicles caused the engines to ingest water when driving in the rain.

*Isley et al. v. BMW of N. America, LLC*, Case No. 2:19-cv-12680-ESK (D.N.J.) – final approval granted for settlement providing BMW owners with reimbursements and credit vouchers to resolve allegations that defects in the BMW N63TU engine caused excessive oil consumption.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, 8:19-cv-01203-JVS-DFM (C.D. Cal.) – final approval granted for a settlement valued up to $40 million to resolve allegations that Harbor Freight sold chainsaws with a defective power switch that could prevent the chainsaws from turning off.

*Morris v. SolarCity Corp.*, Case No. 3:15-cv-05107-RS (N.D. Cal.) - final approval granted for $15 million class settlement to resolve claims under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

### NEAL J. DECKANT

Neal J. Deckant is a Partner with Bursor & Fisher, P.A., where he serves as the firm's Head of Information & e-Discovery.  Neal focuses his practice on complex business litigation and consumer class actions.  Prior to joining Bursor & Fisher, Neal counseled low-income homeowners facing foreclosure in East Boston.

Neal is admitted to the State Bars of California and New York, and is a member of the bars of the United States District Court for the Northern District of California, the United States District Court for the Eastern District of California, the United States District Court for the Central District of California, the United States District Court for the Southern District of

California, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of New York, and the bars of the United States Courts of Appeals for the Second and Ninth Circuits.

Neal received his Juris Doctor from Boston University School of Law in 2011, graduating cum laude with two Dean's Awards.  During law school, Neal served as a Senior Articles Editor for the Review of Banking and Financial Law, where he authored two published articles about securitization reforms, both of which were cited by the New York Court of Appeals, the highest court in the state.  Neal was also awarded Best Oral Argument in his moot court section, and he served as a Research Assistant for his Securities Regulation professor. Neal has also been honored as a 2014, 2015, 2016, and 2017 Super Lawyers Rising Star.  In 2007, Neal graduated with Honors from Brown University with a dual major in East Asian Studies and Philosophy.

### *Selected Published Decisions:*

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (N.D. Cal. Mar. 29, 2019), granting class certification of false advertising and other claims brought by purchasers of Benecol spreads labeled with the representation "No Trans Fats."

*Dzielak v. Whirlpool Corp.*, 2017 WL 6513347 (D.N.J. Dec. 20, 2017), granting class certification of consumer protection claims brought by purchasers of Maytag Centennial washing machines marked with the "Energy Star" logo.

*Duran v. Obesity Research Institute*, LLC, 204 Cal. Rptr. 3d 896 (Cal. Ct. App. 2016), reversing and remanding final approval of a class action settlement on appeal, regarding allegedly mislabeled dietary supplements, in connection with a meritorious objection.

*Marchuk v. Faruqi & Faruqi, LLP*, et al., 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*In Re NVIDIA GTX 970 Graphics Chip Litigation*, Case No. 15-cv-00760-PJH (N.D. Cal. Dec. 7, 2016) – final approval granted for $4.5 million class action settlement to resolve claims that a computer graphics card was allegedly sold with false and misleading representations concerning its specifications and performance.

*Hendricks v. StarKist Co.*, 2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) – final approval granted for $12 million class action settlement to resolve claims that 5-ounce cans of tuna were allegedly underfilled.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – class action claims resolved for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy, following claims that its olive oil was allegedly sold with false and misleading representations.

### ***Selected Publications:***

Neal Deckant, *X. Reforms of Collateralized Debt Obligations: Enforcement, Accounting and Regulatory Proposals*, 29 Rev. Banking & Fin. L. 79 (2009) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014)).

Neal Deckant, *Criticisms of Collateralized Debt Obligations in the Wake of the Goldman Sachs Scandal*, 30 Rev. Banking & Fin. L. 407 (2010) (cited in *Quadrant Structured Products Co., Ltd. v. Vertin*, 16 N.E.3d 1165, 1169 n.8 (N.Y. 2014); *Lyon Village Venetia, LLC v. CSE Mortgage LLC*, 2016 WL 476694, at *1 n.1 (Md. Ct. Spec. App. Feb. 4, 2016); Ivan Ascher, Portfolio Society: On the Capitalist Mode of Prediction, at 141, 153, 175 (Zone Books / The MIT Press 2016); Devon J. Steinmeyer, *Does State National Bank of Big Spring v. Geithner Stand a Fighting Chance?*, 89 Chi.-Kent. L. Rev. 471, 473 n.13 (2014)).

### **YITZCHAK KOPEL**

Yitzchak Kopel is a Partner with Bursor & Fisher, P.A. Yitz focuses his practice on consumer class actions and complex business litigation.  He has represented corporate and individual clients before federal and state courts, as well as in arbitration proceedings.

Yitz has substantial experience in successfully litigating and resolving consumer class actions involving claims of consumer fraud, data breaches, and violations of the telephone consumer protection act.  Since 2014, Yitz has obtained class certification on behalf of his clients five times, three of which were certified as nationwide class actions.  Bursor & Fisher was appointed as class counsel to represent the certified classes in each of the cases.

Yitz is admitted to the State Bars of New York and New Jersey, the bar of the United States Court of Appeals for the Second, Eleventh, and Ninth Circuits, and the bars of the United States District Courts for the Southern District of New York, Eastern District of New York, Eastern District of Missouri, Eastern District of Wisconsin, Northern District of Illinois, and District of New Jersey.

Yitz received his Juris Doctorate from Brooklyn Law School in 2012, graduating *cum laude* with two Dean's Awards. During law school, Yitz served as an Articles Editor for the Brooklyn Law Review and worked as a Law Clerk at Shearman & Sterling. In 2009, Yitz graduated *cum laude* from Queens College with a B.A. in Accounting.

### *Selected Published Decisions:*

*Bassaw v. United Industries Corp.,* --- F. Supp. 3d ---, 2020 WL 5117916 (S.D.N.Y. Aug. 31, 2020), denying motion to dismiss claims in putative class action concerning insect foggers.

*Poppiti v. United Industries Corp.*, 2020 WL 1433642 (E.D. Mo. Mar. 24, 2020), denying motion to dismiss claims in putative class action concerning citronella candles.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 6699188 (N.D. Ill. Dec. 9, 2019), granting summary judgment on behalf of certified class in robocall class action.

