# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| RALPH STRANO, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>      v.<br><br>KIPLINGER WASHINGTON EDITORS, INC.,<br><br>               Defendant. | Case No. 21-cv-12987-TLL-PTM<br><br>Hon. Thomas L. Ludington<br><br>Mag. Judge Patricia T. Morris |

### DECLARATION OF FRANK S. HEDIN
### IN SUPPORT OF PLAINTIFF'S MOTION FOR
### <u>ATTORNEYS' FEES, COSTS, EXPENSES, AND SERVICE AWARD</u>

I, Frank S. Hedin declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 and based on my own personal knowledge, that the following statements are true:

1.     I am a partner at Hedin Hall LLP and Plaintiff's other counsel in this action. I submit this declaration in support of Plaintiff's Motion for Attorneys' Fees, Costs, Expenses, And Service Award, filed concurrently herewith.

### BACKGROUND AND EXPERIENCE

2.     I am a member in a good standing of the Florida Bar and the State Bar of California; the United States District Courts for the Southern District of Florida,

Middle District of Florida, Northern District of California, Southern District of California, Central District of California, Eastern District of California, Western District of Michigan, Eastern District of Michigan, and Western District of Wisconsin; and the United States Courts of Appeals for the Second Circuit, Seventh Circuit, and Ninth Circuit, and am admitted to practice on a *pro hac vice* basis before several other federal district courts.

3.      I received my Bachelor of Arts from University of Michigan in 2008 and my Juris Doctor, *magna cum laude*, from Syracuse University College of Law in 2012.

4.      From August 2012 through November 2013, I served as law clerk to the Honorable William Q. Hayes, United States District Judge for the Southern District of California. During my clerkship with Judge Hayes, I managed half of the Court's civil docket and drafted orders and opinions at all stages of litigation in a wide range of matters, including numerous class actions.

5.      In early 2014, I began working as an associate attorney at Carey Rodriguez Milian Gonya LLP, a boutique litigation firm in Miami, Florida, where I focused my practice on the prosecution of consumer class actions.  *See, e.g., Farnham v. Caribou Coffee Co*., No. 16-cv-295-wmc (W.D. Wisc.); *Chimeno-Buzzi v. Hollister Co*., et al., No. 14-23120-CIV, 2015 WL 9269266 (S.D. Fla. Dec. 18, 2015); *Edwards v. Hearst Communications Inc..*, No. 15-cv-9279-AT

(S.D.N.Y. Nov. 9, 2016); *Norberg v. Shutterfly, Inc.*, No. 15-cv-5351 (N.D. Ill. Dec. 29, 2015); *Rivera, et al. v. Google, Inc.*, No. 16-cv-2714 (N.D. Ill. Feb. 27, 2017). I also represented both plaintiffs and defendants in intellectual property, employment, and general commercial litigation matters, on both hourly and contingent-fee arrangements. I was partner and head of the firm's class action litigation practice at the time of my departure at the end of February 2018.

6. My partner David W. Hall and I formed Hedin Hall LLP in March 2018. With offices in Miami, Florida and San Francisco, California, Hedin Hall focuses on consumer privacy and securities class actions.

7. My firm has successfully prosecuted dozens of consumer data-privacy class action lawsuits in state and federal courts nationwide as court-appointed class counsel, including in matters alleging claims for violation of Michigan's Preservation of Personal Privacy Act ("PPPA"). *E.g., Kokoszki v. Playboy Enterprises, Inc.*, No. 19-cv-10302-BAF (E.D. Mich. May 18, 2020) (class counsel in action alleging sale of *Playboy* subscribers' personal information in violation of the Michigan PPPA, obtained $3.8 million non-reversionary class settlement); *Rivera et al. v. Google,* LLC, No. 2019-CH-00990 (Cir. Ct. Cook Cnty. Ill., Apr. 5, 2022) (class counsel in action alleging violations of Illinois's Biometric Information Privacy Act ("BIPA"), obtained $100 million non-reversionary class settlement); *Olsen, et al. v. ContextLogic Inc.*, No. 19CH06737 (Cir. Ct. Cook