*Krumm v. Kittrich Corp.*, 2019 WL 6876059 (E.D. Mo. Dec. 17, 2019), denying motion to dismiss claims in putative class action concerning mosquito repellent.

*Crespo v. S.C. Johnson & Son, Inc.*, 394 F. Supp. 3d 260 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding Raid insect fogger.

*Bakov v. Consolidated World Travel, Inc.*, 2019 WL 1294659 (N.D. Ill. Mar. 21, 2019), certifying a class of persons who received robocalls in the state of Illinois.

*Bourbia v. S.C. Johnson & Son, Inc.*, 375 F. Supp. 3d 454 (S.D.N.Y. 2019), denying defendant's motion to dismiss fraud and consumer protection claims in putative class action regarding mosquito repellent.

*Hart v. BHH, LLC*, 323 F. Supp. 3d 560 (S.D.N.Y. 2018), denying defendants' motion for summary judgment in certified class action involving the sale of ultrasonic pest repellers.

*Hart v. BHH, LLC*, 2018 WL 3471813 (S.D.N.Y. July 19, 2018), denying defendants' motion to exclude plaintiffs' expert in certified class action involving the sale of ultrasonic pest repellers.

*Penrose v. Buffalo Trace Distillery, Inc.*, 2018 WL 2334983 (E.D. Mo. Feb. 5, 2018), denying bourbon producers' motion to dismiss fraud and consumer protection claims in putative class action.

*West v. California Service Bureau, Inc.*, 323 F.R.D. 295 (N.D. Cal. 2017), certifying a nationwide class of "wrong-number" robocall recipients.

*Hart v. BHH, LLC*, 2017 WL 2912519 (S.D.N.Y. July 7, 2017), certifying nationwide class of purchasers of ultrasonic pest repellers.

*Browning v. Unilever United States, Inc.*, 2017 WL 7660643 (C.D. Cal. Apr. 26, 2017), denying motion to dismiss fraud and warranty claims in putative class action concerning facial scrub product.

*Brenner v. Procter & Gamble Co.*, 2016 WL 8192946 (C.D. Cal. Oct. 20, 2016), denying motion to dismiss warranty and consumer protection claims in putative class action concerning baby wipes.

*Hewlett v. Consolidated World Travel, Inc.*, 2016 WL 4466536 (E.D. Cal. Aug. 23, 2016), denying telemarketer's motion to dismiss TCPA claims in putative class action.

*Bailey v. KIND, LLC*, 2016 WL 3456981 (C.D. Cal. June 16, 2016), denying motion to dismiss fraud and warranty claims in putative class action concerning snack bars.

*Hart v. BHH, LLC*, 2016 WL 2642228 (S.D.N.Y. May 5, 2016) denying motion to dismiss warranty and consumer protection claims in putative class action concerning ultrasonic pest repellers.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting clients' motion for judgment as a matter of law on claims for retaliation and defamation in employment action.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217 (E.D.N.Y. 2015), denying diet pill manufacturers' motion to dismiss its purchasers' allegations for breach of express warranty in putative class action.

*Ward v. TheLadders.com, Inc.*, 3 F. Supp. 3d 151 (S.D.N.Y. 2014), denying online job board's motion to dismiss its subscribers' allegations of consumer protection law violations in putative class action.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*Hart v. BHH, LLC*, Case No. 1:15-cv-04804 (S.D.N.Y. Sept. 22, 2020), resolving class action claims regarding ultrasonic pest repellers.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014), resolving class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

BURSOR&FISHER
P.A.

*West v. California Service Bureau*, Case No. 4:16-cv-03124-YGR (N.D. Cal. Jan. 23, 2019), resolving class action claims against debt-collector for wrong-number robocalls for $4.1 million.

## FREDERICK J. KLORCZYK III

Frederick J. Klorczyk III is a Partner with Bursor & Fisher, P.A.  Fred focuses his practice on complex business litigation and consumer class actions.

Fred has substantial experience in successfully litigating and resolving consumer class actions involving claims of mislabeling, false or misleading advertising, and privacy violations. In 2019, Fred certified both a California and a 10-state express warranty class on behalf of purchasers of a butter substitute.  In 2014, Fred served on the litigation team in *Ebin v. Kangadis Food Inc*.  At class certification, Judge Rakoff adopted Fred's choice of law fraud analysis and research directly into his published decision certifying a nationwide fraud class.

Fred is admitted to the State Bars of California, New York, and New Jersey, and is a member of the bars of the United States District Courts for the Northern, Central, Eastern, and Southern Districts of California, the Southern, Eastern, and Northern Districts of New York, the District of New Jersey, the Northern District of Illinois, the Eastern District of Missouri, the Eastern District of Wisconsin, and the Eastern District of Michigan, as well as the bars of the United States Court of Appeals for the Second and Ninth Circuits.

Fred received his Juris Doctor from Brooklyn Law School in 2013, graduating m*agna cum laude* with two CALI Awards for the highest grade in his classes on conflict of laws and criminal law.  During law school, Fred served as an Associate Managing Editor for the Brooklyn Journal of Corporate, Financial and Commercial Law and as an intern to the Honorable Alison J. Nathan of the United States District Court for the Southern District of New York and the Honorable Janet Bond Arterton of the United States District Court for the District of Connecticut.  In 2010, Fred graduated from the University of Connecticut with a B.S. in Finance.

### *Selected Published Decisions:*

*Revitch v. New Moosejaw, LLC*, 2019 WL 5485330 (N.D. Cal. Oct. 23, 2019), denying defendants' motions to dismiss consumer's allegations of state privacy law violations in putative class action.

*In re Welspun Litigation*, 2019 WL 2174089 (S.D.N.Y. May 20, 2019), denying retailers' and textile manufacturer's motion to dismiss consumers' allegations of false advertising relating to purported "100% Egyptian Cotton" linen products.

*Martinelli v. Johnson & Johnson*, 2019 WL 1429653 (E.D. Cal. Mar. 29, 2019), granting class certification of California false advertising claims and multi-state express warranty claims brought by purchasers of a butter substitute.