Cnty. Ill., Jan 7, 2020) (class counsel in action alleging violations of the federal Telephone Consumer Protection Act ("TCPA"), successfully defeated defendant's motion to compel arbitration and obtained $16 million non-reversionary class settlement); *Donahue v. Everi Payments, Inc., et al.*, No. 2018-CH-15419 (Cook Cnty., Ill. Cir. Ct.) (class counsel in action alleging disclosure of consumers' credit and debit card information on printed transaction receipts in violation of the federal Fair and Accurate Credit Transactions Act, obtained $14 million non-reversionary class settlement); *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-cv-20614-MGC (S.D. Fla.) (class counsel in action alleging the improper assessment of overdraft fees when accounts were not actually overdrawn, obtained $4.95 million class settlement); *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.) (class counsel in action alleging the improper assessment of overdraft fees for "non-recurring" debit card transactions misclassified as "recurring" debit card transactions, obtained $2.7 million class settlement).

8.     My firm also represents investors in securities class actions in state and federal courts across the country.  *E.g., In re Menlo Therapeutics Inc. Sec. Litig.*, Case No. 18CIV06049 (Cal. Sup Ct., San Mateo Cnty.) ($9.5 million class settlement on behalf of IPO investors); *In re EverQuote, Inc. Sec. Litig.*, (N.Y. Supreme, New York Cnty.), Case No. 651177/2019 ($4.74 million class settlement on behalf of IPO investors); *Plymouth County Retirement System v. Impinj, Inc., et*

*al.*, Index No. 650629/2019 (N.Y. Sup. Ct., N.Y. Cnty.) (co-lead counsel for plaintiff class of investors asserting Securities Act claims arising from initial and secondary public offerings, obtained aggregate $20 million class settlement); *In re PPDAI Grp. Sec. Litig.*, (N.Y. Sup. Ct., N.Y. Cnty.) ($9 million settlement for investor class); *In re Altice USA, Inc. Sec. Litig.*, 711788/2018 (N.Y. Sup. Ct., Queens Cnty.) ($4.75 million settlement for investor class); *Plutte v. Sea Ltd.*, No. 655436/2018 (N.Y. Sup. Ct., N.Y. Cnty.) ($10.75 million settlement for investor class).

9. And we frequently represent indigent litigants in civil rights and housing matters on a *pro bono* basis. *E.g., Groover v. U.S. Corrections, LLC, et al.*, No. 15-cv-61902-BB (S.D. Fla. July 16, 2018) (representing plaintiff and putative class against country's largest private prisoner extradition companies in Section 1983 civil rights action alleging violations of the Eighth Amendment).

10. Over the past five years alone, my firm has helped recover over $350 million in all-cash relief for the classes of consumers and investors that we have represented.

11. Attached hereto as **Exhibit A** is a current firm resume for Hedin Hall LLP.

## RELEVANT PPPA LITIGATION EXPERIENCE

12.     My firm and I have successfully litigated claims against numerous defendants for alleged violations of Michigan's PPPA, beginning in 2016 with the action titled *Edwards v. Hearst Communications, Inc.* in the Southern District of New York, where I served as one of plaintiff's counsel along with my co-counsel in this action at Bursor & Fisher, P.A.

13.     On May 29, 2018, shortly after Mr. Hall and I founded Hedin Hall, and nearly two years after the July 31, 2016 effective date of the Michigan legislature's amendment to the PPPA (an amendment which*, inter alia*, made "actual damages" a prerequisite to stating a claim and removed a prevailing plaintiff's entitlement to statutory damages), my firm initiated *Horton v. GameStop Corp.*, 380 F. Supp. 3d 679 (W.D. Mich. 2018), a PPPA class action alleging that the defendant had disclosed the plaintiff's and other Michigan residents' personal reading information between May 29, 2015 and July 31, 2016 (the effective date of the amendment to the PPPA) – in violation of the unamended version of the PPPA that existed up until July 30, 2016. The defendant moved to dismiss on the grounds that, *inter alia*, the complaint failed to state a claim for violation of the unamended PPPA because the case had been filed after the amendment's July 31, 2016 effective date.  In successfully defeating this motion, my firm obtained the first decision in the country holding that, regardless of the date on which a PPPA action