*Porter v. NBTY, Inc.*, 2016 WL 6948379 (N.D. Ill. Nov. 28, 2016), denying supplement manufacturer's motion to dismiss consumers' allegations of false advertising relating to whey protein content.

*Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d. 282 (S.D.N.Y. 2015), denying supplement manufacturer's motion to dismiss consumers' allegations of false advertising relating to a homeopathic cold product.

*In re Scotts EZ Seed Litigation*, 304 F.R.D. 397 (S.D.N.Y. 2015), granting class certification of false advertising and other claims brought by New York and California purchasers of grass seed product.

*Marchuk v. Faruqi & Faruqi, LLP, et al.*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015), granting individual and law firm defendants' motion for judgment as a matter of law on plaintiff's claims for retaliation and defamation, as well as for all claims against law firm partners, Nadeem and Lubna Faruqi.

*Ebin v. Kangadis Food Inc.*, Case No. 13-4775 (2d Cir. Apr. 15, 2015), denying olive oil manufacturer's Rule 23(f) appeal following grant of nationwide class certification.

*Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561 (S.D.N.Y. 2014), granting nationwide class certification of false advertising and other claims brought by purchasers of purported "100% Pure Olive Oil" product.

*Ebin v. Kangadis Food Inc.*, 2014 WL 737878 (S.D.N.Y. Feb. 25, 2014), denying distributor's motion for summary judgment against nationwide class of purchasers of purported "100% Pure Olive Oil" product.

### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*In Re: Blue Buffalo Marketing And Sales Practices Litigation*, Case No. 14-MD-2562-RWS (E.D. Mo. 2016) –final approval granted for $32 million class settlement to resolve claims of pet owners for alleged false advertising of pet foods.

*In re: Kangadis Food Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y. Dec. 17, 2014) – resolved class action claims for $2 million as part of a Chapter 11 plan of reorganization, after a corporate defendant filed for bankruptcy following the certification of nationwide claims alleging that its olive oil was sold with false and misleading representations.

### YEREMEY O. KRIVOSHEY

Yeremey O. Krivoshey is a Partner with Bursor & Fisher, P.A.  Mr. Krivoshey has particular expertise in COVID-19 related consumer litigation, unlawful fees and liquidated

damages in consumer contracts, TCPA cases, product recall cases, and fraud and false advertising litigation.  He has represented clients in a wide array of civil litigation, including appeals before the Ninth Circuit.

Mr. Krivoshey served as trial counsel with Mr. Bursor in *Perez. v. Rash Curtis & Associates*, where, in May 2019, the jury returned a verdict for $267 million in statutory damages under the Telephone Consumer Protection Act.  Since 2017, Mr. Krivoshey has secured over $200 million for class members in consumer class settlements.  Mr. Krivoshey has been honored multiple times as a Super Lawyers Rising Star.

Mr. Krivoshey is admitted to the State Bar of California.  He is also a member of the bars of the United States Court of Appeals for the Ninth Circuit and the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, as well as the District of Colorado.

Mr. Krivoshey graduated from New York University School of Law in 2013, where he was a Samuel A. Herzog Scholar.  Prior to Bursor & Fisher, P.A., Mr. Krivoshey worked as a Law Clerk at Vladeck, Waldman, Elias & Engelhard, P.C, focusing on employment discrimination and wage and hour disputes.  In law school, he has also interned at the American Civil Liberties Union and the United States Department of Justice.  In 2010, Mr. Krivoshey graduated *cum laude* from Vanderbilt University.

### *Representative Cases:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. May 13, 2019).  Mr. Krivoshey litigated claims against a national health-care debt collection agency on behalf of people that received autodialed calls on their cellular telephones without their prior express consent.  Mr. Krivoshey successfully obtained nationwide class certification, defeated the defendant's motion for summary judgment, won summary judgment as to the issue of prior express consent and the use of automatic telephone dialing systems, and navigated the case towards trial.  With his partner, Scott Bursor, Mr. Krivoshey obtained a jury verdict finding that the defendant violated the Telephone Consumer Protection Act ("TCPA") 534,712 times.  Under the TCPA, class members are entitled to $500 per each call made in violation of the TCPA – in this case, $267 million for 534,712 unlawful calls.

### *Selected Published Decisions:*

*Goodrich, et al. v. Alterra Mountain Co., et al.,* 2021 WL 2633326 (D. Col. June 25, 2021), denying ski pass company's motion to dismiss its customers' allegations concerning refunds owed due to cancellation of ski season due to COVID-19.

*Bayol v. Zipcar, Inc*., 2014 WL 4793935 (N.D. Cal. Sept. 25, 2014), denying enforcement of forum selection clause based on public policy grounds.

*Bayol v. Zipcar, Inc*., 78 F. Supp. 3d 1252 (N.D. Cal. Jan. 29, 2015), denying car-rental company's motion to dismiss its subscriber's allegations of unlawful late fees.

*Brown v. Comcast Corp.*, 2016 WL 9109112 (C.D. Cal. Aug. 12, 2016), denying internet service provider's motion to compel arbitration of claims alleged under the Telephone Consumer Protection Act.

*Chaisson, et al. v. University of Southern California* (Cal. Sup. Ct. Mar. 25, 2021), denying university's demurrer as to its students' allegations of unfair and unlawful late fees.

*Choi v. Kimberly-Clark Worldwide, Inc.*, 2019 WL 4894120 (C.D. Cal. Aug. 28, 2019), denying tampon manufacturer's motion to dismiss its customer's design defect claims.

*Horanzy v. Vemma Nutrition Co.*, Case No. 15-cv-298-PHX-JJT (D. Ariz. Apr. 16, 2016), denying multi-level marketer's and its chief scientific officer's motion to dismiss their customer's fraud claims.

*McMillion, et al. v. Rash Curtis & Associates*, 2017 WL 3895764 (N.D. Cal. Sept. 6, 2017), granting nationwide class certification of Telephone Consumer Protection Act claims by persons receiving autodialed and prerecorded calls without consent.

*McMillion, et al. v. Rash Curtis & Associates*, 2018 WL 692105 (N.D. Cal. Feb. 2, 2018), granting plaintiffs' motion for partial summary judgment on Telephone Consumer Protection Act violations in certified class action.