is commenced, "the unamended [PPPA] applies to . . . claims that accrued prior to July 31, 2016, and, consequently, [a] plaintiff [asserting such a claim] [is] not required to plead actual damages." *Horton*, 380 F. Supp. 3d at 683. The *Horton* decision paved the way for Plaintiff's Counsel's successful prosecution of the instant action against TWP on behalf of the Settlement Class, because here, as in *Horton*, the Complaint alleges violations of the unamended, pre-July 31, 2016 version of the statute, arising from Defendant's disclosures of personal reading information that pre-dated the statutory amendment's July 31, 2016 effective date. Indeed, invoking the pre-July 31, 2016 version of the statute in this case enabled Plaintiff to seek statutory damages for the putative class, without showing "actual damages," and thus was instrumental in securing the Settlement presently before the Court.

14. After obtaining the *Horton* decision on September 28, 2018, my firm and co-counsel initiated numerous additional PPPA actions against publishers of written materials between May and June of 2019 (sometimes referred to as "wave two" of PPPA litigation), further refining our skills for prosecuting such claims and, in the process, prevailing on other important legal issues implicated by the statute. *E.g., Huguelet, et al. v. Maxim Inc.*, No. 19-cv-4452-ALC (S.D.N.Y., filed May 15, 2019); *Kokoszki v. Playboy Enterprises, Inc.*, No. 19-cv-10302-BAF-RSW (E.D. Mich., filed Jan. 30, 2019); *Chelone, et al. v. America's Test Kitchen*

*LP*, No. 2:19-cv-11757-TGB-MKM (E.D. Mich., filed June 19, 2019); *Lin v. Crain*

*Commc'ns Inc.*, No. 19-cv-11889 (E.D. Mich., filed June 25, 2019); *Forton v.*

*TEN: Publishing Media, LLC*, No. 1:19-cv-11814-JEL-PTM (E.D. Mich., filed

June 19, 2019).

     15.    For example, in *Lin v. Crain Communications, Inc.*, my firm brought

the first ever PPPA class action against a Michigan-based defendant on behalf of a

non-Michigan-resident plaintiff and a proposed nationwide class. Specifically, the

complaint alleged that a Michigan-based company had disclosed, from its

headquarters in Michigan, the personal reading information of the plaintiff (a

resident of Virginia) and all of its other subscribers nationwide to third parties prior

to July 31, 2016, in violation of the unamended version of the PPPA. The

defendant moved to dismiss on the grounds that the PPPA only protects and is only

enforceable by Michigan residents, to the exclusion of out-of-state residents –

presenting an issue of first impression concerning the territorial reach of the PPPA.

We defeated defendant's motion, and in so doing obtained the first decision in the

country holding that the PPPA "allow[s] non-Michigan residents to pursue claims

against Michigan resident-defendants." *Lin*, 2020 WL 248445, at *4. Although the

extraterritoriality issue in *Lin* does not directly bear on the claims alleged in this

case, my firm's successful prosecution of the *Lin* action (together with our co-

counsel) further cemented our ability to prevail on complex and novel issues under

the PPPA and strengthened both our knowledge of the statute and our reputation litigating claims under it.

16.     In this "second wave" of PPPA litigation, which spanned from September 2018 (when *Gamestop* was decided) through the end of July 2019, the consensus across the federal judiciary and the plaintiffs and defense bars alike was that the statute was governed by a three-year limitation period, and it was thus universally understood at that time that claims for violation of the pre-amended version of the statute would no longer be actionable as of July 31, 2019 (three years after the amendment's effective date). *See Edwards*, 2016 WL 6651563, at *1 (noting that "a three- year statute of limitations admittedly governs [the plaintiff's PPPA] claims").