*Perez v. Indian Harbor Ins. Co.*, 2020 WL 2322996 (N.D. Cal. May 11, 2020), denying insurance company's motion to dismiss or stay assigned claims of bad faith and fair dealing arising out of $267 million trial judgment.

*Perez v. Rash Curtis & Associates*, 2020 WL 1904533 (N.D. Cal. Apr. 17, 2020), upholding constitutionality of $267 million class trial judgment award.

*Salazar v. Honest Tea, Inc.*, 2015 WL 7017050 (E.D. Cal. Nov. 12. 2015), denying manufacturer's motion for summary judgment as to customer's false advertising claims.

*Sholopa v. Turk Hava Yollari A.O., Inc. (d/b/a Turkish Airlines)*, 2022 WL 976825 (S.D.N.Y. Mar. 31, 2022), denying airline's motion to dismiss its customers claims for failure to refund flights cancelled due to COVID-19.

### *Selected Class Settlements:*

*Perez v. Rash Curtis & Associates*, Case No. 16-cv-03396-YGR (N.D. Cal. Oct. 1, 2021) granting final approval to a $75.6 million non-reversionary cash common fund settlement, the largest ever consumer class action settlement stemming from a violation of the Telephone Consumer Protection Act.

*Strassburger v. Six Flags Theme Parks Inc., et al.* (Ill. Cir. Ct. 2022) granting final approval to $83.6 million settlement to resolve claims of theme park members for alleged wrongful charging of fees during the COVID-19 pandemic.

*Juarez-Segura, et al. v. Western Dental Services, Inc.* (Cal. Sup. Ct. Aug. 9, 2021) granting final approval to $35 million settlement to resolve claims of dental customers for alleged unlawful late fees.

*Moore v. Kimberly-Clark Worldwide, Inc.* (Ill. Cir. Ct. July 22, 2020) granting final approval to $11.2 million settlement to resolve claims of tampon purchasers for alleged defective products.

*Retta v. Millennium Prods., Inc.*, 2017 WL 5479637 (C.D. Cal. Aug. 22, 2017) granting final approval to $8.25 million settlement to resolve claims of kombucha purchasers for alleged false advertising.

*Cortes v. National Credit Adjusters, L.L.C.* (E.D. Cal. Dec. 7, 2020) granting final approval to $6.8 million settlement to resolve claims of persons who received alleged autodialed calls without prior consent in violation of the TCPA.

*Bayol et al. v. Health-Ade LLC, et al.* (N.D. Cal. Oct. 11, 2019) – granting final approval to $3,997,500 settlement to resolve claims of kombucha purchasers for alleged false advertising.

## PHILIP L. FRAIETTA

Philip L. Fraietta is a Partner with Bursor & Fisher, P.A. Phil focuses his practice on data privacy, complex business litigation, consumer class actions, and employment law disputes. Phil has been named a "Rising Star" in the New York Metro Area by Super Lawyers® every year since 2019.

Phil has significant experience in litigating consumer class actions, particularly those involving privacy claims under statutes such as the Michigan Preservation of Personal Privacy Act, the Illinois Biometric Information Privacy Act, and Right of Publicity statutes. Since 2016, Phil has recovered over $100 million for class members in privacy class action settlements. In addition to privacy claims, Phil has significant experience in litigating and settling class action claims involving false or misleading advertising.

Phil is admitted to the State Bars of New York, New Jersey, Illinois, and Michigan, the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, the Western District of New York, the Northern District of New York, the District of New Jersey, the Eastern District of Michigan, the Western District of Michigan, the Northern District of Illinois, the Central District of Illinois, and the United States Court of Appeals for the Second, Third, and Ninth Circuits. Phil was a Summer Associate with Bursor & Fisher prior to joining the firm.

Phil received his Juris Doctor from Fordham University School of Law in 2014, graduating cum laude. During law school, Phil served as an Articles & Notes Editor for the Fordham Law Review, and published two articles. In 2011, Phil graduated cum laude from Fordham University with a B.A. in Economics.

### *Selected Published Decisions:*

*Fischer v. Instant Checkmate LLC*, 2022 WL 971479 (N.D. Ill. Mar. 31, 2022), certifying class of Illinois residents for alleged violations of Illinois' Right of Publicity Act by background reporting website.

*Kolebuck-Utz v. Whitepages Inc.,* 2021 WL 157219 (W.D. Wash. Apr. 22, 2021), denying defendant's motion to dismiss for alleged violations of Ohio's Right to Publicity Law.

*Bergeron v. Rochester Institute of Technology,* 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020), denying university's motion to dismiss for failure to refund tuition and fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Porter v. NBTY, Inc.,* 2019 WL 5694312 (N.D. Ill. Nov. 4, 2019), denying supplement manufacturer's motion for summary judgment on consumers' allegations of false advertising relating to whey protein content.

*Boelter v. Hearst Communications, Inc.*, 269 F. Supp. 3d 172 (S.D.N.Y. 2017), granting plaintiff's motion for partial summary judgment on state privacy law violations in putative class action.

### ***Selected Class Settlements:***

*Edwards v. Hearst Communications, Inc.*, Case No. 15-cv-09279-AT (S.D.N.Y. 2019) – final approval granted for $50 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Ruppel v. Consumers Union of United States, Inc.*, Case No. 16-cv-02444-KMK (S.D.N.Y. 2018) – final approval granted for $16.375 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. Advance Magazine Publishers, Inc. d/b/a Condé Nast*, Case No. 15-cv-05671-NRB (S.D.N.Y. 2019) – final approval granted for $13.75 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Benbow v. SmileDirectClub, LLC*, Case No. 2020-CH-07269 (Cir. Ct. Cook Cnty. 2021) – final approval granted for $11.5 million class settlement to resolve claims for alleged TCPA violations.

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for $9 million class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Taylor v. Trusted Media Brands, Inc.*, Case No. 16-cv-01812-KMK (S.D.N.Y. 2018) – final approval granted for $8.225 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Moeller v. American Media, Inc.*, Case No. 16-cv-11367-JEL (E.D. Mich. 2017) – final approval granted for $7.6 million class settlement to resolve claims of magazine subscribers for alleged statutory privacy violations.