17.     Nonetheless, on June 15, 2021, nearly five years after the effective date of the PPPA's amendment, and after performing an extensive pre-suit investigation and an in-depth legal analysis of relevant issues, including the Sixth Circuit's decision in *Palmer Park Square, LLC v. Scottsdale Insurance Company*, 878 F.3d 530 (6th Cir. 2017), my firm, together with our co-counsel in this case, initiated the action *Pratt et al v. KSE Sportsman Media, Inc*., No. 21-cv-11404-TLL-PTM (E.D. Mich.), which alleged violations of the pre-amended version of the statute that accrued between June 15, 2015 (*six* years prior to the filing of the action) and July 30, 2016 – based on an argument developed by my firm that the

9

PPPA was actually subject to the six-year limitation period found in M.C.L. §5813, rather than the three-year period found in M.C.L. § 5805(2) (which up until that point had been universally applied in every prior PPPA case).

18.     After extensive additional pre-suit investigative work, the *Pratt* action was followed by dozens of additional PPPA actions filed by my firm and co-counsel – including the instant matter (discussed further below) – each of which depended on the application of the six-year limitation period. *See, e.g., Owen v. Kalmbach Media Co.*, No. 21-cv-11814-VAR-KGA (E.D. Mich.); *Devroy v. Annie's Publishing, LLC*, No. 21-cv-11815-TGB-EAS (E.D. Mich.); *Krassick v. Archaeological Institute of America*, No. 21-cv-00180-HYJ-RSK (W.D. Mich.); *Loftus v. Outside Integrated Media*, *LLC*, No. 2:21-cv-11809-MAG-DRG (E.D. Mich. Aug. 9, 2022).

19.     On November 24, 2021, the defendant in *Pratt* moved to dismiss the complaint on the ground that, *inter alia*, plaintiff's claim was time-barred by section 5805(2)'s three-year limitation period. On February 15, 2022, following full briefing on the limitation-period question, the court presiding over *Pratt* issued an opinion denying defendant's motion to dismiss in full, rejecting defendant's argument that the three-year period governs PPPA claims and holding that the six-year limitation period found in section 5813 governs such claims. *Pratt v. KSE Sportsman Media, Inc.*, No. 1:21-CV-11404, 2022 WL 469075, at *5 (E.D. Mich.

Feb. 15, 2022) (holding that "[a] six-year statute of limitations applies to PPPA claims").

20. After the decision in *Pratt*, my firm and our co-counsel briefed and prevailed on the same statute of limitations issue in two of our other PPPA cases filed in this so-called "third wave," all before different judges, in both the Eastern and Western Districts. *See e.g., Krassick v. Archaeological Inst. of Am.*, No. 2:21-CV-180, 2022 WL 2071730, at *5 (W.D. Mich. June 9, 2022); *Hall v. Farm Journal, Inc*., No. 21-cv-11811-DML-APP (E.D. Mich.) (docket entries 24 & 26 (April 5, 2022 decision denying motion to dismiss) & docket entry 28 (June 21, 2022 order denying defendant's motion for reconsideration and reaffirming prior decision on motion to dismiss).

## THE INSTANT LITIGATION

21. As discussed above, prior to initiating the instant action (or any of the other "third wave" PPPA cases), my firm and Class Counsel (together, "Plaintiff's Counsel") performed a lengthy, several-months-long factual investigation into subscriber list disclosure practices in effect during the relevant pre-July 31, 2016 time period of Kiplinger Washington Editors, Inc. ("Kiplinger") and other defendants. This investigative work began in December 2020 when my firm reviewed and analyzed relevant legal authorities addressing Michigan's statutory scheme concerning limitation periods. Due to the confidential nature of

Defendant's alleged disclosures, our pre-suit investigation into the facts underlying this case (as well as industry-wide list disclosure practices generally) was extensive and involved in-depth research into several publishing industry practices, including data appending and data cooperatives. Part of this research included locating and obtaining years' worth of archived versions of webpages containing statements made by Defendant and its affiliates concerning their data-sharing practices and practices of renting lists of *Kiplinger's Personal Finance* and other magazine subscribers, as well as historical copies of data cards reflecting such practices that were publicly accessible online prior to July 31, 2016.