*Rocchio v. Rutgers, The State University of New Jersey*, Case No. MID-L-003039-20 (Sup. Ct. Middlesex Cnty. 2022) – final approval granted for $5 million class settlement to resolve claims for failure to refund mandatory fees for the Spring 2020 semester in light of the COVID-19 pandemic.

*Heigl v. Waste Management of New York, LLC*, Case No. 19-cv-05487-WFK-ST (E.D.N.Y. 2021) – final approval granted for $2.7 million class settlement to resolve claims for charging allegedly unlawful fees pertaining to paper billing.

*Frederick v. Examsoft Worldwide, Inc.*, Case No. 2021L001116 (Cir. Ct. DuPage Cnty. 2022) – final approval granted for $2.25 million class settlement to resolve claims for alleged BIPA violations.

## <u>SARAH N. WESTCOT</u>

Sarah N. Westcot is the Managing Partner of Bursor & Fisher's Miami office. She focuses her practice on consumer class actions, complex business litigation, and mass torts.

She has represented clients in a wide array of civil litigation, and has substantial trial and appellate experience. Sarah served as trial counsel in *Ayyad v. Sprint Spectrum L.P.*, where Bursor & Fisher won a jury verdict defeating Sprint's $1.06 billion counterclaim and securing the class's recovery of more than $275 million in cash and debt relief.

Sarah also has significant experience in high-profile, multi-district litigations. She currently serves on the Plaintiffs' Steering Committee in *In re Zantac (Ranitidine) Products Liability Litigation,* MDL No. 2924 (S.D. Florida). She also serves on the Plaintiffs' Executive Committee in *In re Apple Inc. App Store Simulated Casino-Style Games Litigation,* MDL No. 2985 (N.D. Cal.) and *In Re: Google Play Store Simulated Casino-Style Games Litigation*, MDL No. 3001 (N.D. Cal.).

Sarah is admitted to the State Bars of California and Florida, and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the United States District Courts for the Southern and Middle Districts of Florida, and the bars of the United States Courts of Appeals for the Second, Eighth, and Ninth Circuits.

Sarah received her Juris Doctor from the University of Notre Dame Law School in 2009. During law school, she was a law clerk with the Cook County State's Attorney's Office in Chicago and the Santa Clara County District Attorney's Office in San Jose, CA, gaining early trial experience in both roles. She graduated with honors from the University of Florida in 2005.

Sarah is a member of The National Trial Lawyers Top 100 Civil Plaintiff Lawyers, and was selected to The National Trial Lawyers Top 40 Under 40 Civil Plaintiff Lawyers for 2022.

## ALEC M. LESLIE

Alec Leslie is a Partner with Bursor & Fisher, P.A.  He focuses his practice on consumer class actions, employment law disputes, and complex business litigation.

Alec is admitted to the State Bar of New York and is a member of the bar of the United States District Courts for the Southern and Eastern Districts of New York.  Alec was a Summer Associate with Bursor & Fisher prior to joining the firm.

Alec received his Juris Doctor from Brooklyn Law School in 2016, graduating *cum laude*.  During law school, Alec served as an Articles Editor for Brooklyn Law Review.  In addition, Alec served as an intern to the Honorable James C. Francis for the Southern District of New York and the Honorable Vincent Del Giudice, Supreme Court, Kings County.  Alec graduated from the University of Colorado with a B.A. in Philosophy in 2012.

### *Selected Class Settlements:*

*Gregorio v. Premier Nutrition Corp.*, Case No. 17-cv-05987-AT (S.D.N.Y. 2019) – final approval granted for class settlement to resolve claims of protein shake purchasers for alleged false advertising.

*Wright v. Southern New Hampshire Univ.*, Case No. 1:20-cv-00609-LM (D.N.H. 2021) – final approval granted for class settlement to resolve claims over COVID-19 tuition and fee refunds to students.

*Mendoza et al. v. United Industries Corp.*, Case No. 21PH-CV00670 (Phelps Cnty. Mo. 2021) – final approval granted for class settlement to resolve false advertising claims on insect repellent products.

*Kaupelis v. Harbor Freight Tools USA, Inc.*, Case No. 8:19-cv-01203-JVS-DFM (C.D. Cal. 2021) – final approval granted for class settlement involving allegedly defective and dangerous chainsaws.

*Rocchio v. Rutgers Univ.*, Case No. MID-L-003039-20 (Middlesex Cnty. N.J. 2021) – final approval granted for class settlement to resolve claims over COVID-19 fee refunds to students.

*Malone v. Western Digital Corporation*, Case No. 5:20-cv-03584-NC (N.D. Cal.) – final approval granted for class settlement to resolve false advertising claims on hard drive products.

*Frederick et al. v. ExamSoft Worldwide, Inc.*, Case No. 2021L001116 (DuPage Cnty. Ill. 2021) – final approval granted for class settlement to resolve claims over alleged BIPA violations with respect to exam proctoring software.

## STEPHEN BECK

Stephen is an Associate with Bursor & Fisher, P.A. Stephen focuses his practice on complex civil litigation and class actions.

Stephen is admitted to the State Bar of Florida and is a member of the bars of the United States District Courts for the Southern and Middle Districts of Florida.

Stephen received his Juris Doctor from the University of Miami School of Law in 2018. During law school, Stephen received an Honors distinction in the Litigation Skills Program and was awarded the Honorable Theodore Klein Memorial Scholarship for excellence in written and oral advocacy. Stephen also received the CALI Award in Legislation for earning the highest grade on the final examination. Stephen graduated from the University of North Florida with a B.A. in Philosophy in 2015.

## BRITTANY SCOTT

Brittany Scott is an Associate with Bursor & Fisher, P.A.  Brittany focuses her practice on data privacy, complex civil litigation, and consumer class actions.  Brittany was an intern with Bursor & Fisher prior to joining the firm.

Brittany has substantial experience litigating consumer class actions, including those involving data privacy claims under statutes such as the Illinois Biometric Information Privacy Act, the Fair Credit Reporting Act, and the Michigan Preservation of Personal Privacy Act.  In addition to data privacy claims, Brittany has significant experience in litigating class action claims involving false and misleading advertising.