22.     On December 22, 2021, former plaintiff Jay Ketover initiated this action with the Class Action Complaint on behalf of *Kiplinger's Personal Finance* and its other magazine subscribers alleging violations of the PPPA that accrued between December 24, 2015 and July 30, 2016. (ECF No. 1). On February 18, 2022, Plaintiff Strano filed a First Amended Complaint making the same allegations and replacing Mr. Ketover as the named plaintiff in the action. *See generally* FAC.

23.     After lengthy preliminary negotiations with Defendant's counsel, the parties agreed to attend private mediation on May 31, 2022 to explore potential resolutions to this matter. In advance of the mediation, the Parties exchanged informal discovery, including on issues such as the size and scope of the putative

class; given that the information exchanged would have been the same information produced in formal discovery related to issues of class certification and summary judgment, the parties had sufficient information to assess the strengths and weaknesses of the claims and defenses.

24.     In preparation for the mediation, Plaintiff's Counsel prepared a detailed mediation statement outlining the strength of the Plaintiff's case and comparing this matter case with other PPPA cases against magazine publishers that had settled, to properly evaluate any potential settlement proposals and structures. My firm also thoroughly reviewed the informal discovery produced by Defendant in advance of the mediation.

25.     On May 31, 2022, the Parties attended a full day of mediation before the Honorable Gerald E. Rosen (Ret.), a former chief judge for the Eastern District of Michigan now with JAMS. At the conclusion of the mediation, the parties reached agreement on all material terms of a class action settlement and executed a term sheet.

26.     The resulting $6,845,670 non-reversionary Settlement represents the second best per-class member recovery in a PPPA case.  Based on Defendant's records, the proposed Settlement Class includes 17,553 persons who purchased a subscription directly from the publisher of *Kiplinger's Personal Finance* and its other magazines for delivery to a Michigan street address or electronically, and

who subscribed to such publication between December 24, 2015 and July 30, 2016. With a $6,845,670 non-reversionary Settlement Fund – and notably, an automatic claims distribution process in which claim forms need not be submitted by Class Members to receive payment – each Class Member who does not exclude him or herself from the Settlement will automatically receive a *pro rata* cash payment of approximately $248.

27.     After reaching an agreement in principle on the Settlement, Plaintiff's Counsel worked extensively with defense counsel to finalize and memorialize the agreement into a formal Class Action Settlement Agreement, including proposed class notice documents. That process included rounds of revisions. Plaintiff's Counsel then prepared Plaintiff's Unopposed Motion for Preliminary Approval (ECF No. 19) and a Revised Unopposed Motion for Preliminary Approval (ECF No. 25), the latter of which was approved by the Court on January 6, 2023. (ECF No. 26).

28.     The Parties agreed to the terms of the Settlement through experienced counsel who possessed all the information necessary to evaluate the case, determine all the contours of the proposed class, and reach a fair and reasonable compromise after negotiating the terms of the Settlement at arm's length and with the assistance of a neutral mediator.

29.     Plaintiff and Plaintiff's Counsel recognize that, despite our belief in

14

the strength of Plaintiff's claims and Plaintiff's and the Class's ability to ultimately

each secure a $5,000 statutory award under the PPPA, the expense, duration, and

complexity of protracted litigation would be substantial and the outcome uncertain

considering the significant risks of non-recovery posed by continued litigation.

30.     In the aforementioned PPPA litigation it was assumed that PPPA

cases were governed by a three-year statute of limitations.  *See, e.g.*, *Hearst*, 269 F.