Brittany is admitted the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Central, Southern, and Eastern Districts of California, the Eastern District of Wisconsin, and the Northern District of Illinois.

Brittany received her Juris Doctor from the University of California, Hastings College of the Law in 2019, graduating cum laude. During law school, Brittany was a member of the Constitutional Law Quarterly, for which she was the Executive Notes Editor.  Brittany published a note in the Constitutional Law Quarterly entitled "Waiving Goodbye to First Amendment Protections: First Amendment Waiver by Contract." Brittany also served as a judicial extern to the Honorable Andrew Y.S. Cheng for the San Francisco Superior Court.  In 2016, Brittany graduated from the University of California Berkeley with a B.A. in Political Science.

### *Selected Class Settlements:*

*Morrissey v. Tula Life, Inc.,* Case No. 2021L0000646 (18th Judicial Circuit Court DuPage County 2021) – final approval granted for $4 million class settlement to resolve claims of cosmetics purchasers for alleged false advertising.

## MAX S. ROBERTS

Max Roberts is an Associate with Bursor & Fisher, P.A.  Max focuses his practice on complex civil litigation, data privacy, and class actions.  Max was a Summer Associate with Bursor & Fisher prior to joining the firm.

Max is admitted to the State Bar of New York and is a member of the bars of the United States District Courts for the Northern, Southern, and Eastern Districts of New York, the Northern and Central Districts of Illinois, the Eastern District of Michigan, the District of Colorado, and the United States Court of Appeals for the Seventh and Ninth Circuits.

Max received his Juris Doctor from Fordham University School of Law in 2019, graduating *cum laude.*  During law school, Max was a member of Fordham's Moot Court Board, the Brennan Moore Trial Advocates, and the Fordham Urban Law Journal, for which he published a note entitled *Weaning Drug Manufacturers Off Their Painkiller: Creating an Exception to the Learned Intermediary Doctrine in Light of the Opioid Crisis*.  In addition, Max served as an intern to the Honorable Vincent L. Briccetti of the Southern District of New York and the Fordham Criminal Defense Clinic.  Max graduated from Johns Hopkins University in 2015 with a B.A. in Political Science.

Outside of the law, Max is an avid triathlete.

### *Selected Published Decisions:*

*Javier v. Assurance IQ, LLC*, 2022 WL 1744107 (9th Cir. May 31, 2022), reversing district court and holding that Section 631 of the California Invasion of Privacy Act requires prior consent to wiretapping.  Max personally argued the appeal before the Ninth Circuit, which can be viewed here.

*Mora v. J&M Plating, Inc.*, --- N.E.3d ---, 2022 WL 17335861 (Ill. App. Ct. 2d Dist. Nov. 30, 2022), reversing circuit court and holding that Section 15(a) of Illinois' Biometric Information Privacy Act requires an entity to establish a retention and deletion schedule for biometric data at the first moment of possession.  Max personally argued the appeal before the Second District, which can be listened to here.

*Cristostomo v. New Balance Athletics, Inc.*, 2022 WL 17904394 (D. Mass. Dec. 23, 2022), denying motion to dismiss and motion to strike class allegations in case involving sneakers marketed as "Made in the USA."

*Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013 (N.D. Cal. Nov. 9, 2022), denying in part motion to dismiss in case involving non-invasive prenatal testing product.

*Louth v. NFL Enterprises LLC*, 2022 WL 4130866 (D.R.I. Sept. 12, 2022), denying motion to dismiss alleged violations of the Video Privacy Protection Act.

*Sholopa v. Turk Hava Yollari A.O., Inc. d/b/a Turkish Airlines*, 2022 WL 976825 (S.D.N.Y. Mar. 31, 2022), denying motion to dismiss passenger's allegations that airline committed a breach of contract by failing to refund passengers for cancelled flights during the COVID-19 pandemic.

*Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503 (C.D. Cal. 2021), denying in part motion to dismiss alleged violations of California Invasion of Privacy Act.

*Soo v. Lorex Corp.*, 2020 WL 5408117 (N.D. Cal. Sept. 9, 2020), denying defendants' motion to compel arbitration and denying in part motion dismiss consumer protection claims in putative class action concerning security cameras.

### *Selected Class Settlements:*

*Miranda v. Golden Entertainment (NV), Inc.*, Case No. 2:20-cv-534-AT (D. Nev. 2021) – final approval granted for class settlement valued at over $4.5 million to resolve claims of customers and employees of casino company stemming from data breach.

*Malone v. Western Digital Corp.*, Case No. 5:20-cv-3584-NC (N.D. Cal. 2021) – final approval granted for class settlement valued at $5.7 million to resolve claims of hard drive purchasers for alleged false advertised.

*Frederick v. ExamSoft Worldwide, Inc.*, Case No. 2021-L-001116 (18th Judicial Circuit Court DuPage County, Illinois 2021) – final approval granted for $2.25 million class settlement to resolve claims of Illinois students for alleged violations of the Illinois Biometric Information Privacy Act.

## CHRISTOPHER R. REILLY

Chris Reilly is an Associate with Bursor & Fisher, P.A. Chris focuses his practice on consumer class actions and complex business litigation.

Chris is admitted to the State Bar of Florida and is a member of the bar of the United States District Courts for the Southern and Middle Districts of Florida.

Chris received his Juris Doctor from Georgetown University Law Center in 2020. During law school, Chris clerked for the Senate Judiciary Committee, where he worked on antitrust and food and drug law matters under Senator Richard Blumenthal.  He has also clerked for the Mecklenburg County District Attorney's Office, the ACLU Prison Project, and the Pennsylvania General Counsel's Office.  Chris served as Senior Editor of Georgetown's Journal of Law and Public Policy.  In 2017, Chris graduated from the University of Florida with a B.A. in Political Science.

### JULIA K. VENDITTI

Julia Venditti is an Associate with Bursor & Fisher, P.A.  Julia focuses her practice on complex civil litigation and class actions.  Julia was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julia is admitted to the State Bar of California and is a member of the bars of the United States District Courts for the Northern, Eastern, Central, and Southern Districts of California.