Supp. 3d at 172; *Edwards v. Hearst Communications, Inc.*, 2016 WL 6651563

(S.D.N.Y. Nov. 9, 2016).  Nonetheless, shortly before filing this lawsuit, Plaintiff's

Counsel recognized that the Sixth Circuit's opinion in *Palmer Park Square, LLC v.

Scottsdale Insurance Company*, 878 F.3d 530 (6th Cir. 2017) may provide for a

six-year statute of limitations for PPPA claims, and therefore may provide an

avenue for class recovery under the original PPPA.  Thus, despite the uncertainty

regarding the statute of limitations, Plaintiff's Counsel took on this case and others.

31.     A Rule 12(b)(6) motion for failure to state a claim was also a threat

that could potentially deprive the Settlement Class of any recovery whatsoever, as

was later evidenced by *Nashel v. New York Times Company*, 2022 WL 6775657

(E.D. Mich. Oct. 11, 2022) in which the court granted a publisher defendant's

motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. *See also

Bozung v. Christianbook, LLC*, 2023 WL 2385004 (W.D. Mich. Mar. 6, 2023)

(granting similar motion to dismiss).

32.     Plaintiff and Plaintiff's Counsel are also mindful that Defendant is represented by highly experienced attorneys and that, based on Plaintiff's Counsel's interactions with Defendant's counsel in both this case and prior PPPA matters, Defendant would have asserted numerous defenses to both the merits of Plaintiff's claim and the propriety of class certification absent the Settlement. Specifically, Defendant would likely have asserted that the PPPA does not prohibit the disclosure of the subscription information at issue (involving agent intermediaries), that Defendant provided appropriate notice of its practices, and that the PPPA does not apply to subscriptions that were not sold by Defendant "at retail" within the meaning of the statute.  Defendant would also have mounted a vigorous defense at trial and beyond, including in any appeal from an adverse judgment or an order certifying a class, and that considering the statutory damages at stake, Defendant would argue – in both the trial and appellate courts – for a reduction of any class-wide damages award on substantive due process grounds.

33.     Plaintiff and Plaintiff's Counsel believe that the relief provided by the settlement weighs heavily in favor of a finding that the Settlement is fair, reasonable, and adequate, and well within the range of approval.

34.     Since the Court granted preliminary approval, Plaintiff's Counsel has worked with the Settlement Administrator, JND Legal Administration ("JND"), to carry out the Court-ordered notice plan.  Specifically, Plaintiff's Counsel helped

compile and review the contents of the required notice to State Attorney Generals pursuant to 28 U.S.C. § 1715, reviewed the final claim and notice forms, and reviewed and tested the settlement website before it launched live.

35.    Plaintiff's Counsel also has worked with Defendant and JND to secure the class list and effectuate the Notice Plan, as well as to field calls from Settlement Class Members and assist with their requests.

## HEDIN HALL'S TIME AND COSTS EXPENDITURES

36.    My firm undertook this matter, as with each of the other PPPA cases outlined above, on a contingency basis.  My firm and I have devoted a significant amount of time to these matters, including to the investigation, preparation, prosecution, and resolution of the instant matter.

37.    The result we obtained in this case, and the efficiency with which we obtained it, would not have been possible without the significant investments of time and other resources that we made towards the prosecution of the PPPA actions outlined above over the better part of the past decade, which provided us with the knowledge, experience, and well-developed body of PPPA jurisprudence necessary to achieve this Settlement.

38.    We will continue to spend time on future work in connection with the fairness hearing, coordinating with JND, monitoring settlement administration, and responding to Settlement Class Member inquiries.

39.     Due to the commitment of time and capital investment required to litigate this action and the other PPPA actions outlined above, my firm had to forego other consumer class-action work.

40.     To date, my firm has expended $4,250.00 in out-of-pocket costs and expenses in connection with the prosecution of this case.  Attached as **Exhibit B** is an itemized list of those costs and expenses.  These costs and expenses are reflected in the records of my firm and were necessary to prosecute this litigation. Cost and expense items are billed separately, and such charges are not duplicated in my firm's billing rates.