Julia received her Juris Doctor in 2020 from the University of California, Hastings College of the Law, where she graduated *cum laude* with two CALI Awards for the highest grade in her Evidence and California Community Property classes.  During law school, Julia was a member of the UC Hastings Moot Court team and competed at the Evans Constitutional Law Moot Court Competition, where she finished as a national quarterfinalist and received a best brief award.  Julia was also inducted into the UC Hastings Honors Society and was awarded Best Brief and an Honorable Mention for Best Oral Argument in her First-Year Moot Court section. In addition, Julia served as a Research Assistant for her Constitutional Law professor, as a Teaching Assistant for Legal Writing & Research, and as a Law Clerk at the San Francisco Public Defender's Office.  In 2017, Julia graduated *magna cum laude* from Baruch College/CUNY, Weissman School of Arts and Sciences, with a B.A. in Political Science.

### JULIAN DIAMOND

Julian Diamond is an Associate with Bursor & Fisher, P.A.  Julian focuses his practice on privacy law and class actions.  Julian was a Summer Associate with Bursor & Fisher prior to joining the firm.

Julian received his Juris Doctor from Columbia Law School, where he was a Harlan Fiske Stone Scholar.  During law school, Julian was Articles Editor for the Columbia Journal of Environmental Law.  Prior to law school, Julian worked in education.  Julian graduated from California State University, Fullerton with a B.A. in History and a single subject social science teaching credential.

### MATTHEW GIRARDI

Matt Girardi is an Associate with Bursor & Fisher, P.A.  Matt focuses his practice on complex civil litigation and class actions, and has focused specifically on consumer class actions involving product defects, financial misconduct, false advertising, and privacy violations.  Matt was a Summer Associate with Bursor & Fisher prior to joining the firm.

Matt is admitted to the State Bar of New York, and is a member of the bars of the United States District Courts for the Southern District of New York, the Eastern District of New York, and the Eastern District of Michigan

Matt received his Juris Doctor from Columbia Law School in 2020, where he was a Harlan Fiske Stone Scholar.  During law school, Matt was the Commentary Editor for the Columbia Journal of Tax Law, and represented fledgling businesses for Columbia's

BURSOR&FISHER
P.A.

Entrepreneurship and Community Development Clinic.  In addition, Matt worked as an Honors Intern in the Division of Enforcement at the U.S. Securities and Exchange Commission.  Prior to law school, Matt graduated from Brown University in 2016 with a B.A. in Economics, and worked as a Paralegal Specialist at the U.S. Department of Justice in the Antitrust Division.

**EXHIBIT D**

```
1                       UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF MICHIGAN
2                            SOUTHERN DIVISION

3
     JOHN LOFTUS, individually and
4    on behalf of all others
     similarly situated,
5
                Plaintiff,
6
     -v-                                      Case No. 21-cv-11809
7
     OUTSIDE INTEGRATED MEDIA, LLC,
8
                Defendant.
9    _____/

10

11                      MOTION FOR FINAL APPROVAL
                      OF CLASS ACTION SETTLEMENT and
12                    FOR ENTRY OF FINAL JUDGMENT

13                   BEFORE JUDGE MARK A. GOLDSMITH

14          All Parties Appearing Via Zoom Teleconference

15                     Tuesday, August 9th, 2022.

16

17
     APPEARANCES:
18
     FOR THE PLAINTIFF:       PHILIP L. FRAIETTA
19                            Bursor & Fisher, P.A.
                              888 Seventh Avenue
20                            New York, NY  10019

21
     FOR THE PLAINTIFF:       FRANK S. HEDIN
22                            Hedin Hall, LLP
                              1395 Brickell Avenue
23                            Suite 1140
                              Miami, FL  33131
24

25
```

```
 1    (Appearances, continued):

 2
      FOR THE PLAINTIFF:        GREGORY A. MITCHELL
 3                              The Miller Law Firm, P.C.
                                950 West University Drive
 4                              Suite 300
                                Rochester, MI  48307
 5

 6    FOR THE DEFENDANT:        KRISTEN C. RODRIGUEZ
                                Dentons, US LLP
 7                              233 South Wacker Drive
                                Suite 5900
 8                              Chicago, IL  60606

 9
      FOR THE DEFENDANT:        PETER B. KUPELIAN
10                              Clark Hill PLC
                                151 South Old Woodward Avenue
11                              Suite 200
                                Birmingham, MI  48009
12

13

14    David B. Yarbrough, CSR, RMR, FCRR
      Official Court Reporter
15    (313) 234-2619

16

17

18

19

20

21

22

23

24

25
```

TABLE OF CONTENTS

PAGE

WITNESSES:

NONE

EXHIBITS

NONE

1          Detroit, Michigan.

2          Tuesday, August 9th, 2022

3          At or about 10:07 a.m.

4                    --    ---    --

5          THE CLERK OF THE COURT:  Calling case number

6     21-11809, Loftus versus Outside Integrated Media, LLC.

7     Counsel, please place your appearances on the record.

8          MR. FRAIETTA:  Good morning, your Honor.  Phil

9     Fraietta of Bursor and Fisher for plaintiff in the class.

10          MR. HEDIN:  Good morning.  Frank Hedin also for the

11    plaintiff in the class.

12          MR. MITCHELL:  Gregory Mitchell from the Miller Law

13    Firm, plaintiff in the class.

14          MS. RODRIGUEZ:  Good morning, your Honor.  Kristen

15    Rodriguez for defendant.

16          MR. KUPELIAN:  Good morning, your Honor.  Peter

17    Kupelian, Clark Hill for the defendant as well.

18          THE COURT:  All right.  Good morning, everybody.  We

19    are conducting this Zoom hearing today on a motion to approve

20    the settlement, final approval and also there's a motion for

21    attorney's fees and costs, so I'll let plaintiffs lead off.

22          MR. FRAIETTA:  Yes.  Thank you, your Honor.  I'll be

23    brief.  As you said, we're here to finally approve this

24    class-action settlement.  The settlement provides for a

25    non-reversionary common fund just under a million dollars, it

1    as $998,406.92 to be exact.

2          THE COURT:  Just a moment, pardon me.  I see our

3    court reporter is having little difficulty hearing.  Let's go

4    off the record for a second.