I declare under penalty of perjury that the above and foregoing is true and accurate. Executed this 10th day of April 2023 at Miami, Florida.

_/s Frank S. Hedin_
Frank S. Hedin

# **<u>EXHIBIT A</u>**

# HEDIN HALL LLP

## FIRM RÉSUMÉ

With offices in Miami, Florida and San Francisco, California, Hedin Hall LLP represents consumers and shareholders in data-privacy, financial services, and securities class actions in state and federal courts nationwide.

Our firm prosecutes difficult cases aimed at redressing injuries suffered by large, diverse groups of people. Over the past decade alone, our work has helped secure billions of dollars in relief for consumers and investors and facilitated important changes in business practices across a wide range of industries.

### Representative Matters

Notable examples of our work include:

<u>Consumer & Data-Privacy Matters</u>

- *Owens, et al. v. Bank of America, N.A., et al.*, No. 19-CV-20614-MGC (S.D. Fla.) (class counsel in overdraft fee class action, non-reversionary $4.95 million settlement pending final approval);

- *Liggio v. Apple Federal Credit Union*, No. 18-cv-1059-LO (E.D. Va.) (class counsel in overdraft fee class action, non-reversionary $2.7 million settlement granted final approval);

- *Olsen, et al. v. ContextLogic Inc.,* No. 2019CH06737 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in action alleging violation of Telephone Consumer Protection Act ("TCPA"), non-reversionary $16 million settlement finally approved);

- *In re Everi Holdings, Inc. FACTA Litigation*, No. 18CH15419 (Ill. Cir. Ct. Jan. 7, 2020) (class counsel in 14 related actions alleging violations of Fair and Accurate Credit Transactions Act against various casino entities and common payment processor, $14 million non-reversionary class settlement recently reached);

- *Chimeno-Buzzi v. Hollister Co.* (S.D. Fla.) (class counsel in action alleging violation of TCPA, non-reversionary $10 million settlement finally approved);

- *Farnham v. Caribou Coffee Co., Inc.* (W.D. Wisc.) (class counsel in action alleging violation of TCPA, non-reversionary $8.5 million settlement finally approved);

# HEDIN HALL LLP

- *Lin v. Crain Communications, Inc.*, No. 2:19-cv-11889-VAR-APP (E.D. Mich.) (counsel for putative nationwide class in action alleging violation of Michigan's Personal Privacy Preservation Act against Michigan-based publishing conglomerate);

- *Norberg v. Shutterfly, Inc.* (N.D. Ill.) (putative class action alleging the collection of individuals' immutable "scans of face geometry" in violation of Illinois' Biometric Information Privacy Act ("BIPA"));

- *Rivera v. Google, Inc.* (N.D. Ill.) (putative class action arising from Google's alleged collection of individuals' immutable "scans of face geometry" in violation of BIPA);

- *In re Facebook Biometric Privacy Litig.* (N.D. Cal.) (first-of-its-kind data privacy class action arising from Facebook's alleged collection of individuals' immutable "scans of face geometry" in violation of BIPA);

- *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litig.* (N.D. Cal.) (class action alleging claims in connection with the Volkswagen diesel-cheating scandal, resulting in over $17 billion recovery).

<u>Securities Matters</u>

- *City of Sterling Heights General Employees' Retirement System v. Prudential Financial, Inc.* (D. N.J.) ($33 million settlement for class of aggrieved investors);

- *Louisiana Municipal Police Employees' Pension Fund v. KPMG, LLP, et al.* (N.D. Ohio) ($32.6 million settlement for class of aggrieved investors);

- *Cyan v. Beaver County Employees Retirement Fund*, (U.S. Supreme Court) (contributed to *certiorari*, merits, and *amici* briefing in 9-0 plaintiffs' victory on issues of first impression pertaining to concurrent jurisdiction and dual sovereignty, the PSLRA and SLUSA, and the Securities Act removal bar);