5          (Off the record)

6          THE COURT:  Okay.  Let's try this again.  Let's go

7    back on the record.  Go ahead.

8          MR. FRAIETTA:  Yes, thank you.  Your Honor, so as I

9    was saying we're here on final approval of a class-action

10   settlement.  The settlement provides for non-reversionary

11   common fund of just under a million dollars.  It's 998,00 and

12   change to be exact.  The court-approved notice plan was

13   administered and 99.75 percent, nearly 100 percent of the class

14   received direct notice of the settlement and the reaction was

15   overwhelmingly positive.  Zero class members objected; zero

16   asked to be excluded.

17         We are projecting that each class member will

18   automatically receive 50 dollars.  This settlement did not

19   require class members to file claims so unlike most class

20   action settlements where northwards of 90 percent of class

21   members receive nothing, that's not the case here.  Everybody's

22   going to automatically receive 50 dollars as long as they did

23   not opt out and because nobody opted out, everyone's going to

24   receive about 50 bucks.  So we believe the settlement is well

25   within the reasonable.  Papers point two a number of prior

1    settlements that have been reached under this statute.  We

2    believe that this settlement outperforms those both in total

3    compensation and structure on a per-class-member basis.

4           In connection with the settlement, we also requested

5    attorney's fees of 35 percent of the settlement fund.  That

6    percentage is also consistent with precedent in this district.

7    We cited a number of cases including Kinder v. Meredith,

8    Kokosvki v. Playboy and Perlin v. Time where requests are of 35

9    percent or in the case of Time, 40 percent were approved by

10   courts in this district so we believe that our fee request is

11   justified here especially in light of the substantial result

12   that we were able to negotiate for class members in an

13   efficient manner as well.

14          As the Court noted at the preliminary approval

15   hearing, this is not a matter where plaintiff's counsel and

16   defense counsel spent needless effort on litigation.  We

17   recognized this case could settle, we proceeded to mediation

18   promptly and were able to work it out on terms that I believe

19   are very favorable for the class, so we submit that this

20   settlement and attorney's fee request should be approved.

21          We submitted a proposed order which if the Court

22   signs the proposed order will approve the settlement and fee

23   request and everything in connection with that, so we, we

24   respect the Court sign that order and we can begin

25   administering the payments to the class members.

1           THE COURT:  All right.  Do we need to hear from any

2     other plaintiffs' attorneys?

3           MR. HEDIN:  No, your Honor.

4           THE COURT:  All right.  Let's turn it over to the

5     defense.  Anything for the defense side?

6           MS. RODRIGUEZ:  Your Honor, Kristen Rodriguez for the

7     record.  We have nothing further to add to Mr. Fraietta's

8     comments.  We support final approval of the settlement.

9           THE COURT:  All right.  Well, I have reviewed the

10    papers that have been submitted and I do approve the

11    settlement.  I think both sides have done very good work in

12    trying to bring this matter to a very prompt conclusion without

13    unnecessary attorney time and I think the class has benefited

14    in a concrete way and the extent of the class participation is

15    impressive and the attorneys representing the class are to be

16    congratulated on their very effective work on behalf of the

17    class.  I do think the settlement is a fair and reasonable one.

18           I also think the attorney fee request is reasonable

19    as well.  The attorneys did work very hard pre-suit and after

20    suit.  I know there were mediation efforts that obviously bore

21    fruit here and I think the request for 35 present is in line

22    with what other courts have approved and especially in this

23    context where the lawyers did produce significant results for

24    the class in very short order.  I think they should be rewarded

25    appropriately for having done a very effective job as class

1    counsel, so I'm going to approve the request for fees and costs

2    and the costs were reasonable as well.  Is there anything else

3    that we need to address on the record at this time?

4            MR. FRAIETTA:  No, nothing further from plaintiffs,

5    your Honor.  Thank you.

6            MR. HEDIN:  Your Honor, this is frank Hedin, if I may

7    be heard?  The named class representative additionally

8    requested a service award.  That's also before the Court for

9    approval as well I believe.

10           THE COURT:  Yes, I'm approving that as well.  I did

11   not mention that expressly, but I did see that request and I

12   think it's appropriate.  The class representative was effective

13   and did work along side the lawyers to bring about this result

14   for the class and the request for 5,000 dollars is an

15   appropriate request under all the circumstances, so I'll

16   approve that as well.  All right.  I think then anything for

17   the defense that we need to address?

18           MS. RODRIGUEZ:  Nothing for the defense, your Honor.

19   Thank you for allowing us to conduct this hearing via Zoom.

20           THE COURT:  All right.  My pleasure and again I want

21   to thank the lawyers for doing a very professional job on all

22   sides here.  I think you folks are the role models for your

23   colleagues out there.  I think when lawyers work together, they

24   can bring about resolution in an effective and prompt way and I

25   think that's a great benefit to their clients' benefit and I

1   think that also serves administration of justice.  So

2   congratulations for bringing that about.

3          I do want to thank Mr. Yarbrough for his fine work as

4   always as our court reporter and to Ms. Roat whose seat I'm now

5   occupying actually.  My little name plate up there

6   misidentifies me, but I'm filling a very big seat here.  She's

7   been a terrific law clerk for me and I want to thank her

8   publicly for her assistance in this matter.  Thank you all.

9   Have a great day.  That concludes our hearing.  Thank you.

10          MR. FRAIETTA:  Thank you, your Honor.

11          MS. RODRIGUEZ:  Thank you, your Honor.

12          (Hearing concluded at 10:17 a.m.)

13                        --    ---    --

14

15

16

17

18

19

20

21

22

23

24

25

1                     C E R T I F I C A T E

2

3

4

5

6

7           I, David B. Yarbrough, Official Court

8    Reporter, do hereby certify that the foregoing pages

9    comprise a true and accurate transcript of the

10   proceedings taken by me in this matter on Tuesday,

11   August 9th, 2022.

12

13

14

15

16   9/8/2022                    /s/ David B. Yarbrough

17   Date                        David B. Yarbrough,
                                 (CSR, RPR, FCRR, RMR)
18                               231 W. Lafayette Blvd.
                                 Detroit, MI  48226
19

20

21

22

23

24

25