- *Wiley v. Envivio, Inc., et al.* (Cal. Sup. Ct., San Mateo Cnty.) ($8.5 million settlement for class of aggrieved investors);

- *In re MobileIron Shareholder Litig.* (Cal. Sup. Ct., Santa Clara Cnty.) ($7.5 million settlement for class of aggrieved investors);

- *In re Model N Shareholder Litig.* (Cal. Sup. Ct., San Mateo Cnty.) ($8.55 million settlement for class of aggrieved investors);

- *Silverman v. Motorola, et al.* (N.D. Ill.) ($200 million settlement for class of aggrieved investors);

- *United Food and Commercial Workers Union Local 880 v. Chesapeake Energy Corp., et al.* (W.D. Okla.) (obtained multiple favorable precedent-setting decisions related to

# HEDIN HALL LLP

typicality, tracing, adequacy, materiality, and negative causation under the Securities Act of 1933);

- *Xiang v. Inovalon Holdings, Inc., et al.* (S.D.N.Y.) (obtained favorable precedent-setting decisions related to statute of limitations, falsity, causation, and materiality under the Securities Act of 1933);

- *Buelow v. Alibaba Group Holding Ltd., et al.* (Cal. Sup. Ct., San Mateo Cnty.) ($75 million settlement, obtained several favorable precedent-setting decisions related to statute of limitations, the relation-back doctrine, falsity, causation, and materiality under the Securities Act of 1933);

- *In re Herald, Primeo, and Thema Funds Sec. Litig.* (S.D.N.Y.) ($62.5 million settlement for victims of Madoff Ponzi scheme).

**Biographies of Principal Attorneys**

Frank S. Hedin

  Frank S. Hedin manages the firm's Miami office. He is a member in good standing of the Florida Bar and the State Bar of California. Mr. Hedin received his Bachelor of Arts from University of Michigan and his Juris Doctor, *magna cum laude*, from Syracuse University College of Law. After graduating from law school, he served for fifteen months as law clerk to the Honorable William Q. Hayes, United States District Judge for the Southern District of California. Prior to establishing Hedin Hall LLP, Mr. Hedin was a partner at a litigation boutique in Miami, Florida, where he represented both plaintiffs and defendants in consumer and data-privacy class actions, employment-related collective actions, and patent and trademark litigation, and served as head of the firm's class action practice.

David W. Hall

  David W. Hall manages the firm's San Francisco office. Before founding Hedin Hall LLP, Mr. Hall managed cases for one of the largest plaintiffs' firm in the United States, where he pioneered and developed, inter alia, the firm's state court Securities Act and data privacy

# Hedin Hall llp

practices. Earlier in his legal career, he served as judicial law clerk to the Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California.  Mr. Hall is a graduate of the University of California, Hastings College of the Law, *cum laude*, and the New England Conservatory of Music.  At Hastings College of the Law, he served as Staff Editor of the Hastings Business Law Journal, teaching assistant in the Legal Writing & Research Department, and extern to the Honorable Joyce L. Kennard of the California Supreme Court.

**Firm Offices**

<u>Miami, Florida</u>

Frank S. Hedin
1395 Brickell Avenue, Suite 1140
Miami, Florida 33131

Telephone:     (305) 357-2107
Facsimile:      (305) 200-8801
E-Mail:          fhedin@hedinhall.com

<u>San Francisco, California</u>

David W. Hall
Four Embarcadero Center, Suite 1400
San Francisco, California 94104

Telephone:     (415) 766-3534
Facsimile:      (415) 402-0058
E-Mail:          dhall@hedinhall.com

# **<u>EXHIBIT B</u>**

**<u>Hedin Hall LLP – *Strano v. Kiplinger Washington Editors, Inc.*, Expenses Thru 6/24/2022</u>**

| Expense | Amount |
|---|---|
| Hedin Hall LLP share of May 31, 2022 mediation fee to JAMS | $4,250.00 |
| **Total:** | $4,250.00 |